UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

RONALD VELA, NICHOLAS NUÑEZ, and
ANDY GERMUGA, individually, and on behalf of
all others similarly situated,

     Plaintiffs,

            -v-                        Case No.

AMC Networks, Inc. d/b/a/ AMC +,

     Defendant.

--------------------------------------------------------X

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.     Plaintiffs Ronald Vela, Nicholas Nuñez, and Andy Germuga ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their attorneys, make the following allegations which arise from (a) Defendant's practices of knowingly disclosing to a third party, Meta Platforms, Inc., formerly known as Facebook, Inc. ("Facebook"), Plaintiffs' "personally identifiable information" ("PII") about specific videos they and others similarly situated requested or obtained from Defendant's website, and (b) from Defendant's retention of records containing PII concerning Plaintiffs and others similarly situated. Plaintiffs' allegations are based on personal knowledge, pursuant to the investigation of their counsel and based upon information and belief.

## NATURE OF THE ACTION

2.     This is a class action lawsuit against AMC Networks, Inc. d/b/a AMC+ ("AMC+" or "Defendant") for its unlawful disclosure and retention of Plaintiffs' and its other consumers' personally identifiable information (including information that identifies a person as having requested or obtained specific video materials or services) in violation of the Video Privacy

Protection Act, 18 U.S.C. § 2710 (the "VPPA"); the New York Video Consumer Privacy Act ("NYVCPA"), N.Y. General Business Law ("GBL") §§ 670-675; and Minnesota's M.S.A. §325I.01-03 (the "Minnesota Statute").

3.     AMC+ is a media production and distribution company that sells its content on multiple platforms. One line of AMC+'s business is streaming video services, whereby AMC+– –through its website, the AMC+ application, and on-demand channels such as Apple TV+ and Amazon Prime—makes prerecorded audiovisual materials (i.e., videos) available for consumers to request and obtain.

4.     AMC+ discloses the specific videos its consumers have requested or obtained to Facebook. AMC+ discloses this information to Facebook using the Facebook Pixel ("Pixel")— a snippet of programming code AMC+ chose to install on its website that sends information about its users to Facebook. In this case, the information shared with Facebook includes the consumer's Facebook ID ("FID") coupled with the title of the specific video that the consumer requested or obtained on the AMC+ website.

5.     A consumer's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. Thus, the FID identifies a consumer more precisely than a name.

6.     AMC+ discloses to Facebook the consumer's FID alongside content the consumer requested or obtained together in a single transaction. Because the consumer's FID uniquely identifies an individual's Facebook account, Facebook—or any other person—can use the FID to quickly and easily locate, access, and view a particular consumer's corresponding Facebook profile. In the simplest terms, the Pixel installed by AMC+ captures and discloses to Facebook what video a specific consumer requested or obtained on the AMC+ website.

7.     AMC+ also maintains records which identify the specific content requested and obtained by its consumers.  The records consist of consumers' account login information, payment information, and requests for specific video materials.  Upon information and belief, AMC+ retains these records indefinitely.

8.     Yet AMC+'s streaming video service operates in violation of state and federal laws designed to protect the confidentiality of consumers' content selection.

9.     AMC+ discloses and retains its consumers' personally identifiable information in violation of the federal Video Privacy Protection Act (18 U.S.C. § 2710) (the "VPPA"), the New York Video Consumer Protect Act (N.Y. GBL § 670-675) (the "NYVCPA"), and Minnesota's M.S.A. §325I.01-03 (the "Minnesota Statute") (together, the "Statutes").

10.     The Statutes prohibit AMC+ from "knowingly disclos[ing]" consumers' PII absent the consumer's written consent, where PII is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710; GBL § 672-673; M.S.A. 325I.01-02.

11.     The Statutes further require AMC+ to destroy PII as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected[.]" 18 U.S.C. § 2710; GBL § 673; M.S.A. 325I.02.

12.     However, in direct contravention of the protections afforded by the Statutes, AMC+ discloses to Facebook its consumers' PII without first obtaining their consent and retains records of its consumers' PII far beyond the time period necessary for the purposes for which the PII was collected.

