**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD VELA, NICHOLAS NUÑEZ, and ANDY GERMUGA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>AMC NETWORKS, INC.<br><br>        Defendant. | Case No.: 1:23-cv-02524-ALC<br><br>**MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS** |

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..........................................................................................................1
II.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE.....................................1
III. LEGAL STANDARD....................................................................................................4
IV.  LEGAL ARGUMENT...................................................................................................6
    A.   The Terms Are Valid Agreements to Arbitrate ................................................6
    B.   The Dispute Falls Within The Scope of the Arbitration Agreements............................9
    C.   The Court Should Stay All Proceedings Pending Arbitration ........................................11
V.   CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..................................................................................................................4

*Birmingham Assocs. Ltd. v. Abbott Labs.*,
  547 F. Supp. 2d 295 (S.D.N.Y. 2008), *aff'd*, 328 F. App'x 42 (2d Cir. 2009) ........................11

*Camilo v. Lyft, Inc.*,
  384 F. Supp. 3d 435 (S.D.N.Y. 2019)........................................................................................9

*Capua v. Air Europa Lineas Aereas S.A. Inc.*,
  2021 WL 965500 (S.D. Fla. Mar. 15, 2021)..............................................................................6

*Contec Corp. v. Remote Sol.Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005).....................................................................................................10

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*,
  923 F.2d 245 (2d Cir. 1991).......................................................................................................5

*Distributorsoutlet.com, LLC v. Glasstree, Inc.*,
  2016 WL 3248310 (E.D.N.Y. June 10, 2016) ...........................................................................6

*Dylan 140 LLC v. Figueroa*,
  982 F.3d 851 (2d Cir. 2020).....................................................................................................11

*Energy Transp., Ltd. v. M.V. San Sebastian*,
  348 F. Supp. 2d 186 (S.D.N.Y. 2004)........................................................................................5

*Epic Sys. Corp. v. Lewis*,
  138 S.Ct. 1612 (2018)................................................................................................................4

*Erickson v. Nebraska Mach. Co.*,
  No. 15-CV-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015)........................................6

*Feld v. Postmates, Inc.*,
  442 F.Supp.3d 825 (S.D.N.Y. 2020)................................................................................5, 8, 9

*Flores v. Chime Fin., Inc.*,
  No. 21-CV-4735 (RA), 2022 WL 873252 (S.D.N.Y. Mar. 23, 2022).......................................7

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*,
  LLC, 371 F.Supp.2d 571 (S.D.N.Y. 2005) ..............................................................................10

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004) ............................................................................................7

*Kasowitz, Benson, Torres & Friedman, LLP v. Reade*,
    98 A.D.3d 403, *aff'd*, 987 N.E.2d 631 (2013) ..............................................................7

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) ..........................................................................................11

*Manigault v. Macy's E., LLC*,
    318 F. App'x 6 (2d Cir. 2009) ........................................................................................7

*Maye v. Smith Barney Inc.*,
    897 F. Supp. 100 (S.D.N.Y. 1995) .................................................................................9

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ....................................................................................6, 7, 8

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 ........................................................................................................................5

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ...........................................................................................5

*Oppenheimer & Co., Inc. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995) .............................................................................................6

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) .........................................................................................10

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ..........................................................................................................7

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010) ...........................................................................................5

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020) (Caproni, J.) .....................................................8

*Zachman v. Hudson Valley Fed. Credit Union*,
    49 F.4th 95 (2d Cir. 2022) .............................................................................................5

## Statutes

9 U.S.C. § 2 ..............................................................................................................................4

9 U.S.C. § 4 ........................................................................................................................4, 11

Federal Arbitration Act ......................................................................................................4, 7

iii

#214138276_v7

M.S.A. §325I.01-03 ............................................................................................................1

New York Video Consumer Privacy Act, N.Y. General Business Law §§ 670-675 .......1

Video Privacy Protection Act, 18 U.S.C. § 2710.............................................................1

#214138276_v7

I.      INTRODUCTION

Plaintiffs Ronald Vela, Nicholas Nuñez, and Andy Germuga all claim to be subscribers of AMC Networks, Inc. d/b/a AMC+ ("AMC+" or "Defendant"). As subscribers, each Plaintiff agreed to Terms of Use (the "Terms"). The Terms, presented individually to each Plaintiff, required each Plaintiff to submit any unresolved disputes exclusively to individual (non-class) arbitration. AMC+ therefore moves to stay this proceeding and compel each named Plaintiff to individual (non-class) arbitration per the Terms.

