UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD VELA, NICHOLAS NUÑEZ, and ANDY GERMUGA individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

AMC Networks, Inc. d/b/a/ AMC+,

Defendant.

Case No. 1:23-cv-02524-ALC

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

III. LEGAL STANDARD ........ 2

IV. ARGUMENT ........ 3

A. Plaintiffs did not agree to individually arbitrate because they had no notice of AMC's Terms containing the arbitration clause and did not unambiguously assent to them. ........ 4

1. AMC did not present Plaintiff Nuñez with notice of its Terms at all. ........ 4

2. AMC did not give Plaintiffs Vela and Germuga inquiry notice of the Terms containing the arbitration clause. ........ 4

3. Plaintiffs did not unambiguously manifest their asset to arbitrate. ........ 11

B. Because there is no valid arbitration agreement, the Court need not consider AMC's arguments regarding the scope of the arbitration language. ........ 12

C. AMC's motion should not be granted, but if it is, Plaintiffs agree a stay is warranted. ........ 12

V. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017) ... 2, 3, 11

*AT & T Techs., Inc. v. Communications Workers of Am.*,
475 U.S. 643, 648, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986) ... 3

*Aubrey v. New Sch.*,
No. 21-CV-4915 (KMK), 2022 WL 3867832 (S.D.N.Y. Aug. 30, 2022) ... 6

*Berkson v. Gogo LLC*,
97 F.Supp.3d (E.D.N.Y. 2015) ... 5, 9, 11

*Bernadino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) ... 5, 8, 10, 11

*Doctor's Assocs., Inc. v. Alemayeho*,
934 F.3d 245 (2d. Cir. 2019) ... 2

*Feld v. Postmates, Inc.*,
442 F.Supp.3d 825 (S.D.N.Y. 2020) ... 3, 4, 9

*Fteja v. Facebook, Inc.*,
841 F.Supp.2d 829 (S.D.N.Y. 2012) ... 5, 9

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015) ... 12

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d. Cir. 2017) ... 2, 3, 5, 8, 12

*Nicosia v. Amazon*,
834 F.3d, 220 (2d. Cir. 2016) ... 2, 3, 5

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ... 3, 9

*Soliman v. Subway Franchisee Advert. Tr., Ltd.*,
999 F.3d 828 (2d. Cir. 2021) ... 4

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Specht v. Netscape Communications, Corp.*
306 F.3d 17 (2d. Cir. 2002)....................2, 3, 4, 5

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)....................2, 4, 5, 12

*United States v. Gasperini*,
894 F.3d 482 (2d Cir. 2018)....................6

*Whitt v. Prosper Funding LLC*,
No. 1:15–CV–136–(GHW), 2015 WL 4254062 (S.D.N.Y. July 14, 2015)....................9

*Zachman v. Hudson Valley Federal Credit Union*,
49 F.4th 95 (2d. Cir. 2022)....................2, 3, 4

**Statutes**

Federal Arbitration Act....................2
Minnesota Video Privacy Law, M.S.A. §325I.01....................1
New York Video Consumer Privacy Act, N.Y. General Business Law §§ 670-675....................1
Video Privacy Protection Act....................1

## I. INTRODUCTION

AMC Networks, Inc. d/b/a/ AMC+ ("AMC" or "Defendant") argues that Plaintiffs Ronald Vela, Nicholas Nuñez, and Andy Germuga ("Plaintiffs") agreed to individually arbitrate any claims arising out of their use of AMC's streaming video platform, AMC+. AMC is wrong. Not one of the plaintiffs in this action assented to AMC's Terms of Use (the "Terms"), which contain the arbitration clause. Indeed, Plaintiffs could not assent to individual arbitration because they had no notice of the Terms, and therefore are not bound by them. AMC's motion to compel individual non-class arbitration and to stay this proceeding should be denied.

