**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RONNIE VELA, NICHOLAS NUNEZ, ANDY GERMUGA, TRISHA ICKES, WILLIAM BUCKLEY, PATRICK JAMES, WILLIAM KETTERER, THOMAS APOSTLE, and WENDY KISER, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>AMC NETWORKS, INC.,<br><br>     Defendant. | Case No.: 1:23-cv-02524-ALC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 2

    A.   Summary of Allegations ........................................................................ 2

    B.   Procedural History ................................................................................ 3

    C.   Mediation and Settlement ...................................................................... 4

III. SUMMARY OF THE PROPOSED SETTLEMENT ......................................... 5

    A.   Class Definition ..................................................................................... 5

    B.   Monetary Relief ..................................................................................... 5

    C.   Business Practice Changes ..................................................................... 5

    D.   In Kind Relief ........................................................................................ 6

    E.   Release ................................................................................................... 6

IV.  ARGUMENT ..................................................................................................... 6

V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......... 7

    A.   The Settlement is procedurally fair ........................................................ 8

        1.   The Settlement Class has been vigorously represented ............................ 8

        2.   The Settlement was negotiated at arm's length after the exchange of informal discovery ................................................................................ 9

    B.   The Settlement provides meaningful relief to the Settlement Class .............. 11

    C.   The Settlement treats Settlement Class Members equitably ...................... 14

    D.   The remaining factors weigh in favor approval ................................... 15

VI.  THE COURT WILL BE ABLE TO CERTIFY THE SETTLEMENT CLASS .............. 17

    A.   The requirements of Rule 23(a) are satisfied ....................................... 17

        1.   Numerosity is satisfied ......................................................................... 18

        2.   Commonality is satisfied ....................................................................... 18

        3.   Typicality is satisfied ............................................................................ 19

        4.   Adequacy of representation is satisfied ................................................. 19

    B.   The Settlement Class meets all Rule 23(b)(3) requirements ..................... 21

        1.   Predominance ....................................................................................... 21

        2.   Superiority ............................................................................................ 22

VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ...................... 23

## **TABLE OF CONTENTS**
(continued)

**Page**

VIII.    PROPOSED SCHEDULE OF EVENTS.......................................................................... 25

IX.    CONCLUSION.......................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 21

*Beltran, et al. v. Sony Pictures Entertainment Inc.*,
   No. 22-cv-04858 (N.D. Ill. Dec. 7, 2023) ........................................................... 11

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................... passim

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) .................................................................................... 9

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ........................................................................ 20

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ....................................................................... 15

*George v. Shamrock Saloon II, LLC*,
   No. 17-cv-06663, 2021 WL 3188314 (S.D.N.Y. July 28, 2021) ......................... 25

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ................................... 15

*Handschu v. Special Servs. Div.*,
   787 F.2d 828 (2d Cir. 1986) ............................................................................... 23

*Hicks v. Morgan Stanley & Co.*,
   No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................... 12

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................... 12

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
   18-md-02843 (N.D. Cal. July 11, 2023) .............................................................. 11

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................ 16

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
   270 F.R.D. 45 (D. Mass 2010) ........................................................................... 22

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
   241 F.R.D. 185 (S.D.N.Y. 2007) ........................................................................ 20

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................................. 12

*In re Nassau Cnty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) ......................................................................... 21, 22

**TABLE OF AUTHORITIES**
(continued)

*In re Nissan Radiator/Transmission Cooler Litig.*,
No. 10-cv-07493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ............................................ 19

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................ 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .............................................................. 12, 16

*In re Sinus Buster Products Consumer Litig.*,
No. 12-cv-02429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ............................................ 16

*In re Synchrony Fin. Sec. Litig.*,
No. 18-cv-01818, 2023 WL 4992933 (D. Conn. Aug. 4, 2023) ............................................... 8

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................................ 15

*In re: Vizio, Inc., Consumer Privacy Litig.*,
No. 16-ml-02693, 2019 WL 12966638 (C.D. Cal. July 31, 2019) ............................................ 12

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997) ............................................................... 18, 19

*Martens v. Smith Barney Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................ 19

*Matheson v. T-Bone Rest., LLC*,
No. 09-cv-04214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ............................................ 10

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08-cv-08713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................ 10

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015) ....................................................... 22

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) ............................................................... 7, 8

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ............................................................... 15

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ............................................................... 19

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ................................................................ 18

*Tart v. Lions Gate Ent. Corp.*,
No. 14-cv-08004, 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015) ............................................ 21, 22

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982) ............................................................... 17

**TABLE OF AUTHORITIES**
(continued)

*Viafara v. MCIZ Corp.*,
    No. 12-cv-07452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ............................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................................................ 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................................. 6, 23

*Zeltser v. Merrill Lynch & Co.*,
    No. 13-cv-01531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ........................................... 22

**Statutes**
18 U.S.C. § 2710 ............................................................................................................................ 1

**Rules**
Fed. R. Civ. P. 23(a) ............................................................................................................. 18, 19

Fed. R. Civ. P. 23(b) ............................................................................................................. 21, 22

Fed. R. Civ. P. 23(e) ......................................................................................................... passim

Fed. R. Civ. P. 23(g) ................................................................................................................. 20

**Other Authorities**
Fed. Trade Comm'n, *Consumers & Class Actions: A Retrospective & Analysis of Settlement
    Campaigns* (Sept. 2019) .................................................................................................... 11

*Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ................................................. 6

## I.     **INTRODUCTION**[1]

After informal discovery and months of arms-length negotiations, including two

mediations with the Hon. Wayne Andersen (Ret.), Plaintiffs have reached a settlement with