13.     Plaintiffs bring this action on behalf of themselves and three classes of similarly situated consumers for violations of the VPPA, the NYVCPA, and the Minnesota Statute, as follows (and defined in paragraphs 28 - 32 below):

    a.   A National Class of all persons in the United States who subscribed to AMC+, requested or obtained video content on the AMC+ website, and used Facebook during the time Facebook's Pixel was active on AMC+, with one subclass consisting of:

        i.   A Minnesota Subclass of all persons in Minnesota who subscribed to AMC+, requested or obtained video content on the AMC+ website, and used Facebook during the time Facebook's Pixel was active on AMC+;

    b.  A New York Retention Class of all persons in New York whose personally identifiable information was unlawfully retained by AMC+, and

    c.  A Minnesota Retention Class of all persons in Minnesota whose personally identifiable information was unlawfully retained by AMC+.

14.    Plaintiffs seek an order enjoining AMC+ from further unauthorized disclosures and unlawful retention of consumers' PII, awarding damages consistent with the relevant statutes, attorneys' fees, and costs; and granting any other preliminary or equitable relief the Court deems appropriate.

## **THE PARTIES**

15.    Plaintiff Ronald Vela lives and is domiciled in Minnesota and is a consumer of AMC+'s video streaming platform and has requested and obtained videos using his AMC+ subscription.

16.    Plaintiff Nicholas Nuñez lives and is domiciled in New York, NY, and has requested and obtained videos using his AMC+ subscription.

17.    Plaintiff Andy Germuga lives and is domiciled in Rochester, NY, and has requested and obtained videos using his AMC+ subscription.

18.     Defendant AMC+ is headquartered at 11 Penn Plaza, New York, NY, and operates multiple content channels available by subscription through which it collects and retains the personally identifiable information of its consumers, and discloses their PII to third party, Facebook.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. 1367.

20.     This court has personal jurisdiction over Defendant because Defendant has its principal place of business in New York.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

**I.      Disclosure of Personally Identifiable Information in violation of the Statutes**

*The Statutes Prohibit Disclosure of PII to Third Parties*

22.     The VPPA was passed for the explicit purpose of protecting the privacy of individuals' and their families' video rental or purchase information. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

23.     While these statements were true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of datamining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Patrick Leahy emphasized that point by stating: "While it is true that technology has changed over the years,

we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."

24.     After passage of the VPPA, many states enacted their own state analogs protecting the video service histories for citizens of their states, including New York and Minnesota.

25.     New York passed its NYVCPA, protecting the video service histories of its citizens. In so doing, Assemblyman Anthony J. Genovesi noted:

> Video lists have enormous commercial utility, which adds to the likelihood that an individual's entertainment preferences will be disclosed. Mailing lists are easily devised based on categorizing an individual's viewing habits as documented by video retail establishments' records. For example, catalog companies and direct mail sales companies are naturally interested in obtaining lists of people who rent children's films, physical fitness films, adventure films, or adult films.

Exhibit A, Sponsor Memo at 3.

26.     The VPPA and the Minnesota Statute prohibit entities like AMC+ from knowingly disclosing personally identifiable information to third parties.

27.     The VPPA defines a "video tape service provider" as "any person, engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]" 18 U.S.C. § 2710(a)(4).

28.     The VPPA defines a "consumer" as "a renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

29.     With certain exceptions that are inapplicable here, the VPPA prohibits "a video tape service provider," from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1). As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which

identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

30.     The Minnesota Statute provides definitions for both a "video tape service provider" and a "video tape seller," whereby a "video tape service provider" means a person "engaged in the business of rental of prerecorded video cassette tapes or similar audio visual materials," and a "video tape seller" defined as a person "engaged in the business of selling prerecorded video cassette tapes or similar audio visual materials."  M.S.A. 325I.01(4-5). As discussed below, the same obligations and prohibitions apply equally to both a "video tape service provider" and a "video tape seller," and AMC+ meets both definitions.

31.     Like the VPPA, the Minnesota Statute defines a "consumer" as "a renter, purchaser, or subscriber of goods or services from a video tape service provider." M.S.A. 325I.01(2).

32.     The Minnesota Statute also prohibits a video tape service provider or video tape seller from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer" of the provider.  M.S.A. 325I.02(1).  As defined in M.S.A. 325I.01(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider or video tape seller."