II.     FACTUAL BACKGROUND AND PROCEDURAL POSTURE

In the Complaint, each Plaintiff claims that he "requested or obtained video content from AMC+'s website through his AMC+ subscription". Complaint ¶¶64, 67, 69. On March 24, 2023, Plaintiffs brought this putative class action against AMC+. Plaintiffs allege that the operation of AMC+'s website, www.amcplus.com, ("AMC+ Website") violates the Video Privacy Protection Act, 18 U.S.C. § 2710; the New York Video Consumer Privacy Act, N.Y. General Business Law §§ 670-675; and Minnesota's M.S.A. §325I.01-03.

Plaintiffs Nunez and Germuga each allege that they became AMC+ subscribers in November 2021. Complaint ¶¶69, 75. Plaintiff Ronald Vela alleges that "[h]e first subscribed to AMC+ in 2020." Complaint ¶63.[1] Online streaming via the AMC+ Website launched on August 10, 2021. Declaration of Yoshitaka Ito ("Ito Decl.") ¶3. Prior to that date, AMC+ streaming services were not available online on the AMC+ Website. *Id*. ¶4. Plaintiff Vela could not have become a subscriber to the AMC+ Website service until, at earliest, August of 2021. *See id*. To start an AMC+ subscription, all three Plaintiffs were required to complete the following form:[2]

---

[1] A copy of the Website as it appeared, for example, on September 24, 2020 is available at https://web.archive.org/web/20200924234529/https://www.amcplus.com/#get-amc-plus. It contains no way to subscribe to watch AMC+ content on the AMC+ Website.

[2] This is a cropped version of the form from the signup page as of August 11, 2021. For a copy of the full pages, see, https://web.archive.org/web/20210811000359/https://www.amcplus.com/create.

1

[continued on the next page]



Immediately under the CREATE ACCOUNT button, each named Plaintiff was told "By creating an account you confirm that you are over 18 years old and that you've read, understood and agree to our Terms of Use, Privacy Policy and Cookie Policy." The Terms of Use referenced were hyperlinked to the Terms.[3] In addition, the footer of the sign-up page included a link called

---

[3] In August of 2021, for Vela, the hyperlink led to the AMC+ Terms of Use last updated August 9, 2021 ("Vela Terms"), available at https://web.archive.org/web/20210810235725/https://www.amcplus.com/terms. *See* Declaration of Mark S. Melodia ("Melodia Decl.") ¶ 2, Ex. A. In November of 2021, for Nuñez and Germuga, the hyperlink led to the AMC Network Terms of Use last updated September 23, 2020 ("Nuñez/Germuga Terms")

2

#214138276_v7

"Terms & Conditions" which linked to the Terms.

The Terms urged the subscriber to "Please read this Terms of Use Agreement (the "Terms") carefully, as it establishes legally binding terms and conditions that apply to your use of the Services." In an initial paragraph, the Terms specifically called out the requirement for individual (non-class) arbitration:

> IMPORTANT INFORMATION FOR U.S. CUSTOMERS: THESE TERMS OF USE CONTAIN A PROVISION THAT GENERALLY REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS, AND ALSO LIMITS THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE. PLEASE SEE THE DISPUTE RESOLUTION SECTION FOR INFORMATION.

The Terms noted that by using the Services, the consumer agreed to the Terms. *See* Melodia Decl. ¶2, Ex. A, Vela Terms ("If you use, visit, register for, or subscribe to the Services, you understand, acknowledge, and agree that you are bound by the terms and conditions of these Terms of Use."); Melodia Decl. ¶3, Ex. B, Nuñez/Germuga Terms, Section I, Agreement to the Terms (stating the same).