## II. BACKGROUND

Plaintiffs are subscribers to AMC+, AMC's video streaming service, who filed this action on March 24, 2023. ECF No. 1. Plaintiff Vela alleges that AMC violated the federal Video Privacy Protection Act ("VPPA") by disclosing his personally identifiable information ("PII") to Meta without his informed, written consent, and violated the Minnesota Video Privacy Law ("MVPL") by retaining his PII for longer than necessary. *Id.* ¶¶ 63-68. Plaintiffs Germuga and Nuñez allege that AMC violated the New York Video Consumer Privacy Act ("NYVCPA") when it retained their PII for longer than necessary for the purpose for which it was collected. *Id.* ¶¶ 69-80. On May 1, 2023, AMC filed a motion to compel individual arbitration and stay proceedings arguing that Plaintiffs agreed to AMC's Terms, which require individual arbitration in this case. ECF No. 14 ("AMC Br."). AMC is wrong on the facts and the law.

On the facts, AMC's argument fails because Plaintiff Nuñez was never presented with notice of AMC's Terms at all. Without notice of the Terms, Plaintiff Nuñez could not assent to or be bound by them.

On the law, AMC's argument fails because it ignores that its account creation page did not give Plaintiffs Vela or Germuga notice of the Terms sufficient for assent. Specifically, a potential

subscriber signing up to AMC+ could not see notice of AMC's Terms without scrolling down AMC's account creation webpage, the Terms are not obviously hyperlinked, and the overall design of the signup page draws a potential subscriber's attention away from the Terms, assuming the reference to them was even displayed on the user's screen. As a result, Plaintiffs Vela and Germuga (and other putative class members) were given no notice of the Terms and did not agree to individually arbitrate this action with AMC.

## III. LEGAL STANDARD

Under the Federal Arbitration Act, a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Specht v. Netscape Communications, Corp.* 306 F.3d 17, 26 (2d. Cir. 2002). "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Federal Credit Union*, 49 F.4th 95, 101-02 (2d. Cir. 2022) (citing *Doctor's Assocs., Inc. v. Alemayeho*, 934 F.3d 245, 254 (2d. Cir. 2019)); *see also Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 464 (S.D.N.Y. 2017). "It is common ground that a court rather than an arbitrator should decide whether a valid agreement to arbitrate existed." *Applebaum*, 263 F. Supp. 3d at 464. Courts deciding motions to compel arbitration draw all reasonable inferences in favor of the non-moving party. *See Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d. Cir. 2017) (citing *Nicosia v. Amazon*, 834 F.3d, 220, 229 (2d. Cir. 2016)).

Whether the parties have entered an agreement to arbitrate is determined by state contract law. *See Zachman*, 49 F.4th at 101. In New York, "[t]he manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). A party may be bound by the terms of a contract via inquiry notice if the terms were obvious and called to the party's attention. *Id*. at 289. "Whether a reasonably prudent user would be on inquiry notice turns on the

clarity and conspicuousness of arbitration terms." *Meyer*, 868 F.3d at 75 (quoting *Specht*, 306 F.3d at 30) (quotations removed). "[I]n the context of web-based contracts…clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (citing *Nicosia*, 834 F.3d at 233); *Feld v. Postmates, Inc.*, 442 F.Supp.3d 825, 830 (S.D.N.Y. 2020) ("Whether a user is on inquiry notice is a fact-intensive analysis[,]" which "depends on the 'clarity and conspicuousness of arbitration terms.'"). "Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract… as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016). A party that has inquiry notice of terms may be bound by them if they "assent to them through conduct that a reasonable person would understand to constitute assent." *Zachman*, 49 F. 4th at 102.

Courts deciding motions to compel arbitration apply a "standard similar to that applicable for a motion for summary judgment." *Meyer*, 868 F.3d at 74 (2d. Cir. 2017) (citing *Nicosia*, 834 F.3d at 229 (2d. Cir. 2016). Unless the parties clearly provide otherwise, "the question of arbitrability—whether a[n] ... agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986)). *See also Applebaum*, 263 F. Supp. 3d at 464 ("It is common ground that a court rather than an arbitrator should decide whether a valid agreement to arbitrate existed.").