AMC on terms that provide excellent relief to the proposed class. The proposed settlement is

fair, reasonable, and adequate, plainly warranting preliminary approval.[2]

The Settlement resolves all putative nationwide class claims in four actions.[3] In each,

Plaintiffs allege that Defendant AMC Networks, Inc. ("AMC") violated the Video Privacy

Protection Act, 18 U.S.C. § 2710 *et seq.* ("VPPA"), by disclosing consumers' personally

identifiable information ("PII") via tracking code installed on streaming services AMC+,

Shudder, Acorn TV, ALLBLK, SundanceNow, and HIDIVE ("AMC Services"). Under the

Settlement, AMC will create an $8.3 million non-reversionary cash fund for the benefit of the

Settlement Class. AMC also will remove, suspend, or modify the operation of the Third-Party

Tracking Technologies developed by Meta Platforms, Inc. ("Meta," formerly known as

---

[1] Unless otherwise noted, capitalized terms have the same meanings as in the operative complaint (ECF No. 40) or the Class Action Settlement Agreement ("Settlement"), which is filed concurrently herewith as Exhibit 1 to the Joint Declaration of Douglas I. Cuthbertson and Hank Bates ("Joint Decl.").

[2] AMC has asked Plaintiffs to include the following statement: AMC does not oppose the relief sought in this Motion and supports approval of the Settlement. AMC's consent and resolution of these claims should not be interpreted as agreement with the allegations in the filed complaints, all of which are denied unless they have been explicitly admitted. Moreover, AMC's consent to this filing does not mean that it agrees with the characterization of its conduct or the statements of law related to that conduct in this brief prepared by counsel for Plaintiffs and the Settlement Class.

[3] The actions are: *Vela, et al. v. AMC Networks, Inc.*, No. 1:23-cv-02524 (S.D.N.Y) ("*Vela*"); *Ickes, et al. v. AMC+ Networks, Inc.*, No. 1:23-cv-05730 (S.D.N.Y.) ("*Ickes*"); *Buckley v. AMC Networks, Inc.*, No. 3:23-cv-03630 (N.D. Cal.) ("*Buckley*"); and *James v. Sentai Filmworks, LLC*, No. 5:23-cv-03928 (N.D. Cal.) ("*James*").

Facebook, Inc., "Facebook"), Google LLC ("Google"), X Corp., (formerly known as Twitter), Snap Inc. d/b/a Snapchat, TikTok Ltd., and Braze, Inc.

Plaintiffs vigorously prosecuted this Action on behalf of the Settlement Class and, in that process, developed an understanding of the strengths and weaknesses of their claims. Notwithstanding their confidence in the merits of those claims, Plaintiffs recognize the risks and delays inherent in proceeding through litigation and proving their claims at trial. The Settlement avoids those risks—chief among them, AMC's pending and prospective motions to compel arbitration—and provides immediate, meaningful, and robust monetary and injunctive relief to all members of the Settlement Class.

For these and the additional reasons below, Plaintiffs respectfully request the Court: (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the Settlement; (2) appoint Plaintiffs as Class Representatives for the Settlement Class; (3) appoint Douglas Cuthbertson, Lieff Cabraser Heimann & Bernstein LLP; Hank Bates, Carney Bates & Pulliam PLLC; Michael Reese, Reese LLP; and Kevin Laukaitis, Laukaitis Law, LLC as Class Counsel; (4) direct notice to the Settlement Class and approve the form and manner thereof; (5) authorize retention of Angeion Group LLC ("Angeion") as Settlement Administrator; and (6) set a schedule for final approval of the Settlement and Plaintiffs' request for attorneys' fees, expenses, and Service Awards.

## II.     BACKGROUND

### A.     Summary of Allegations

Plaintiffs allege that AMC intentionally installed the Third-Party Tracking Technologies on AMC Services' websites and apps and selected the specific categories of information the Technologies would capture and transmit to third parties. *See* ECF No. 40 ("Amended Complaint"), ¶¶ 2, 29, 34–35, 38, 46, 52, 59, 65, 70, 72. As a result, when a subscriber views a

particular video on AMC Services, AMC transmits the title and URL of that video, and the subscribers' PII, to third parties via the Third-Party Tracking Technologies installed on that AMC Services website or app. *Id.*, ¶¶ 2, 31, 34, 37, 47–48, 52–53, 55, 61, 62–66, 71, 73.

Plaintiffs all were AMC Services subscribers who paid subscription fees and accessed videos on AMC Services' websites and apps. *Id.*, ¶¶ 75–118. When they did, AMC sent the videos Plaintiffs accessed and their corresponding PII to third parties via the Third-Party Tracking Technologies installed therein. *Id.*

### B.    Procedural History

On January 18, 2023, plaintiffs Gerald McCoy, Andy Germuga, and Nicholas Nuñez filed this putative class case alleging that AMC's disclosure of its subscribers' PII to Meta without informed, written consent violates the VPPA. *See McCoy*, ECF No. 1.

On February 22, 2023, plaintiff Trisha Ickes filed a putative class action against AMC in the Northern District of California, alleging substantially identical claims for violations of the VPPA. *See Ickes et al. v. AMC+ Networks*, No. 3:23-cv-00803 (N.D. Cal.), ECF No. 1.