33.     In this case, AMC+ chose to deprive Plaintiffs and Class members of their rights under these Statutes by systematically disclosing their PII to Facebook.

*AMC+ Designed its Website to Disclose Users' PII to Facebook, Including the Videos They Requested or Obtained Thereon.*

34.    AMC+ operates a website in the U.S., accessible from a desktop or mobile device at https://www.amcplus.com, or from a handful of applications and devices, such as the AMC+ app, through which consumers can access AMC+ content.

35.    The Facebook Pixel, first introduced in 2013, allows online businesses like AMC+ to build detailed profiles about its users by collecting information about how they interact with their websites and facilitates the service of targeted advertising to them.

36.    In programing its website, and in order to take advantage of Facebook's targeted advertising and analytical services, AMC+ intentionally installed the Facebook Pixel on its website via step-by-step instructions from the Facebook website, thus making the knowing choice to track consumers' PII and send it to Facebook.

37.    During the installation process, AMC+ chose certain options from a menu of available "Events" to incorporate into the Pixel it installed on its website. The Pixel's Events track specific information about the activity of users while they visit a company's website.

38.    AMC+ allows consumers to become digital consumers to its streaming-video platform and content through its website. To subscribe, the consumer must provide his or her name, email address, billing address, and credit- or debit-card information.

39.    After completing the subscription process and gaining access to AMC+'s videos, AMC+ discloses to Facebook, through the Facebook Pixel, the FID of the consumer and the specific video the consumer requested or obtained.

*How AMC+ Discloses Digital Consumers' PII.*

40.    Businesses have the option of installing the Facebook Pixel on their websites. Doing so enables the business to collect information about how users interact with the business's website, such as whether they initiate purchases on the website, what items they spend time

viewing, and, as relevant here, the video content the users request or obtain on a particular webpage.

41.     The Facebook Pixel is a unique string of code businesses can embed on their websites allowing them to track consumers' actions and report the actions back to Facebook.

42.     The Pixel can follow a consumer to different websites and across the Internet even after clearing browser history.

43.     The Pixel allows Facebook to build detailed profiles about a website's users as those users browse the web in order to serve targeted advertisements on those users.

44.     To take advantage of advertising and information services offered by Facebook, AMC+ programmed the AMC+ website to include a Facebook Pixel.

45.     When an AMC+ consumer requests or obtains videos on AMC+'s website, the Pixel installed by AMC+ sends to Facebook certain information about the consumer and what specific video materials the consumer requested or obtained. Specifically, AMC+ sends to Facebook the video's name, its URL, and the consumer's FID.

46.     An FID is a unique and persistent identifier that Facebook assigns to each of its users. With it, anyone can look up the user's unique Facebook profile. Simply put, with only an FID and the video content name and URL—all of which AMC+ knowingly provides to Facebook—any ordinary person could learn the identity of the digital consumer and the specific video or media content he requested on the AMC+ website.

47.     Simply by entering https://www.facebook.com/[unencrypted FID]/, any ordinary person could identify the consumer accessing the video sent to Facebook in the same transmission the consumer's c_user ID was sent to Facebook.

48.     AMC+ could easily program its website so that this information is not disclosed to Facebook.

49.     At all relevant times, AMC+ knew that the Facebook Pixel disclosed PII to Facebook, identifying its consumers, including unencrypted FIDs. This is evidenced from, among other things, the functionality of the Pixel, including that the Pixel's sharing of information with Facebook enabled AMC+'s website to show targeted advertising to its digital consumers based on the content those digital consumers had requested or obtained on the website, including videos.

50.     AMC+ violates the VPPA and the Minnesota Statute by knowingly disclosing consumers' FIDs, together with the video content they requested or obtained, to Facebook.

## II.    AMC+ RETAINS PII IN VIOLATION OF THE NYVCPA AND THE MINNESOTA STATUTE

51.     Additionally, the VPPA requires that any video tape service provider "subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected…" 18 U.S.C. § 2710. The VPPA does not provide a private right of action for failing to destroy records in the manner required by law. However, the NYVCPA and Minnesota Statute do.

52.     Like the VPPA, the NYVCPA and Minnesota Statute also require a video tape service provider or video tape seller to "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected…." GBL §673(5); § 674(5); M.S.A. 325I.02(6).