The Terms state:

> IF YOU LIVE IN THE UNITED STATES, TO THE FULLEST EXTENT PERMITTED BY LAW, YOU AND AMC (TOGETHER, THE "PARTIES") AGREE TO SUBMIT EXCLUSIVELY ANY CLAIM, CONTROVERSY OR DISPUTE ARISING OUT OF OR RELATING TO THE SITE, THE SERVICES, THESE TERMS OF USE, OR ANY OTHER POLICIES OR OTHER TERMS INCORPORATED THEREIN (INCLUDING THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION, ENFORCEABILITY, VALIDITY, OR RIGHTS UNDER ANY OF ANY OF THE FOREGOING) (EACH, A "DISPUTE") FOR RESOLUTION BY CONFIDENTIAL, INDIVIDUAL, BINDING ARBITRATION, EXCEPT THAT YOU MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF YOUR CLAIMS QUALIFY.
>
> THE PARTIES AGREE THAT THE ARBITRATOR, AND NOT ANY FEDERAL, STATE, PROVINCIAL OR LOCAL COURT OR AGENCY, SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES

---

available at https://web.archive.org/web/20211020013804/https://www.amcnetworks.com/terms-of-use/. *See* Melodia Decl. ¶ 3, Ex. B. Except as noted, the relevant sections of the Terms are identical.

> RELATING TO THE INTERPRETATION, APPLICABILITY, ENFORCEABILITY OR FORMATION OF THIS AGREEMENT TO ARBITRATE, INCLUDING ANY CLAIM THAT ALL OR ANY PART OF THIS AGREEMENT TO ARBITRATE IS VOID OR VOIDABLE. THE ARBITRATOR SHALL ALSO BE RESPONSIBLE FOR DETERMINING ALL THRESHOLD ARBITRABILITY ISSUES, INCLUDING ISSUES RELATING TO WHETHER THE TERMS ARE UNCONSCIONABLE OR ILLUSORY AND ANY DEFENSE TO ARBITRATION, INCLUDING WAIVER, DELAY, LACHES OR ESTOPPEL.
>
> TO THE FULLEST EXTENT PERMITTED BY LAW: (I) YOU EXPRESSLY WAIVE ANY RIGHT YOU MAY HAVE TO ARBITRATE A DISPUTE AS A CLASS ACTION; AND (II) YOU ALSO EXPRESSLY WAIVE YOUR RIGHT TO A JURY TRIAL.
>
> …
>
> DISPUTES WILL BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ACTION….

Melodia Decl. ¶2, Ex. A, Vela Terms, Section 24, Dispute Resolution; Melodia Decl. ¶3, Ex. B, Nuñez/Germuga Terms, Section XXIV, Dispute Resolution. The Terms select JAMS as the arbitrator. *Id*.

### III.  LEGAL STANDARD

The Federal Arbitration Act (FAA) provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes "a liberal federal policy favoring arbitration agreements." *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018). If the existence of the arbitration agreement itself is not at issue and the dispute is within the scope of the arbitration agreement, courts must "direct[ ] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

When assessing the existence of an arbitration agreement, "the general rule is that courts should apply ordinary state-law principles that govern the formation of contracts." *T.Co Metals,*

#214138276_v7

*LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010) (internal quotation marks and citation omitted).  An arbitration agreement can be incorporated by reference, and does not need to be a standalone document.  *See, e.g., Energy Transp., Ltd. v. M.V. San Sebastian*, 348 F. Supp. 2d 186, 204 (S.D.N.Y. 2004) ("An agreement to arbitrate may be found when an arbitration provision is incorporated by reference into an agreement to which the party sought to be compelled agreed"); *Feld v. Postmates, Inc.*, 442 F.Supp.3d 825, 830 (S.D.N.Y. 2020) (compelling arbitration based on provisions in an app's Terms of Service, available via hyperlink from the sign-up page).

As to scope, "federal policy strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991).  Indeed "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration".  *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25(1983).  Accordingly, "[f]ederal policy requires us to construe arbitration clauses as broadly as possible." *Threlkeld*, 923 F.2d at 250 (internal quotation and citation omitted).  A court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id*. (internal quotation and citation omitted).

"Courts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (quotation marks and citations omitted).  "The summary judgment standard requires a court to consider all relevant, admissible evidence submitted by the parties[.]" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation marks and citations omitted).  "If the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid

the need for further court proceedings." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (applying the summary judgment standard for a motion to compel arbitration) (internal quotations and citation omitted). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

With respect to copies of websites from certain points in time, the Court can take judicial notice of the copies of those web pages stored by the Internet Archive service, the Wayback Machine. *See Distributorsoutlet.com, LLC v. Glasstree, Inc.*, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) ("[T]he Court notes that courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned under Federal Rule of Evidence 201."). *See also Erickson v. Nebraska Mach. Co.*, No. 15-CV-01147-JD, 2015 WL 4089849, at *1 n. 1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Capua v. Air Europa Lineas Aereas S.A. Inc.*, 2021 WL 965500, at *1 n.4 (S.D. Fla. Mar. 15, 2021) ("The archived copy of Expedia's TOU as of February 1, 2020 was obtained from Internet Archive's Wayback Machine, which maintains archived copies of historical webpages. Importantly, courts have taken judicial notice of such records.").