## IV. ARGUMENT

AMC argues that Plaintiffs were put on inquiry notice of the Terms by way of a sentence at the beginning of the account creation process, which purports to notify the user that "[b]y creating an account you confirm that you are over 18 years old and that you've read, understood and agree to our Terms of Use, Privacy Policy, and Cookie Policy." ("Notice.") ECF No. 17 at 2.

This is wrong. AMC never presented Plaintiff Nuñez with notice of its Terms at all, and AMC's presentation of its Notice to Plaintiffs Vela and Germuga was not sufficiently "clear or conspicuous" to put either of them on notice. *See Soliman v. Subway Franchisee Advert. Tr., Ltd.*, 999 F.3d 828, 834 (2d. Cir. 2021). As a result, none of the plaintiffs in this action assented to AMC's arbitration clause.

**A. <u>Plaintiffs did not agree to individually arbitrate because they had no notice of AMC's Terms containing the arbitration clause and did not unambiguously assent to them.</u>**

**1. <u>AMC did not present Plaintiff Nuñez with notice of its Terms at all.</u>**

Plaintiff Nuñez did not have notice of the Terms because AMC did not present them to him at any point during his signup process. Plaintiff Nuñez created his AMC+ account via the AppleTV application installed on his laptop. Compl. ¶ 70; Declaration of Nicholas Nuñez ("Nuñez Decl., ¶ 2"). At no point during the signup process for any user accessing AMC+ content via the AppleTV application does AMC present a subscriber with notice of the Terms. *See* Declaration of Samuel R. Jackson ("Jackson Decl."), ¶¶ 11-15. Because Plaintiff Nuñez had no notice of AMC's Terms containing the arbitration clause, he cannot have agreed to arbitrate his claims against AMC.

**2. <u>AMC did not give Plaintiffs Vela and Germuga inquiry notice of the Terms containing the arbitration clause.</u>**

AMC's own arguments show why and how Plaintiffs Vela and Germuga lacked inquiry notice of the Terms and the arbitration clause contained within them.

A user may be bound by a website's terms if they are presented in such a manner that the user is put on inquiry notice of their existence. *See Starke*, 913 F.3d at 289; *Feld*, 442 F. Supp. 3d at 830; *Zachman*, 49 F.4th at 102; *Soliman*, 999 F.3d at 834. "Inquiry notice is 'actual notice of circumstances sufficient to put a prudent person upon inquiry.'" *Soliman*, 999 F.3d at 834 (citing *Specht*, 306 F.3d at 30 n.14). "This often turns on whether the contract terms were presented to the

offeree in a clear and conspicuous way." *Starke*, 913 F.3d at 289. Courts assess a host of factors to determine whether a website's design and interface put a user on inquiry notice. *See Nicosia*, 834 F.3d at 235-238 (analyzing website features such as how a user manifested assent, the spatial proximity of defendant's notice, whether features on the page distracted the user from viewing the notice, and whether the notice was visually distinct from other features on the page to determine whether they would put a user on inquiry notice); *Berkson v. Gogo LLC*, 97 F.Supp.3d at 401-403 (E.D.N.Y. 2015) (analyzing spatial proximity, obvious nature of hyperlinks, whether the design of the website made the terms obvious to the user; whether the manifestation of assent is obscured by also manifesting assent to purchase or subscribe to a product). The factors include, but are not limited to: (i) whether the website's notice of terms is clearly visible on the screen without requiring the user to scroll down the page;[1] (ii) the spatial and temporal proximity between the website's notice of its terms and the mechanism by which a user manifests assent;[2] (iii) whether the reference to the terms is visually distinct;[3] (iv) whether the notice to the terms of service are hyperlinked on the page; and (v) whether the presentation of the page calls the user's attention to the website's terms.[4] The signup pages that Plaintiffs Vela and Germuga navigated fails on all of these factors.