On March 24, 2023, *McCoy* was voluntarily dismissed. *McCoy*, ECF No. 15. This action—*Vela*—was filed the same day and related to *McCoy*. *See* ECF Nos. 2 (Civil Cover Sheet) & 8 (Related Case Statement). Plaintiff Vela was substituted for McCoy; otherwise, the parties and the allegations in the original *Vela* complaint were substantively identical to those in *McCoy*. *Compare Vela*, ECF No. 1; *with McCoy*, ECF No. 1.  On May 1, 2023, AMC moved to compel arbitration. ECF No. 14. Plaintiffs opposed the motion (ECF No. 18), which remains pending (ECF No. 35).

On July 5, 2023, *Ickes* was transferred to this district and related to *Vela*. *See Ickes*, No. 1:23-cv-05730 (S.D.N.Y.), July 5 & July 21, 2023 docket entries. On July 21, 2023, plaintiff William Buckley filed a putative class action in the Northern District of California against

AMC's subsidiary streaming service, Shudder, alleging substantially identical claims for violations of the VPPA. *See Buckley*, ECF No. 1.

On August 4, 2023, plaintiff Patrick James filed a putative class action in the Northern District of California against AMC's subsidiary streaming service, HIDIVE, alleging substantially identical claims for violations of the VPPA. *See James*, ECF No. 1.

On October 6 and 10, 2023, AMC moved to dismiss or, in the alternative, to transfer *Buckley* and *James* to this district. *See Buckley*, ECF No. 16; *James*, ECF No. 11.  On October 27, 2023 *Buckley* and *James* were voluntarily dismissed. *See Buckley*, ECF No. 20; *James*, ECF Nos. 14 & 15. On December 5, 2023, *Ickes* was voluntarily dismissed. *Ickes*, ECF No. 37.

On December 11, 2023, Plaintiffs filed an Amended Complaint that adds the plaintiffs from *Ickes*, *Buckley*, and *James* to this case, effectively consolidating all four actions.

### C.    Mediation and Settlement

On July 14, 2023, the Parties notified the Court that they had begun good faith settlement negotiations. *See* ECF No. 28. On September 11, 2023, the parties attended a private mediation before the Honorable Wayne Andersen (Ret.) of JAMS. Although the Parties did not settle that day, they continued negotiations and informal discovery in ensuing weeks under the guidance of Judge Andersen. *See* Joint Decl., ¶¶ 23–24. On October 24, 2023, the Parties again mediated before Judge Anderson. *Id.*, ¶ 25. That second mediation culminated in a mediator's proposal on October 24, 2023, which both parties accepted on October 25, 2023. *Id.* The Parties notified the Court of their settlement in principle on October 27, 2023. ECF No. 38. As noted above, the *Ickes, Buckley*, and *James* actions subsequently were voluntarily dismissed and their named plaintiffs incorporated into the Amended Complaint. *See* ECF No. 40.

III.    **SUMMARY OF THE PROPOSED SETTLEMENT**

A.    **Class Definition**

The parties seek certification, solely for purposes of judgment on the proposed

Settlement, of a Settlement Class comprised of:

> all persons in the United States who: (1) were registered users of AMC Services
> through (i) an online website or mobile app owned, controlled, and/or operated by
> AMC or (ii) any Streaming Service and (2) requested or obtained specific video
> content from AMC Services through (i) an online website or mobile app owned,
> controlled, and/or operated by AMC or (ii) any Streaming Service [from January
> 18, 2021 through the date of Preliminary Approval].

Settlement, ¶ 1.34.

B.    **Monetary Relief**

AMC has agreed to pay $8,300,000 to create a non-reversionary Settlement Fund for the

benefit of Settlement Class Members. *Id.*, ¶ 1.36. Settlement Class Members who submit valid

claims through a simple, streamlined process will receive a *pro rata* payment after the deduction

of settlement-related costs, including expenses of notice to the Class and settlement

administration, an any Court-awarded attorneys' fees, expenses, and named plaintiff Services

Awards. *Id.*, ¶¶ 1.20, 1.36, 2.1.

C.    **Business Practice Changes**

In addition to paying monetary damages, AMC has agreed to meaningful business

practices changes designed to remediate the alleged VPPA violations going forward.

Specifically, within 45 days of the entry of Final Judgment, AMC will remove, suspend, or

modify the operation of Third-Party Tracking Technologies so that their use, if any, on AMC

Service will not violate the VPPA. *Id.*, ¶ 2.2. AMC will provide a sworn declaration confirming

it has implemented these changes within 90 days of the entry of Final Judgment. *Id.* AMC cannot

resume using Third-Party Tracking Technologies unless it does so in accordance with the VPPA

(*e.g.*, by obtaining subscribers prior written consent) or the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by judicial decision by the United States Supreme Court or the Second Circuit Court of Appeals. *See id.*

### D.    In Kind Relief

In addition to the monetary and prospective relief described above, AMC will provide a one-week digital subscription to the AMC+ streaming service to all Settlement Class Members who submit valid claims ("In Kind Relief"). *Id.*, ¶ 1.21. No payment or billing information will be required to use the In Kind Relief. *Id.*, ¶ 2.1(d). The Settlement Fund will not be used to pay for In Kind Relief, which AMC will cover separately. *Id.*, ¶ 1.36.

### E.    Release

In exchange for the relief described above, Plaintiffs and the Settlement Class shall release all claims that have or could have been asserted against AMC relating to the facts, transactions, or events alleged in the Amended Complaint. *See id.*, ¶¶ 1.29 (Released Claims), 1.30 (Released Parties), 3.1–3.3 (Release). Specifically, the release covers any claims against AMC "regarding the alleged disclosure of the Settlement Class Members' personally identifiable information and video viewing behavior to any third party." *Id.*, ¶ 1.29.