53.     Unlike the VPPA, the NYVCPA and the Minnesota Statute include a private right of action to enforce the destruction of personally identifiable information and provide that a consumer can recover statutory damages of $500, "regardless of the amount of actual damages

proved, plus costs, disbursements, and reasonable attorneys' fees."  GBL § 675(1); M.S.A. § 325I.03.

*AMC+'s Retention of Video Service History*

54.     AMC+ sells prerecorded video content on its platform, which it allows consumers to request and obtain for viewing. Consumers can stream the video on a number of devices such as their mobile devices, smart televisions, computers, or through other video providers outfitted to provide AMC+ content.

55.     A consumer can register and pay his monthly fee directly to AMC+ for access to its content, or the consumer can purchase access as an add-on to an existing video subscription service, such as Amazon Prime or Apple TV+. Regardless of the medium, AMC+ currently costs $8.99 per month.

56.     To request and obtain a video, a consumer must create an account with AMC+, which requires consumers to submit personal information, such as their name, email address, billing address, and payment information. Where consumers access AMC+ content through a third-party intermediary, such as Apple TV+ or Amazon Prime, consumers must agree to have their personal information shared among the third-party and AMC+.

57.     So long as the consumer is logged into an account that provides access to AMC+ content, requesting and obtaining a video to stream is simple – the consumer searches AMC+'s video library for a selection and then requests the video from within the interface by selecting "Play Now." So long as the consumer's payments are up to date, AMC+ content will begin playing.

58.     A consumer can request and obtain video content as many times as he or she desires so long as the consumer's payments are up to date.

59.     AMC+ requires the consumer's personally identifiable information to effectuate the consumer's request to obtain and view the video content.

60.     However, upon the conclusion of viewing the video, AMC+ has no purpose to retain personally identifiable information. The transaction for that viewing is complete. The consumer requested the video, AMC+ provided the video for viewing, and the consumer's use of the video is completed at the moment the user ceases to view the video.

61.     Because the user can watch a video as often and as many times as he desires without paying more or less for his monthly subscription, AMC+ has no purpose in retaining records of Plaintiffs' video subscription history.

62.     Yet AMC+ retains a record for every video the consumer requested and obtained using his AMC+ subscription—and, in violation of federal, New York and Minnesota law, it retains this personally identifiable information indefinitely.

### PLAINTIFFS' EXPERIENCES

*Plaintiff Vela*

63.     Plaintiff Ronald Vela is an AMC+ consumer and is a Facebook user. He first subscribed to AMC+ in 2020.

64.     Plaintiff Vela requested or obtained video content from AMC+'s website through his AMC+ subscription in the two years preceding the filing of this action.

65.     Plaintiff Vela has had a Facebook account during the entirety of his time as an AMC+ subscriber. AMC+ disclosed to Facebook his FID coupled with the title of the videos he requested or obtained and the URLs to access those videos.

66.     Each time AMC+ disclosed his PII to Facebook, it violated his rights under the VPPA.

67.     Likewise, Plaintiff Vela requests and obtains prerecorded video content from AMC+, and AMC+ maintains records of Plaintiff's video content history.

68.     AMC+ retains Plaintiff's PII for longer than necessary for the purpose for which it was collected, in violation of the Minnesota Statute and federal VPPA.

*Plaintiff Nuñez*

69.     Plaintiff Nicholas Nuñez subscribed to AMC+ in November of 2021 and used his subscription to request and obtain prerecorded videos offered by AMC+.

70.     Plaintiff Nuñez registered for his AMC+ subscription via the Apple TV app installed on his laptop, which he used while located in New York City, New York.

71.     Plaintiff Nuñez subscribed to AMC+ and requested and obtained AMC+ content through his Apple TV+ account, which offered AMC+ content through its streaming platform.

72.     Plaintiff Nuñez requested and obtained prerecorded video content from AMC+ through the Apple TV+ subscription, which he viewed through his iPad.

73.     Plaintiff Nuñez viewed videos using an AMC+ subscription more than one year ago.

74.     AMC+ retained and continues to retain Plaintiff Nuñez's personally identifiable information in violation of the NYVCPA.