## IV.  LEGAL ARGUMENT

A.  The Terms Are Valid Agreements to Arbitrate

As demonstrated by the facts laid out above, a valid arbitration agreement exists between AMC+ and each named Plaintiff. An agreement to arbitrate is just a contract, subject to the same

#214138276_v7

requirements as any other contract. The Federal Arbitration Act "places arbitration agreements on an equal footing with other contracts … and requires courts to enforce them according to their terms". *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound[.]" *Kasowitz, Benson, Torres & Friedman, LLP v. Reade*, 98 A.D.3d 403, 404(2012), *aff'd*, 987 N.E.2d 631 (2013). "Under New York law, in order for a contract to be binding, there must be a 'meeting of the minds' and 'a manifestation of mutual assent.'" *Flores v. Chime Fin., Inc.*, No. 21-CV-4735 (RA), 2022 WL 873252, at *4 (S.D.N.Y. Mar. 23, 2022) (citing *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019)). *See also Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) ("A contract may be formed by words or by conduct that demonstrate the parties' mutual assent."). Thus, "an agreement to arbitrate exists where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer*, 868 F.3d at 76. Under New York law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them". *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotations omitted).

"Courts around the country have recognized that an electronic 'click' can suffice to signify the acceptance of a contract, and that there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer*, 868 F.3d at 75. Such "clickwrap . . . agreements," are "routinely uph[e]ld" by courts "for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Id*. (finding that

7

reasonably prudent user would understand that the terms were connected to the creation of a user account even where terms were available only by hyperlink). *See also Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) (Caproni, J.) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts").

For example, *see Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) (compelling arbitration). In *Feld*, the plaintiff had signed up for Postmates via an app. The app's terms of service contained an arbitration clause. The plaintiff claimed to have never read the terms of service. The court nevertheless found that the plaintiff had agreed to the terms of service, including the arbitration clause. The court noted that "Below the spaces for a user's email and password, and above the 'Sign Up' and 'Facebook' buttons is the following text: 'By clicking the Sign Up or Facebook button, you agree to our Terms of Service and Privacy Policy.'" *Id*. at 831. This is virtually identical language to the text below the AMC+ signup button, "By creating an account you confirm that you are over 18 years old and that you've read, understood and agree to our Terms of Use, Privacy Policy and Cookie Policy."

Further, the court in *Feld* noted that this notice containing hyperlinks is "spatially coupled" with the sign-up button, and the notice and the sign-up options are also "temporally coupled," i.e., the notice appears at the time of account creation. *Id*. The court in *Feld* found that a "reasonably prudent [ ] user would understand that the terms were connected to the creation of a user account." *Id*.

The plaintiff in *Feld* objected that the contents of the TOS did not appear on the screen and that Postmates did not require a user to actually examine the terms before assenting. The court rejected both objections, noting the United States Supreme Court has found contract terms enforceable where a consumer was directed elsewhere to review the relevant terms. *Feld*, 442 F.

8

Supp. 3d at 832 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88 (1991)) (cruise ticket's forum-selection clause found enforceable, as ticket directed passengers to review conditions of contract on "last pages 1, 2, 3").  The court noted: "Indeed, 'clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket' to read the fine print…Whether Feld actually clicked on the hyperlinked terms to read the TOS or the Privacy Policy is immaterial; what matters is that notice of these terms was reasonably conspicuous." *Id*. at 831.  Finally, the language of the notice that by "clicking the Sign Up or Facebook button, you agree to [Postmates'] Terms of Service and Privacy Policy" put reasonably prudent users on inquiry notice.  This is a "clear prompt directing users to read the [TOS] and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Id*.[4]

In this case, immediately under the CREATE ACCOUNT button, Plaintiffs were told "By creating an account you confirm that you are over 18 years old and that you've read, understood and agree to our Terms of Use, Privacy Policy and Cookie Policy." *See, e.g., Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 108 (S.D.N.Y. 1995) (compelling arbitration and taking note that each plaintiffs' signature is immediately preceded by the typed clause "understood and agreed").  The Terms, including their requirement to arbitrate, were hyperlinked.  Assuming the truth of Plaintiffs' allegations in the Complaint that they are AMC+ subscribers, they agreed to the Terms, including to the arbitration provisions.