---

[1] *See Meyer*, 868 F.3d at 78; *Bernadino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017); *Berkson*, 97 F. Supp. 3d at 395 (quoting *Specht*, 306 F.3d at 32).

[2] *See Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 834-835 (S.D.N.Y. 2012); *Meyer*, 868 F.3d at 78; *Nicosia*, 834 F.3d at 236; *Bernadino*, 2017 WL 7309893 at *9; *Starke*, 913 F.3d at 293-294.

[3] *See Fteja*, 841 F.Supp.2d at 834-835; *Meyer*, 868 F.3d at 78; *Berkson*, 97 F.Supp.3d at 400, 404; *Bernadino*, 2017 WL 7309893 at *9.

[4] See *Meyer*, 868 F.3d at 78; *Nicosia*, 834 F.3d at 236-37; *Bernadino*, 2017 WL 7309893 at 9; *Starke*, 913 F.3d at 294.

First, the Notice of AMC's Terms is not visible on the first signup page without scrolling down that page.[5] *See* Jackson Decl., ¶¶ 5-6. In August 2021, when AMC+ launched, *see* AMC Br. at 1, the first signup page appeared as follows:




*Figure 1*[6]

Compare Plaintiff's Figure 1 with the image presented by AMC. *See* AMC Br. at 2.

[5] The screenshot AMC provides in its motion is misleading because it includes notice of the Terms, which is only visible after scrolling down. *See* AMC Br. at 2.

[6] This screenshot comes from the Wayback Machine, an internet archive that shows how websites looked in the past. Courts in this Circuit rely on the Wayback Machine. *See, e.g.*, *United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018) (finding government could rely on screenshots from the Wayback machine); *Aubrey v. New Sch.*, No. 21-CV-4915 (KMK), 2022 WL 3867832, at *2 (S.D.N.Y. Aug. 30, 2022) (taking "judicial notice of this publicly available information" via the Wayback Machine.").




*AMC's Figure*

Notice of AMC's Terms is only visible to users that choose to scroll down the webpage. *See* Jackson Decl., ¶¶ 6-8. Compare Figure 1 with the image below, which provides a full screenshot of the user's screen once she has scrolled down the webpage.




*Figure 2*

*See* Jackson Decl., ¶ 7.

Courts will not find inquiry notice when a user is required to scroll down a webpage before being presented with terms and conditions, *see Specht*, 306 F.3d at 20, and they routinely review webpages to determine whether notice of applicable terms are displayed on the webpage when it loads, or whether the user must scroll down the page and go searching for them. *See Bernadino*, 2017 WL 7309893, at *9 ("No scrolling was needed to access the hyperlink to the TOU."); *Meyer*, 868 F.3d at 78 ("The entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service."). An example of the screens which the *Meyer* and *Bernadino* courts found enforceable clearly displays the notice of its terms on one screen as depicted below:

**MEYER**

Addendum A, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) [Dkt. #51-1]:




**BERNARDINO**

Decl. of Antonio Burgos, Ex. 4 [Dkt. #66-4] (scaled to dimensions of second image in 3d Decl. of Ralph E. Labaton, Ex. B [Dkt. #75-2]):




*Figure 3*

*Bernadino*, 2017 WL 7309893, at *13, App'x A. Moreover, AMC's webpage is designed so that a user has no need to scroll down to fulfill the user's primary objective of clicking the "CREATE ACCOUNT" button to proceed through the process of subscribing to AMC+.

Second, AMC's Notice does not alert a user who happened to scroll down the page that the words "Terms of Use" are hyperlinked. Courts require a "clear prompt directing the user to read"

hyperlinked terms. *Sgouros*, 817 F.3d at 1035; *see also Berkson*, 97 F. Supp. 3d at 404 (finding that "terms of use" were not made "readily and obviously available to [the consumer]" where the "hyperlink to the 'terms of use' was not in large font, all caps, or in bold" and noting "[b]y contrast, the 'SIGN IN' button is very user-friendly and obvious, appearing in all caps, in a clearly delineated box in both the upper right hand and the lower left hand corners of the homepage"); *see also* Figure 3, illustrating hyperlinks which inform the user they operate as a hyperlink to a website's terms.