## IV.    ARGUMENT

The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

Settlement approval is a two-step process. First, the Court must determine whether it "will likely be able to" (i) finally approve the proposed settlement as "fair, reasonable, and adequate"; and (ii) certify a class for purposes of judgment on the proposed settlement. *See* Fed. R. Civ. P. 23(e). After the class is given notice and an opportunity to object, the court holds a hearing to consider whether to finally approve the settlement and certify the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2), (4), (5).

Preliminary approval of the Settlement is warranted here. ***First***, the Court will likely be able to finally approve the proposed Settlement—calling for substantial monetary relief and business practice changes—as fundamentally fair, reasonable, and adequate. ***Second***, the Court will likely be able to certify the Settlement Class at the final approval stage pursuant to Rules 23(a) and (b)(3). ***Third***, the proposed Notice Plan satisfies the requirements of Rule 23(c)(2). Accordingly, the Court should grant Plaintiffs' motion for preliminary approval of the class action settlement and direct notice to the Settlement Class.

## V.   <u>THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.</u>

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A)   the class representatives and Plaintiffs' Counsel have adequately represented the class;
(B)   the proposal was negotiated at arm's length;
(C)   the relief provided for the class is adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and
(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

When applying the Rule 23(e)(2) factors, courts in this Circuit evaluate both the *substantive* terms of the settlement and whether it is *procedurally* fair—*i.e.*, "whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 18-cv-01818, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (cleaned up). That evaluation requires consideration of the nine "*Grinnell* factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which overlap with the Rule 23(e)(2) factors.[4] *See, e.g.*, *Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors.").

**A.    The Settlement is procedurally fair.**

The Court first must consider procedural fairness, which is comprised of two considerations: (i) whether "the class representatives and class counsel have adequately represented the class" and (ii) whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Grinnell*, 495 F.2d at 463 (the third *Grinnell* factor—*i.e.*, the stage of the proceedings and the amount of discovery completed—overlaps with Rule 23(e)(2)(B)'s "negotiated at arms length" factor).

**1.    The Settlement Class has been vigorously represented.**

Adequacy of representation requires consideration of whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified,

---

[4] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Plaintiffs' interests are aligned with the Settlement Class: they suffered the same alleged injury (improper disclosure of personally identifiable information without consent) and have the same interest in stopping that disclosure. Moreover, the Settlement's business practice changes uniformly benefit all Settlement Class Members, so there can be no conflict among them. Further, Plaintiffs' counsel have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, including those under the VPPA. *See* Joint Decl., ¶¶ 41–55 & Exs. 2–4 (firm resumes).

Plaintiffs' counsel engaged in a thorough pre-suit investigation and significant informal discovery prior to settlement, which informed their understanding of the merits of the case. *Id.*, ¶¶ 18–19, 23, 32. Plaintiffs also opposed AMC's motion to compel arbitration, providing further insight into the strength of their VPPA claims and AMC's potential defenses. *Id.*, ¶¶ 9, 20, 30. Counsel are eminently qualified to conduct this litigation—and indeed, as discussed below, have done so vigorously to date. *See* Section V.A.2, *infra*.

> ## 2.    The Settlement was negotiated at arm's length after the exchange of informal discovery.

Determined, arm's length negotiations to settle this case began long before formal mediation. AMC made clear from the outset that it would only entertain a global resolution of all the VPPA putative class actions against it. Joint Decl., ¶¶ 21–22. Absent a global resolution, AMC was prepared to pursue motions to compel arbitration, like the one pending in this action, in the other cases as well. *Id.*, ¶ 22. Timely and consolidated mediation thus was critical because AMC's motion (if granted) could foreclose all Plaintiffs' class claims. Accordingly, between

July and September 2023, the Parties in *Vela*, *Ickes*, *James*, and *Buckley* engaged in significant, successful efforts to coordinate those actions into a global mediation. *Id.*

The Parties engaged in private mediation before the Honorable Wayne R. Andersen (Ret.), an experienced mediator, to assist them in reaching the Settlement. The Parties prepared and reviewed detailed mediation statements and other supporting materials before participating in a day-long mediation with Judge Andersen. *Id.*, ¶ 21. Only after weeks of additional negotiations, exchange of additional informal discovery between the Parties, and a second mediation before Judge Andersen did the proposed Settlement manifest. *Id.*, ¶¶ 23–25. These efforts were unquestionably at arm's length and non-collusive.

Although formal discovery did not take place, the parties informally exchanged information before, between, and after their mediation sessions with Judge Andersen, bearing on the merits of Plaintiffs' claims, the size of the class, and the Third-Party Tracking Technologies operating on AMC Services. *Id.*, ¶¶ 21, 23–24. Accordingly, Plaintiffs' counsel—attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—are well-informed about the strengths and risks of the claims, as well as their value. *Id.*, ¶¶ 29, 32, 41–55.

This thoroughness and consistently adversarial posture favors preliminary approval. *See, e.g.*, *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-08713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) ("efficient, informal exchange of information" sufficient to recommend settlement approval); *Matheson v. T-Bone Rest., LLC*, No. 09-cv-04214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (informal discovery allowed plaintiffs to "weigh the strengths and weaknesses of their claims" and "day-long mediation allowed them to further explore the claims and defenses"). As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is procedurally fair.