*Plaintiff Germuga*

75.     Plaintiff Andy Germuga subscribed to AMC+ in November of 2021, and he currently uses his subscription to request and obtain prerecorded videos offered by AMC+.

76.     Plaintiff Germuga used a laptop to register for his AMC+ subscription through the AMC+ website while located in New York City, New York.

77.     Plaintiff Germuga accessed content using his AMC+ subscription through his Apple TV device and his Roku device, both of which offered an AMC+ application for use through the device interfaces.

78.     Plaintiff Germuga requested or obtained videos using an AMC+ subscription more than one year ago.

79.     AMC+ retained and continues to retain Plaintiff Germuga's personally identifiable information in violation of the NYVCPA.

80.     AMC+ has stored and continues to store Plaintiffs' personally identifiable information in violation of the protections established by the New York and Minnesota Legislatures. AMC+ did not destroy Plaintiffs' PII as soon as practicable. AMC+ did not even destroy Plaintiffs' PII within one year from the date the information was no longer necessary for the purpose for which it was collected. Indeed, on information and belief, AMC+'s policy and intention is to indefinitely store Plaintiffs' personally identifiable information.

### CLASS ALLEGATIONS

81.     Plaintiffs seek to represent three classes and one subclass of individuals pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

82.     Plaintiff Vela seeks to represent a **National Class** for AMC+'s violations of the disclosure prohibitions in the VPPA ("National Class"): All persons in the United States who subscribed to AMC+, requested or obtained video content from the AMC+ website, and used Facebook during the time Facebook's Pixel was active on AMC+.

83.     Plaintiff Vela seeks to represent a **Minnesota Subclass** for AMC+'s violations of the disclosure prohibitions in the Minnesota statute: All persons in Minnesota who subscribed to AMC+, requested or obtained video content from the AMC+ website, and used Facebook during the time Facebook's Pixel was active on AMC+.

84.     Plaintiffs Nuñez and Germuga seek to represent the following class of individuals ("**New York Retention Class**") for AMC+'s violations of the retention prohibitions in the NYVCPA: All New York residents with AMC+ accounts who requested and obtained a video from AMC+ using his or her AMC+ subscription.

85.     Plaintiff Vela seeks to represent the following class of individuals ("**Minnesota Retention Class**") for AMC+'s violations of the retention prohibitions in the Minnesota statute: All Minnesota residents with AMC+ accounts who requested and obtained a video from AMC+ using his or her AMC+ subscription.

86.     **Numerosity**: Each Class is so numerous that joinder of individual members herein is impracticable. The exact number of Class members is unknown, but AMC+ represents it has over 11 million consumers [1], and Plaintiffs estimate there are, at least, many thousands of consumers in each Class and Subclass.

87.     **Commonality**: Common questions of fact and law exist for the causes of action and predominate over questions affecting only individual Class members, including the following:

    a.  Whether AMC+ knowingly disclosed Plaintiffs' and Class members' PII to Facebook;

    b.  Whether AMC+'s conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, and the Minnesota Statute, M.S.A. 325I.01-03;

    c.  Whether AMC+ should be enjoined from disclosing Plaintiffs' and Class members' PII;

---

[1] https://www.fiercevideo.com/video/amc-now-has-11m-paid-subscribers-boasts-strong-series-franchises#:~:text=Earlier%20this%20month%20the%20OTT,Frndly%20counted%20around%20500%2C000%20subscribers.

d.   Whether AMC+ retained records of personally identifiable information for the Class members for longer than necessary for the purpose for which it was collected; and

e.   Whether Class members are entitled to statutory damages for the aforementioned violations.

88.   **Typicality**: Plaintiffs' claims are typical of the claims of members of the proposed Classes because, among other things, Plaintiffs and members of the Classes sustained similar injuries from AMC+'s uniform wrongful conduct, and their legal claims arise from the same events and wrongful conduct by AMC+.

89.   **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the proposed Classes. Plaintiffs' interests do not conflict with the interests of the Class members and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Classes.

90.   **Predominance and Superiority**: Plaintiffs satisfy the requirements of Rule 23(a) as well as the requirements for maintaining a class under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to individual Plaintiffs is insufficient to make litigation addressing AMC+ conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

91.    **Injunctive Relief**: Plaintiffs also satisfy the requirements for maintaining a class under Rule 23(b)(2). AMC+ acted on grounds that apply generally to the proposed Classes, making final declaratory or injunctive relief appropriate with respect to the proposed Classes as a whole.