B.      The Dispute Falls Within The Scope of the Arbitration Agreements.

Although there is a general presumption that questions of arbitrability should be decided by the courts, *see PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996), the issue may

---

[4] *Accord, Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439–40 (S.D.N.Y. 2019) ("Here, there was a manifestation of an agreement on behalf of Mr. Camilo when he clicked 'I ACCEPT' in order to continue using the Lyft Platform. Mr. Camilo knew he could not proceed without accepting the new Terms of Service, and Mr. Camilo had the opportunity, though he chose not to use it, to read the entire updated Terms of Service.")

be submitted to an arbitrator when "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator". *Contec Corp. v. Remote Sol.Co.*, Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks, emphasis, and citation omitted). *Accord*, *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, LLC, 371 F.Supp.2d 571, 575–76 (S.D.N.Y. 2005) (applying New York law and finding contractual language that delegates to an arbitrator disputes involving "meaning, construction, validity and/or enforceability" of the parties' agreement "clearly and unmistakably evidences the parties' intent to submit questions of arbitrability to an arbitrator").

This arbitration agreement does submit the issue of arbitrability to the arbitrator. "THE PARTIES AGREE THAT THE ARBITRATOR, AND NOT ANY FEDERAL, STATE, PROVINCIAL OR LOCAL COURT OR AGENCY, SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES RELATING TO THE INTERPRETATION, APPLICABILITY, ENFORCEABILITY OR FORMATION OF THIS AGREEMENT TO ARBITRATE." Melodia Decl. ¶2, Ex. A, Vela Terms, Section 24, Dispute Resolution; Melodia Decl. ¶3, Ex. B, Nuñez/Germuga Terms, Section XXIV, Dispute Resolution.

However, if this Court were to make a determination about arbitrability, the claims in the Complaint are within scope. The Complaint, per Plaintiffs, is about the alleged sharing of video viewing information when Plaintiffs use the Website and the services. *See* Complaint ¶2 (suing AMC for its alleged "unlawful disclosure and retention of Plaintiffs' and its other consumers' personally identifiable information (including information that identifies a person as having requested or obtained specific video materials or services)". As set forth above, the Terms require individual binding arbitration to resolve any claim, dispute, or controversy arising out of or relating

to the website, the services, or the Terms, with only an inapplicable exception for small claims court matters. Melodia Decl. ¶2, Ex. A, Vela Terms, Section 24, Dispute Resolution; Melodia Decl. ¶3, Ex. B, Nuñez/ Germuga Terms, Section XXIV, Dispute Resolution.

C.  The Court Should Stay All Proceedings Pending Arbitration

In addition to compelling arbitration of Plaintiffs' individual claims to JAMS, this Court should stay all further proceedings pending arbitration. The FAA provides that a party to a written arbitration agreement may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4, and the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id*. § 3.

The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). "Stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results." *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008), *aff'd*, 328 F. App'x 42 (2d Cir. 2009) (citations omitted). The Second Circuit has "counsel[ed] that courts should stay litigation pending arbitration to avoid converting an otherwise-unappealable interlocutory stay order into an appealable final dismissal order, thus enabling parties to proceed to arbitration directly." *Dylan 140 LLC v. Figueroa*, 982 F.3d 851, 858 n.2 (2d Cir. 2020).

V.  CONCLUSION

For all of the above reasons, AMC+ respectfully moves to stay this case and compel individual (non-class) arbitration pursuant to the Terms.

Dated: New York, New York
May 1, 2023

By: /s/ *Mark S. Melodia*
Mark Spurrier Melodia
Sophie Kletzien
**HOLLAND & KNIGHT LLP**
31 West 52nd Street
New York, NY 10019
(212)-513-3200
Fax: (212)-385-9010
mark.melodia@hklaw.com
sophie.kletzien@hklaw.com
*Counsel for Defendant*
*AMC Networks, Inc.*

#214138276_v7