AMC's brief itself clearly shows that its Notice is not underlined and is in the same small, light grey font as the surrounding text. *See* AMC Br. at 2. AMC argues that *Feld v. Postmates, Inc.* supports its position; in fact, the case cuts for Plaintiffs because the relevant "Terms of Service" text was in a darker, more prominent font than the surrounding text. *See Feld v. Postmates, Inc.*, 442 F.Supp.3d 825 (S.D.N.Y. 2020); *Feld v. Postmates, Inc.*, (No. 1:19-cv-03899 (PKC), Dkt. No. 23 (Motion to Compel Arbitration) (S.D.N.Y. Aug. 26, 2019) at 3 (showing the "Terms of Service" text in a darker, more prominent font than the surrounding text) (see Jackson Decl. Exhibit 1); *see also Whitt v. Prosper Funding LLC*, No. 1:15–CV–136–(GHW), 2015 WL 4254062, at *1 (S.D.N.Y. July 14, 2015) (finding agreement to arbitrate where the term "borrower registration agreement," was underlined and shaded blue to signify a hyperlink); *Fteja*, 841 F.Supp.2d at 835 (hyperlink was underlined and near words to the effect that by clicking on the sign up button, the consumer is indicating that the consumer has read and agrees to the Terms of Service). The lack of any visual cue to show a user that the Terms are hyperlinked cuts against a finding of inquiry notice.

<u>Third</u>, the Notice is not visually distinct. As noted above, the Notice is written in small, light grey font. *Compare Berkson*, 97 F.Supp.3d at 404 (comparing the notice language's small font and lack of distinguishable features with the user-friendly and obvious "SIGN IN" button, presented in all caps); *with Feld*, No. 1:19-cv-03899 (PKC), Dkt. No. 23 (Motion to Compel

Arbitration) (S.D.N.Y. Aug. 26, 2019) at 3 (showing the "Terms of Service" text in a darker, more prominent font than the surrounding text) (*see* Jackson Decl. Exhibit 1); *and Bernadino*, 2017 WL 7309893 at *9 (analyzing how the black font of the notice provision contrasted with the white background and included blue font indicating a hyperlink to the Terms). This was a deliberate choice. AMC designed other features of the signup page to grab a user's attention. For example, the "CREATE ACCOUNT" button, which is placed inside a bright, turquoise outline with bold white lettering, changes color when a user hovers their mouse over it from turquoise outline with black filling to be all-turquoise with black lettering as depicted below:




*Figure 4*

*See* Jackson Decl., ¶ 10. AMC knows how to design a website to attract a user's attention, but deliberately chose to obscure its Notice in small, unobtrusive font. This cuts against a finding of inquiry notice.

Fourth, AMC's webpage design suggests to a reasonable user that any terms that would purportedly bind her would be clearly marked close to the place where she would assent to them. For example, in the middle of the webpage, AMC places a checkbox which purports to obtain the

user's consent to receive notifications from AMC. *See* Figure 1. By placing the language right next to a checkbox where a user can show her assent, AMC clearly and conspicuously gives a user notice of what she is consenting to. In so doing, AMC suggests that other instances where a user may become bound to any terms will be similarly located next to notice of the terms and will probably require a checkbox. *See Applebaum*, 263 F.Supp.3d at 466 (evaluating inquiry notice under 'the totality of the circumstances'); *Berkson*, 97 F.Supp.3d at 377-381 (analyzing what constitutes the "average internet user"). But AMC further disrupts a user's reasonable expectations where one should expect to encounter a notice of terms and conditions by placing the Notice on the first page of a two-step process: any reasonable user can (and should) expect to encounter a notice of Terms during Step 2 – when the subscription account is finalized and created. Considering the actual signup process that prospective AMC+ subscribers go through demonstrates that such users are not given inquiry notice of AMC's Terms. Plaintiffs Vela and Germuga, who signed up through that process, were not given inquiry notice such that they could assent to arbitration embedded within the Terms.