**B.**    **The Settlement provides meaningful relief to the Settlement Class.**

The Court should find that the Settlement's benefits are sufficiently robust to merit notice to Settlement Class Members. The $8.3 million Settlement Fund represents a significant monetary award. Initial data indicates that approximately 6.3 million AMC Services subscribers fall within the Settlement Class. Assuming 4% of eligible Settlement Class Members will submit claims,[5] *pro rata* payments from the Net Settlement Fund[6] would amount to approximately $21 to each claimant. That benefit alone would be substantial—and comparable to what plaintiffs recently have obtained in other VPPA cases. *See, e.g.*, *Beltran, et al. v. Sony Pictures Entertainment Inc.*, No. 22-cv-04858 (N.D. Ill. Dec. 7, 2023), ECF No. 52 (Mot. for Final Approval) (estimating $30.94 payment to each claimant); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 18-md-02843 (N.D. Cal. July 11, 2023), ECF No. 1145 (Mot. for Final Approval) (preliminary estimate of $35 average payment to claimants for release of numerous claims, including under the VPPA); *In re: Vizio, Inc., Consumer Privacy Litig.*, No.

---

[5] Plaintiffs use a 4% claims rate for illustrative purposes only. Actual claims rates in class settlements can vary widely depending on factors that are not easily predictable, including media reporting on the settlement, individual class members' reactions to the underlying cause of action, the size of the class, effectiveness of the notice program, the relative ease of submitting a claim, and the nature or amount of potential relief available to claimants. One analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%." See Fed. Trade Comm'n, *Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns* at 11 (Sept. 2019), *available at* https://www.ftc.gov/system/files/documents/reports/ consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_ report_0.pdf (last accessed Dec. 11, 2023).

[6] The Net Settlement Fund is the amount remaining for distribution to the Settlement Class after deducting settlement administration expenses, any plaintiff service award ordered by the Court, and any award of attorneys' fees and costs ordered by the Court. *See* Settlement, ¶ 1.20.

16-ml-02693, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%).

In addition to monetary relief, the Settlement includes valuable business practice changes—namely, that AMC will remove, suspend, or modify its use of the Third-Party Tracking Technologies to prevent further violations of the VPPA and its subscribers' privacy. *See* Section III.C, *supra.* This is the same injunctive relief Plaintiffs would have sought following trial. Accordingly, Settlement Class Members will benefit from not only monetary relief but also forward-looking business practice changes, and will benefit from them now.

Such relief is particularly significant considering the costs and risks of further litigation, the proposed method of distributing relief to the Settlement Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. Fed. R. Civ. P. 23(e)(2)(i)–(iv); *see also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors 1, 4 to 6, 8, and 9).

**Risks of further litigation**. Continued litigation of this case would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring courts to consider "the costs, risks, and delay of trial and appeal"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (Rule 23(e)(2)(C)'s "risks" factor overlaps with *Grinnell* factors one, four, five, and six). Indeed, the Settlement resolves a complex class action—previously, *four* separate class actions—that has been and would continue to be costly to litigate through trial. *See* Joint Decl., ¶ 34; *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (settlement avoids costs associated with "inherently complex" class actions); *Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (similar).

Litigation inherently involves risk. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Here, however, AMC's pending motion to compel arbitration is a particularly salient risk. *See* Section V.B, *supra*. If granted, that motion would foreclose any class-wide recovery for Settlement Class Members. If Plaintiffs defeat that motion, moreover, litigation remains a costly and risky prospect. They likely would need to retain expensive forensics experts and litigate multiple *Daubert* motions. Certifying a class, surviving summary judgment, and proving liability at trial likely would require exhaustive briefing and additional first- and third-party discovery—*i.e.*, discovery from AMC and those to whom the Third-Party Tracking Technologies disclosed Settlement Class Members' PII. Achieving a class-wide recovery like that provided by the Settlement also would require maintaining class status through trial—a difficult and uncertain prospect. And even if the Court were to certify the Settlement Class (and deny efforts to decertify it thereafter), even an initially favorable result would likely be delayed and possibly defeated by any Rule 23(f) petition.

*Risks of establishing damages*. There are at least two additional risks attending Plaintiffs' damages claims. *See Grinnell*, 495 F.2d at 463 (factor five). *First*, proving *actual* damages likely would require substantial discovery into how subscribers' data is transmitted by the Third-Party Tracking Technologies and subsequently used by recipients. *Second*, the VPPA also provides for *statutory* damages, but imposition of such damages on a class-wide basis is not a straightforward matter.

In sum, the Settlement eliminates these risks while providing significant relief to the Settlement Class. These factors sharply weigh in favor of preliminary approval.

*Proposed method of distributing relief*. The proposed method of distributing relief to the class must be "effective." Fed. R. Civ. P. 23(e)(2)(C)(ii). As detailed below in Section VII,

Angeion has designed a comprehensive Notice Plan that provides the best notice to the Settlement Class practicable under the circumstances. Settlement Class Members will submit claims using a simple, straightforward Claim Form, designed to maximize the number of claims made. *See* Settlement, Ex. A (Claim Form). Those who submit valid claims will receive payment by electronic means or by mailed checks. Settlement, ¶ 2.1(c).