92.    **Particular Issues.** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710
### (*Brought by Plaintiff Vela on behalf of the National Class*
### *for Violations of the Disclosure Prohibitions*)

93.    Plaintiff Vela incorporates and realleges the above factual allegations by reference.

94.    The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifying information" concerning any "consumer" to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

95.    As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" AMC+ is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

96.     As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or consumer of goods or services from a video tape service provider." As alleged above, Plaintiff Vela and Class members are consumers to AMC+'s service of providing video content. Thus, Plaintiff Vela and Class members are "consumers" under this definition.

97.     As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

98.     AMC+ knowingly disclosed Plaintiff Vela's and Class members' PII— specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

99.     This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and each Class member to Facebook as an individual who requested or obtained AMC+'s video content, including the specific video materials requested or obtained on AMC+'s website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

100.     AMC+ never obtained from Plaintiff Vela, or any Class member informed, written consent. More specifically, AMC+ never obtained from Plaintiff Vela or any Class member informed, written consent in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; AMC+ never obtained from Plaintiff Vela  or any Class member informed, written consent that, at the election of the consumer, was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner; and AMC+ never provided an opportunity, in a clear and conspicuous manner, for Plaintiff Vela or any Class member to

withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

101.    AMC+'s disclosures were made knowingly, as it programmed the Facebook Pixel into its website code knowing that Facebook would receive video titles and the consumer's FID when a consumer requested or obtained a video.

102.    By disclosing Plaintiff Vela's and Class members' PII, AMC+ violated their statutorily protected right to privacy in the videos they requested or obtained from AMC+. 18 U.S.C. § 2710(c).

103.    As a result of these violations, AMC+ is liable to Plaintiff Vela and Class members.

104.    On behalf of himself and all members of the Class, Plaintiff Vela seeks to enjoin AMC+'s disclosures of PII; actual damages no less than liquidated damages in the amount of $2,500; reasonable attorneys' fees and costs; and all other preliminary or equitable relief the Court deems appropriate. 18 U.S.C. § 2710(c)(2)(A).

### COUNT II
### Violation of the Minnesota Statute
### M.S.A. 325I.01-03
### (*Brought by Plaintiff Vela on behalf of the Minnesota Subclass*
### *for Violations of the Disclosure Prohibitions*)

105.    Plaintiff Vela incorporates and realleges the above factual allegations by reference.

106.    The Minnesota Statute prohibits a "video tape service provider" or "video tape seller" from "knowingly disclosing, to any person, personally identifying information concerning any consumer of such provider" without the "informed, written consent of the consumer." M.S.A. 325I.02.

107.    As defined in M.S.A 325I.01(5) a "video tape service provider" is "any person, engaged in the business of rental of prerecorded video cassette tapes or similar audiovisual materials[.]" AMC+ is a "video tape service provider" as defined in M.S.A 325I.01(5) because it is engaged in the business of renting access to its audiovisual materials that are similar to prerecorded video cassette tapes.

108.    As defined in M.S.A 325I.01(4) a "video tape seller" is "any person, engaged in the business of selling of prerecorded video cassette tapes or similar audiovisual materials[.]" AMC+ is a "video tape service provider" as defined in M.S.A 325I.01(4) because it is engaged in the business of selling access to its audiovisual materials that are similar to prerecorded video cassette tapes.

109.    As defined in M.S.A 325I.01(2) a "'consumer' means any renter, purchaser, or consumer of goods or services from a video tape service provider or video tape seller." As alleged above, Plaintiff Vela and Class members are consumers of AMC+'s service of providing video content. Thus, Plaintiff Vela and Class members are "consumers" under this definition.

110.    As defined in M.S.A 325I.01(3) "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider or video tape seller."

111.    AMC+ knowingly disclosed Plaintiff Vela's and Class members' PII—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

112.    This information constitutes personally identifiable information under GBL § 672(3) because it identified Plaintiff Vela and each Class member to Facebook as an individual who requested or obtained AMC+'s video content, including the specific video materials

requested or obtained on AMC+'s website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

113.    AMC+ never obtained from Plaintiff Vela, or any Class member informed, written consent as required by M.S.A 325I.02.