**3. <u>Plaintiffs did not unambiguously manifest their asset to arbitrate.</u>**

AMC argues that by clicking the "CREATE ACCOUNT" button, Plaintiffs manifested their unambiguous assent to the Terms' arbitration clause. AMC Br. at 2, 8 But this cannot be right. Because the Notice of the Terms does not appear on the screen unless a user scrolls down, a user clicking "CREATE ACCOUNT" has no way to know that doing so binds her to an arbitration agreement. Additionally, a user would not reasonably expect that clicking "CREATE ACCOUNT" would bind her because the "Step 1" and "Step 2" icons at the top of the page suggest that there is more to the process than just clicking "CREATE ACCOUNT." By separating the "CREATE ACCOUNT" button from the conclusion of the signup process, AMC deliberately created ambiguity about what clicking the button does—a reasonable user would understand that clicking

the button advances the signup process to Step 2, where, presumably, there would be a final step. *See Bernadino*, 2017 WL 7309893, at *9 (comparing the defendant's contemporaneous notice with purchase to *Meyer*, in which there were steps and buttons between the notice provision and the final step to "register"); *Starke*, 913 F.3d at 292 ("The register button was 'temporally coupled' with the hyperlink – i.e., the consumer was notified of the terms at the time of sale."). Other parts of the webpage illustrate that AMC can be unambiguous about assent when it chooses to, such as its use of the checkbox on the Step 1 page, which clearly asks for the user's consent to receive communications from AMC, *see* Figure 2. Instead of clearly indicating to a user through the webpage's design that clicking "CREATE ACCOUNT" is an unambiguous manifestation of assent, AMC deliberately obfuscated the meaning of the button by hiding the Notice of Terms and locating them at the beginning rather than the end of the signup process.

In sum, there is *nothing* that suggests a reasonable user is manifesting assent to lengthy terms and conditions and waiving constitutional rights by clicking "CREATE ACCOUNT." Thus, AMC has failed to prove Plaintiffs engaged in any action comparable to the signing of a written contract which manifests the assent to be bound to additional terms.

### B. Because there is no valid arbitration agreement, the Court need not consider AMC's arguments regarding the scope of the arbitration language.

Plaintiffs never had reasonable notice of AMC's Terms, including the arbitration agreement, and never assented to them; therefore, there is no valid Arbitration Agreement. Because AMC has failed to establish the first prong of the inquiry, the Court need not consider the second prong and Plaintiffs' claims must proceed in this Court. See *supra* § IV.A.

### C. AMC's motion should not be granted, but if it is, Plaintiffs agree a stay is warranted.

For the reasons discussed above, AMC's motion should be denied. But if it is granted, Plaintiffs agree with AMC that the case should be stayed. *See Katz v. Cellco P'ship*, 794 F.3d 341,

345 (2d Cir. 2015) ("[The text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

## V. **CONCLUSION**

Based upon the foregoing, this Court should deny AMC's motion in its entirety. However, should the Court grant arbitration, a stay, pending arbitration is appropriate.

Dated: May 15, 2023

Respectfully submitted,

*/s/ Samuel R. Jackson*
Samuel R. Jackson (NY Bar No. 5332325)
Hank Bates (to apply for admission *pro hac vice*)
Courtney E. Ross (to apply for admission *pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
519 W 7th St.
Little Rock, Arkansas 72201
Tel: (501) 312-8500
Fax: (501) 312-8505
sjackson@cbplaw.com
hbates@cbplaw.com
cross@cbplaw.com

Douglas I. Cuthbertson
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: (212) 355-9500
Fax: (212) 355-9592
dcuthbertson@lchb.com