*Attorneys' fees and Service Awards*. Plaintiffs' counsel may move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii) . In accordance with the Settlement's terms and the schedule set by the Court (*see* Section VII, *infra*), Plaintiffs' counsel will apply for an award of attorneys' fees not to exceed one-third of the Settlement Fund (*i.e.*, $2,766,666.66). *See* Settlement, ¶ 8.1. Plaintiffs' counsel separately will seek payment for their expenses and costs. *Id.* The Settlement is not conditioned upon award of fees. *Id.*, ¶¶ 8.4 & 8.5. Plaintiffs will apply for service awards of up to $2,000 each ($18,000 total) for their efforts on behalf of the Settlement Class. *Id.*, ¶ 8.3.

*No other agreements*. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement.

## C.    The Settlement treats Settlement Class Members equitably.

The proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D) . AMC will establish a common fund from which payments will be distributed to Settlement Class Members who submit valid claims on a *pro rata* basis. *See* Section III.B, *supra*. The business practice changes provided by the Settlement, moreover, will equally benefit all members of the Settlement Class.  *See* Section III.C, *supra*. This factor thus weighs in favor of preliminary approval.

### D.    The remaining factors weigh in favor approval.[7]

**Grinnell** *factors eight and nine*. Courts also evaluate the reasonableness of a proposed settlement in light of the best possible recovery, discounted by the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463. Analyzing these factors "does not involve the use of a mathematical equation yielding a particularized sum" and instead "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

As discussed above, the Settlement's relief is substantial, both on its own and when compared to analogous VPPA settlements. *See* Section V.B, *supra*. That is so, notwithstanding AMC's hypothetical exposure should Plaintiffs litigate and prevail on all aspects of their claims and damages theories—an uncertain prospect for the reasons discussed in Section V.B, *supra*. Indeed, even if Plaintiffs cleared the numerous hurdles leading up to trial (at the cost of years of more litigation and, most likely, hundreds of thousands of dollars), a larger recovery is not certain. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, *5 (S.D.N.Y. Mar. 24, 2008) (settlement was robust and immediate compared to some "speculative payment of a hypothetically larger amount years down the road").

Courts recognize that in the settlement approval context, claims' hypothetical value must be discounted by risks and practical realities. Thus, the Second Circuit has noted that courts may approve settlements even where the recovery is a fraction of the amount recoverable at trial. *See,*

---

[7] Because the Settlement Class has not received notice of the Settlement, consideration of *Grinnell* factor two (reaction of the class) is premature. *See Grinnell*, 495 F.2d at 463; *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).

*e.g.*, *Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) (same); *accord, e.g.*, *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294-95 (E.D. Mich. 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

Here, Plaintiffs' counsel weighed the risks against the hypothetical value of their claims and, ultimately, secured a substantial monetary award of $8.3 million. Joint Decl., ¶¶ 32–36. They also carefully considered the changes to the AMC business practices and agreement to refrain from unlawful practices in the future. *Id.* Because the Settlement provides this immediate and significant relief, without the attendant risks of continued litigation, *Grinnell* factors eight and nine weigh in favor approval.

**Grinnell *factor seven***. The fact that AMC might be able to withstand a greater judgment does not change the analysis. *See Grinnell*, 495 F.2d at 463 (factor seven). A defendant need not "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012); *see also In re Sinus Buster Products Consumer Litig.*, No. 12-cv-02429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("[A]bility to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement."); *Viafara v. MCIZ Corp.*, No. 12-cv-07452, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (similar). This factor is neutral.

***Scope of release***. A final consideration is the scope of the Release. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 42 n.41 (courts may look to

16

the scope of the release). In exchange for the relief described above, Plaintiffs and the Settlement Class release all claims that have or could have been asserted against AMC and relating to the facts, transactions, or events alleged in this action. Further, the Release is limited to the exact conduct alleged in the Amended Complaint by Plaintiffs, because it pertains to claims "regarding the alleged disclosure of the Settlement Class Members' personally identifiable information and video viewing behavior to any third party." *See* Settlement, ¶ 1.29. The Release does not immunize AMC from future liability. In sum, the Release is calculated to "achieve a comprehensive settlement that [will] prevent relitigation of settled questions at the core of [this] class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). This factor weighs in favor of approval.

The Rule 23(e)(2) and *Grinnell* factors strongly support a finding that the Court will likely be able to approve the Settlement as "fair, reasonable, and adequate."

## VI.    THE COURT WILL BE ABLE TO CERTIFY THE SETTLEMENT CLASS.

Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated) where the Court "will likely be able to" certify the class for purposes of judgment on the proposed settlement. Fed. R. Civ. P. 23(e). Class certification is a two-step process: ***first***, Plaintiffs must establish numerosity, commonality, typicality, and adequacy under Rule 23(a); ***second***, Plaintiffs must establish that one of the bases for certification in Rule 23(b) is met. Plaintiffs contend, and AMC does not dispute for settlement purposes only, that the proposed Settlement Class meets these requirements.

### A.    The requirements of Rule 23(a) are satisfied.

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. Fed. R. Civ. P. 23(a). The Settlement Class meets each prerequisite and, therefore, satisfies Rule 23(a).

### 1.    Numerosity is satisfied.

Under Rule 23(a)(1), Plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, numerosity is easily is satisfied, as the Settlement Class includes over six million people. *See* Joint Decl., ¶ 23.

### 2.    Commonality is satisfied.

Under Rule 23(a)(2), Plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). Commonality requires that the class claims "depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "For purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556 (cleaned up). Plaintiffs need only show that their injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, many significant common questions of law and fact exist, including:

- Whether AMC knowingly disclosed Plaintiffs' and Settlement Class Members' PII to third parties via the Third-Party Tracking Technologies installed on AMC Services;

- Whether AMC should be enjoined from disclosing Plaintiffs' and Settlement Class Members' PII; and

- Whether Settlement Class Members are entitled to statutory damages.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquiries is AMC's common course of conduct, *i.e.*, its knowing disclosure of Plaintiffs' and Settlement Class Members' PII.