114.    AMC+'s disclosures were made knowingly, as it programmed the Facebook Pixel into its website code knowing that Facebook would receive video titles and the consumer's FID when a consumer requested or obtained a video.

115.    By disclosing Plaintiff Vela's and Class members' PII, AMC+ violated their statutorily protected right to privacy in the videos they requested or obtained from AMC+. M.S.A 325I.02.

116.    As a result of these violations, AMC+ is liable to Plaintiff Vela and Class members.

117.    On behalf of himself and all members of the Class, Plaintiff Vela seeks to enjoin AMC+'s disclosures of PII; actual damages no less than liquidated damages in the amount of $500; plus costs, disbursements, and reasonable attorneys' fees. M.S.A 325I.03.

**COUNT III**
**Violation of New York General Business Law § 670-675**
***(Brought by Plaintiffs Nuñez and Germuga On behalf***
***of the New York Retention Class for Violations of the Retention Prohibitions)***

118.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs as if fully set forth herein.

119.    Plaintiffs Nuñez and Germuga bring this claim individually and on behalf of the members of the proposed New York Retention Class against AMC+.

120.    Plaintiffs Nuñez and Germuga are "consumers" because they are "subscribers…of goods or services from a video tape service provider." GBL § 672(1).

121.    AMC+ is a "video tape service provider" because it is "engaged in the business of rental of prerecorded video cassette tapes or similar audiovisual materials…." GBL § 672(4).

122.    AMC+ is a "video tape seller" because it is "engaged in the business of selling prerecorded videocassette tapes or similar audiovisual materials." GBL § 672(5).

123.    Video tape service providers and video tape sellers must "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected …." GBL. § 673(5).

124.    "Personally identifiable information" is "information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider." GBL § 672(3).

125.    AMC+ collects personally identifiable information from consumers in order to obtain payment from them and to provide them with the videos requested by them for viewing.

126.    AMC+ offers videos to consumers to request and obtain for as many views as they desire so long as their subscriptions are up-to-date and paid for with AMC+.

127.    AMC+ does not destroy its consumers' personally identifiable information as soon as practicable after the information is no longer necessary for the purpose for which it was collected, in violation of GBL § 673(5).

128.    AMC+ retains Plaintiff Nuñez's and Germuga's personally identifiable information as it relates to videos they viewed with their AMC+ subscriptions.

129.    AMC+ has stored and continues to store the personally identifiable information, as defined by GBL §672(3), of Plaintiffs Nuñez and Germuga and members of the proposed New York Retention Class in violation of the protections established by the New York legislature. AMC+ did not destroy the personally identifiable information of Plaintiffs Nuñez and Germuga and members of the proposed New York Retention Class as soon as practicable. AMC+ did not

even destroy the personally identifiable information of Plaintiffs Nuñez and Germuga and members of the proposed New York Retention Class within one year from the date the information was no longer necessary for the purpose for which it was collected. Indeed, on information and belief, AMC+'s policy and intention is to store the personally identifiable information of the Plaintiffs Nuñez and Germuga and members of the proposed New York Retention Class indefinitely.

130.    In accordance with GBL § 675, the Plaintiffs Nuñez and Germuga and members of the proposed New York Retention Class have been injured for violations of GBL § 673(5) and seek damages of not less than $500 for said violations, regardless of the actual amount of damages proved, plus costs, disbursements, and reasonable attorneys' fees.

**COUNT IV**
**Violation of Minnesota M.S.A § 325I.01-03**
***(Brought by Plaintiff Vela on behalf of the Minnesota Retention Class***
***for Violations of the Retention Prohibitions)***

131.    Plaintiff Vela incorporates all allegations contained in the foregoing paragraphs as if fully set forth herein.

132.    Plaintiff Vela brings this claim individually and on behalf of the members of the proposed Minnesota Class against AMC+.

133.    Plaintiff Vela is a "consumer" because he is a "subscriber…of goods or services from a video tape service provider." M.S.A. § 325I.01(2).

134.    AMC+ is a "video tape service provider" because it is "engaged in the business of rental of prerecorded videocassette tapes or similar audiovisual materials."   M.S.A. § 325I.01(5).