### 3.    **Typicality is satisfied.**

Typicality requires the representative party's claims to be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). That requirement is satisfied by showing that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-07493, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *see also Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement 'is not demanding.'").

Here, the typicality requirement is met because (1) Plaintiffs' claims stem from the same course of conduct as the claims of the Settlement Class Members — AMC's disclosure of PII to third parties; and (2) such disclosure affected Plaintiffs and Settlement Class Members in substantially the same way. *See Robidoux*, 987 F.2d at 936–37.

### 4.    **Adequacy of representation is satisfied.**

Under Rule 23(a)(4), the adequate representation requirement is satisfied when the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced, and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (internal citation omitted).

*First*, Plaintiffs have no interests in conflict with the Settlement Class, as they are equally interested in obtaining relief for AMC's alleged misconduct and ensuring that AMC reforms its business practices. Plaintiffs and the Settlement Class members were all allegedly injured in the

same manner based on their subscription to and use of AMC Services. *Cf. Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (plaintiffs' claims being typical of the class is "strong evidence that their interests are not antagonistic"). Further, throughout the pendency of this action, Plaintiffs have adequately and vigorously represented their fellow Settlement Class Members. They have spent time assisting their counsel, including by providing pertinent information regarding their AMC Services subscriptions. Joint Decl., ¶ 31. These same facts support Plaintiffs' appointment as Class Representatives for the Settlement Class.

*Second*, Plaintiffs' counsel have extensive experience litigating, trying, and settling class actions, including consumer privacy cases like this, throughout the country. Joint Decl., ¶¶ 41–55 & Exs. 2–4. Courts have recognized Plaintiffs' counsel's experience in complex class litigation and their skilled and effective representation. *Id.* Plaintiffs' counsel had sufficient information at their disposal before agreeing to a mediator's proposal and thus were able to balance the benefits of settlement against the risks of litigation. *Id.*, ¶¶ 19–25, 29, 32. They have invested considerable time and resources into prosecution of this case and are capable and committed to achieving the best result for Plaintiffs and the Settlement Class. *Id.*, ¶¶ 18, 30. Accordingly, Plaintiffs' counsel satisfy Rule 23(a)(4)'s adequacy requirement. *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class.").

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class. Considering Plaintiffs' counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources they have committed to

representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3) and confirmed under Rule 23(g)(1). *See* Joint Decl., ¶¶ 30, 32, 41–55 & Exs. 2–4.

### B.    The Settlement Class meets all Rule 23(b)(3) requirements.

Rule 23(b)(3) requires the Court to find that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). "[A] plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (citation omitted). In the settlement context, moreover, the potential for trial manageability problems posed by individualized issues falls away because "the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620; *accord, e.g.*, *Tart v. Lions Gate Ent. Corp.*, No. 14-cv-08004, 2015 WL 5945846, at *4 (S.D.N.Y. Oct. 13, 2015) ("[T]he predominance inquiry will sometimes be easier to satisfy in the settlement context.").

Here, common questions predominate over any questions that may affect individual Settlement Class Members. The core question is whether AMC violated the VPPA. If so, all Settlement Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing. The issues affecting every Settlement Class Member are substantially the same.

Those issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). This case thus falls within the "types of cases [that] are uniquely well-suited to class adjudication"—*i.e.*, those based on uniform violation of common statutory rights. *See In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 56 (D. Mass 2010).

### 2.    <u>Superiority</u>

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for at least three reasons.

*First*, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (citation omitted).

*Second*, a class action "will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser v. Merrill Lynch & Co.*, No. 13-cv-01531, 2014 WL 4816134, at *3 (S.D.N.Y. Sept. 23, 2014) (citation omitted).

*Third*, the expense and burden of litigating highly technical VPPA claims, compared against the modest potential for individual recovery, make it impractical for the Settlement Class Members to seek redress on an individual basis. In a class action, litigation is viable because costs are spread across the entire class. *See, e.g.*, *Tart*, 2015 WL 5945846, at *5.

Accordingly, this Court "will likely be able to" certify the class for purposes of judgment on the proposed Settlement under Rule 23(e).

## VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where seeking certification of a Rule 23(b)(3) settlement class, the notice must also comply with Rule 23(c)(2)(B), which requires that the notice inform class members of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Court is given broad power over which procedures to use for providing notice, so long as the procedures are reasonable and comport with due process. *Visa*, 396 F.3d at 113; *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

The Settlement proposes that the Court appoint Angeion Group, LLC ("Angeion") to oversee implementation of the Notice Plan, as well as processing Settlement Class Member claims and payments. Settlement, ¶¶ 1.33, 4.1–5.4. The Parties selected Angeion from the proposals submitted by four claims and notice administrators and after reviewing their competing proposals. *See* Joint Decl., ¶¶ 37–40.

The Parties propose a robust, state-of-the-art notice program, developed with Angeion's assistance, that includes direct notice to Settlement Class Members via email which will include an electronic link to the Claims Form. *See* Settlement, Exs. A (Claims Form) & B (Email Notice); Declaration of Steven Weisbrot ("Weisbrot Decl."), ¶¶ 21. Plaintiffs understand from AMC that it has email addresses for the entire Settlement Class. *See* Joint Decl., ¶ 38; Weisbrot

Decl., ¶ 21. Angeion will take several steps to rectify any emails that "bounce-back;" and for those "bounce back" emails that cannot be rectified, Angeion will provide direct notice via first-class mail where a mailing address is known. Weisbrot Decl., ¶¶ 20–28. Angeion will send two rounds of reminder email notices. *Id.*, ¶ 29.