135.    AMC+ is a "video tape seller" because it is "engaged in the business of selling prerecorded videocassette tapes or similar audiovisual materials." M.S.A. § 325I.01(4).

136.    Video tape service providers and video tape sellers must "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected …." M.S.A. § 325I.02(6).

137.    "Personally identifiable information" is "information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider." M.S.A § 325I.01(3).

138.    AMC+ collects personally identifiable information from consumers in order to obtain payment from them and to provide them with the videos requested by them for viewing.

139.    AMC+ offers videos to consumers to request and obtain for as many views as they desire so long as their subscription fees are current.

140.    AMC+ does not destroy its consumers' personally identifiable information as soon as practicable after the information is no longer necessary for the purpose for which it was collected in violation of M.S.A. § 325I.02(6).

141.    AMC+ retains Plaintiff Vela's personally identifiable information as it relates to videos he viewed with his AMC+ subscriptions.

142.    AMC+ has stored and continues to store the personal information of Plaintiff Vela and members of the proposed Minnesota Class in violation of the protections established by the Minnesota legislature. AMC+ did not destroy the personally identifiable information of Plaintiff Vela and members of the proposed Minnesota Class as soon as practicable. AMC+ did not even destroy the personally identifiable information of Plaintiff Vela and members of the proposed Minnesota Class within one year from the date the information was no longer necessary for the purpose for which it was collected. Indeed, on information and belief, AMC+'s policy and

intention is to store the personal information of Plaintiff Vela and members of the proposed Minnesota Class indefinitely.

143.    In accordance with M.S.A. § 325I.03, Plaintiff Vela and members of the proposed Minnesota Class have been injured for violations of M.S.A. § 325I.02 and seek damages of not less than $500 each, regardless of the actual amount of damages proved, plus costs, disbursements, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a.   Certify this case as a class action, appoint Plaintiffs as Class and Subclass representatives, and appoint Plaintiffs' counsel to represent the Classes and Subclass;

b.   Find that AMC+'s actions, as described herein, constitute violations of the VPPA, the Minnesota Statute and the NYVCPA;

c.   Enter judgment in favor of Plaintiffs and the Classes.

d.   Enter an order permanently enjoining AMC+ from disclosing PII to third parties in violation of the VPPA and the Minnesota Statute, and from retaining personally identifiable information longer than needed for the purpose for which it was collected, as defined by the NYVCPA and the Minnesota Statute;

e.   Award Plaintiffs and Class members the actual and/or statutory damages they are entitled to under the VPPA, the NYVCPA, and the Minnesota Statute;

f.   Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

g.  Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

h.  Award such other legal and equitable relief as the Court may deem appropriate.


Dated: March 24, 2023                              Respectfully submitted,

                                                   */s/ Samuel R. Jackson*
                                                   Samuel R. Jackson (5332325)
                                                   Hank Bates (*pro hac vice* forthcoming)
                                                   Courtney Ross (*pro hac vice* forthcoming)
                                                   **CARNEY BATES & PULLIAM, PLLC**
                                                   519 W. 7th Street
                                                   Little Rock, AR, 72201
                                                   Telephone: (501) 312-8500
                                                   Facsimile: (501) 312-8505
                                                   Email: sjackson@cbplaw.com
                                                   Email: hbates@cbplaw.com
                                                   Email: cross@cbplaw.com

                                                   Michael W. Sobol (*pro hac vice* forthcoming)
                                                   msobol@lchb.com
                                                   LIEFF CABRASER HEIMANN &
                                                   BERNSTEIN, LLP
                                                   275 Battery Street, 29th Floor
                                                   San Francisco, CA  94111-3339
                                                   Telephone:  (415) 956-1000
                                                   Facsimile:  (415) 956-1008

                                                   Douglas I. Cuthbertson (4547493)
                                                   dcuthbertson@lchb.com
                                                   LIEFF CABRASER HEIMANN &
                                                   BERNSTEIN, LLP
                                                   250 Hudson Street, 8th Floor
                                                   New York, NY 10013
                                                   Telephone: (212) 355-9500
                                                   Facsimile: (212) 355-9592

                                                   *Attorneys for Plaintiffs*