If following notice by email, secondary email, and follow- up notice first-class mail, notices sent to more than 10% of Settlement Class Members have been returned as undelivered, the Settlement Administrator shall propose a plan for publication notice in consultation with counsel for the Parties. Weisbrot Decl., ¶ 30; Settlement, ¶ 4.1(c).

Angeion will also establish a dedicated Settlement Website (www.amcvppasettlement.com) through which Settlement Class members can access case documents and detailed information about the Settlement and important deadlines, such as the date for opting out or objecting to the Settlement. *See* Weisbrot Decl., ¶¶ 31–33. The Settlement Website will also permit Settlement Class Members to complete or file Claim Forms on-line through a simple process. *See id.*, ¶ 32. Angeion shall also set-up a toll-free number that will provide assistance via IVR, and will ensure that the IVR has a Spanish language component, and that relevant case documents are translated and made available in Spanish as well. *See id.*, ¶ 34.

The proposed notice program also provides sufficiently detailed notice. The notice defines the Settlement Class; explains all Settlement Class members' rights, the Parties' releases, and the applicable deadlines; and describes in detail the injunctive and monetary terms of the Settlement, including the procedures for allocating and distributing Settlement funds among the Settlement Class members. *See* Settlement, Exs. B–D. It will plainly indicate the time and place of the Fairness Hearing, and it plainly explains the methods for objecting to, or opting out of, the Settlement. *Id*. It details the provisions for payment of Attorneys' Fees and Expenses and class

24

representative Service Awards, and it provides contact information for Plaintiffs' counsel. *Id*.

This is sufficient. *See George v. Shamrock Saloon II, LLC*, No. 17-cv-06663, 2021 WL 3188314,

at *7 (S.D.N.Y. July 28, 2021) ("Class notice need only describe the terms of the settlement

generally, which is a minimal requirement.").

## VIII. <u>PROPOSED SCHEDULE OF EVENTS</u>

The next steps in the settlement approval process are to notify Settlement Class Members

of the proposed Settlement, allow them an opportunity to exclude themselves or file objections,

and hold a final approval hearing. In accordance with the proposed preliminary approval order

submitted herewith, Plaintiffs request the Court set the following schedule:

| Event | Proposed Date/Deadline |
|---|---|
| Notice Date -- Deadline for dissemination of notice to the Settlement Class members | 30 calendar days after the Court enters the Preliminary Approval Order |
| Deadline for filing papers in support of final approval of Settlement and Plaintiffs' Counsel's application for Attorneys' Fees and Expenses | 45 calendar days after the Notice Date (75 calendar days after Court enters the Preliminary Approval Order) |
| Deadline for filing claims, objections and requests for exclusion | 60 calendar days after the Notice Date |
| Deadline for Settlement Administrator to file report to the Court | 14 calendar days before the Fairness Hearing |
| Deadline for Parties to file any responses to any objections and supplemental pleadings on status of the claims process | 14 calendar days before the Fairness Hearing |
| Fairness Hearing | At Court's convenience, but at least 118 calendar days from entry of the Preliminary Approval Order |

## IX. <u>CONCLUSION</u>

Plaintiffs respectfully request the Court enter the proposed order granting preliminary

approval, certifying the Settlement Class, appointing Class Counsel, and approving the Notice

Plan.

Dated:  December 11, 2023                    Respectfully submitted,

                                              _/s/    Douglas I. Cuthbertson_____
                                             Douglas I. Cuthbertson
                                               (dcuthbertson@lchb.com)
                                             **LIEFF CABRASER HEIMANN &**
                                               **BERNSTEIN, LLP**
                                             250 Hudson Street, 8th Floor
                                             New York, NY  10013-1413
                                             Tel.: (212) 355-9500
                                             Fax: (212) 355-9592

                                             Michael W. Sobol (*pro hac vice* forthcoming)
                                               (msobol@lchb.com)
                                             **LIEFF CABRASER HEIMANN &**
                                               **BERNSTEIN, LLP**
                                             275 Battery Street, 29th Floor
                                             San Francisco, CA  94111-3339
                                             Tel.: (415) 956-1000
                                             Fax: (415) 956-1008

                                             Hank Bates (hbates@cbplaw.com)
                                             Lee Lowther (llowther@cbplaw.com)
                                             Courtney E. Ross (cross@cbplaw.com)
                                             **CARNEY BATES & PULLIAM, PLLC**
                                             519 W. 7th Street
                                             Little Rock, AR  72201
                                             Tel.: (501) 312-8500
                                             Fax: (501) 312-8505

                                             Michael Reese (mreese@reesellp.com)
                                             **REESE LLP**
                                             100 West 93rd Street, 16th Floor
                                             New York, NY  10025
                                             Tel.: (212) 643-0500

                                             Kevin Laukaitis
                                               (klaukaitis@laukaitislaw.com)
                                             **LAUKAITIS LAW LLC**
                                             954 Avenida Ponce De Leon
                                             Suite 205, #10518
                                             San Juan, PR  00907
                                             Tel.: (215) 789-4462

                                             *Counsel for Plaintiffs and the Proposed Class*

2899790.11