**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONNIE VELA, NICHOLAS NUNEZ, ANDY GERMUGA, TRISHA ICKES, WILLIAM BUCKLEY, PATRICK JAMES, WILLIAM KETTERER, THOMAS APOSTLE, and WENDY KISER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMC NETWORKS, INC.,<br><br>Defendant. | No. 1:23-cv-02524-ALC |

**JOINT DECLARATION OF DOUGLAS CUTHBERTSON AND HANK BATES IN SUPPORT OF PLAINTIFFS' MOTION <u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Douglas I. Cuthbertson and Hank Bates jointly declare and state as follows:

1. Douglas I. Cuthbertson is an attorney duly licensed to practice law in the State of New York who is admitted to practice before this Court. Mr. Cuthbertson is a partner at the law firm Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") and serves as co-counsel of record for Plaintiffs Ronnie Vela, Nicholas Nunez, Andy Germuga, Trisha Ickes, William Buckley, Patrick James, William Ketterer, Thomas Apostle, and Wendy Kiser ("Plaintiffs") in the above-captioned case (the "Action").

2. Hank Bates is an attorney duly licensed to practice law in the States of California and Arkansas and is admitted *pro hac vice* to practice before this Court. *See* Doc No. 32. Mr. Bates is a partner at Carney Bates & Pulliam, PLLC ("CBP") and also serves as co-counsel of record for Plaintiffs in the Action.

3. Throughout this litigation, we and our respective law firms have been primarily

responsible for the prosecution of Plaintiffs' claims on behalf of the proposed Settlement Class. We were joined by attorneys at the law firms of Reese LLP, and Laukaitis Law LLC, who also serve as counsel of record for Plaintiffs in the Action. Specifically, we worked in collaboration with those attorneys to represent the interests of Plaintiffs and the proposed Settlement Class.

4. We make this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Except where otherwise stated, we each have personal knowledge of the facts set forth in this Joint Declaration based on active participation in all aspects of the prosecution and resolution of the Action. If called upon to testify, we each could and would testify competently to the truth of the matters stated herein.

5. Attached hereto as **Exhibit 1** is a true and correct copy of the Class Action Settlement Agreement (the "Settlement")[1] entered into by Plaintiffs, on behalf of himself and the proposed Settlement Class, and Defendant AMC Networks, Inc. ("AMC" or "Defendant" and together with Plaintiffs, the "Parties"). The Parties' proposed Claim Form is Exhibit A to the Settlement. The Parties' proposed Email Notice is Exhibit B to the Settlement. The Parties' proposed Long-Form Notice is Exhibit C to the Settlement. The Parties' proposed Postcard Notice is Exhibit D to the Settlement.

## I. <u>Summary of the Action</u>

6. On January 18, 2023, plaintiffs Gerald McCoy, Andy Germuga, and Nicholas Nuñez filed this putative class case alleging that AMC's disclosure of its subscribers' PII to Meta without informed, written consent violates the VPPA. ECF No. 1.

7. On February 22, 2023, plaintiff Trisha Ickes filed a putative class action against

[1] Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

AMC in the Northern District of California, alleging substantially identical claims for violations of the VPPA. *See Ickes et al. v. AMC+ Networks*, No. 3:23-cv-00803 (N.D. Cal.), ECF No. 1.

8. On March 24, 2023, *McCoy* was voluntarily dismissed. *McCoy*, ECF No. 15. This action—*Vela*—was filed the same day and related to *McCoy*. *See Vela*, ECF Nos. 2 (Civil Cover Sheet) & 8 (Related Case Statement). Plaintiff Vela was substituted for McCoy; otherwise, the Parties and the allegations in the *Vela* complaint were substantively identical to those in *McCoy*. *Compare Vela*, ECF No. 1; *with McCoy*, ECF No. 1.

9. On May 1, 2023, AMC moved to compel arbitration in *Vela*. ECF No. 14. Plaintiffs opposed the motion (ECF No. 18), which remains pending (ECF No. 35).

10. On July 5, 2023, *Ickes* was transferred to this district and related to *Vela*. *See Ickes, et al. v. AMC+ Networks*, No. 1:23-cv-05730 (S.D.N.Y.) ("*Ickes*"), July 5 & July 21, 2023 docket entries.

11. On July 21, 2023, plaintiff William Buckley filed a putative class action in the Northern District of California against AMC's subsidiary streaming service, Shudder, alleging substantially identical claims for violations of the VPPA. *See Buckley v. AMC Networks, Inc.*, No. 3:23-cv-03630 (N.D. Cal.) ("*Buckley*), ECF No. 1.

12. On August 4, 2023, plaintiff Patrick James filed a putative class action in the Northern District of California against AMC's subsidiary streaming service, HIDIVE, alleging substantially identical claims for violations of the VPPA. *See James v. Sentai Filmworks, LLC,* No. 5:23-cv-03928 (N.D. Cal.) ("*James*"), ECF No. 1.

13. On October 6 and 10, 2023, AMC moved to dismiss or, in the alternative, to transfer *Buckley* and *James* to this district. *See Buckley*, ECF No. 16; *James*, ECF No. 11.

14. On October 27, 2023 *Buckley* and *James* were voluntarily dismissed. *See Buckley*,

ECF No. 20; *James*, ECF Nos. 14 & 15.

15. On December 5, 2023, *Ickes* was voluntarily dismissed. *Ickes*, ECF No. 37.

16. On December 11, 2023, Plaintiffs filed an Amended Complaint that adds the named plaintiffs from *Ickes*, *Buckley*, and *James* to this case, effectively consolidating all four actions. *Vela*, ECF No. 40 ("Amended Complaint" or "Am. Compl.").

17. As alleged in the Amended Complaint, AMC owns, operates, and/or controls six subscription-based digital video streaming services: AMC+, Shudder, Acorn TV, ALLBLK, SundanceNow, and HIDIVE (the "AMC Services"). Am. Compl. ¶¶ 2, 28. AMC intentionally installed Third-Party Tracking Technologies developed by Meta Platforms, Inc. (formerly known as Facebook, Inc., "Facebook"), Google LLC ("Google"), X Corp., (formerly known as Twitter), Snap Inc. d/b/a Snapchat, TikTok Ltd., and Braze, Inc. on AMC Services' streaming websites and apps and selected the specific types of information the Technologies would capture and transmit. *Id.* ¶¶ 2, 29, 34–35, 38, 46, 52, 59, 65, 70, 72. AMC also knowingly configured the Third-Party Tracking Technologies such that when an AMC Services subscriber views a particular video on the AMC Service's website or app, AMC sends the subscriber's personally identifiable information ("PII") to third Parties. *Id.* ¶¶ 2, 31, 34, 37, 47–48, 52–53, 55, 61, 62–66, 71, 73.

## II. <u>Plaintiffs' and Counsel's Role in Prosecuting and Settling the Action</u>

18. Plaintiffs and their counsel zealously have represented the interests of the proposed Settlement Class and committed substantial resources to the resolution of the Settlement Class's claims.

19. Before filing the complaint, counsel undertook a robust forensic investigation into the factual issues raised in this litigation, including AMC's use of the Third-Party Tracking

Technologies developed on its streaming services. Counsel also researched the applicable law to determine how the privacy claims applied to these facts and to address AMC's potential defenses.

20. After filing the complaint, counsel undertook additional efforts to prosecute Plaintiffs' claim, including by opposing AMC's motion to compel arbitration, mediating, engaging in informal discovery, and amending the complaint to effectively consolidate the *Vela*, *Ickes*, *Buckley*, and *James* actions.

21. On July 14, 2023, the Parties notified the Court that they had begun good faith settlement negotiations. The Parties thereafter began mediation before the Honorable Wayne R. Andersen (Ret.). At Judge Andersen's request, the Parties prepared and reviewed detailed mediation statements and other supporting materials outlining their respective legal positions regarding the merits of Plaintiffs' claims, Rule 23 considerations, and the scope of damages.

22. At the outset of settlement negotiations, AMC made clear that it would entertain only a global resolution of all pending, putative VPPA class actions against it. Absent such a global resolution, AMC was prepared to pursue motions to compel arbitration, like the one pending in *Vela*, in each of those actions. Accordingly, between July and September 2023, the Parties in *Vela*, *Ickes*, *James*, and *Buckley* engaged in significant efforts to coordinate those separate actions into a global mediation. Those efforts were successful.

23. On September 11, 2023, the Parties participated in a day-long mediation before Judge Anderson. During that mediation, the Parties informally shared additional information, including via direct communications between counsel in the presence of the mediator, regarding AMC's data bearing on the merits of Plaintiffs' claims, the size and nature of the class, and the Third-Party Tracking Technologies operating on AMC Services. That data showed, among other

things, that over 6 million subscribers to AMC Services accessed prerecorded videos during the relevant time period.

24. Although the Parties were unable to reach an agreement on the day of the mediation, they continued determined negotiations through Judge Andersen in the weeks that followed.

25. On October 24, 2023, the Parties attended a second mediation before Judge Andersen. That same day, with the consent of the Parties, Judge Andersen made a double-blind mediator's proposal. The Parties accepted the mediator's proposal on October 25, 2023.

26. The Parties notified the Court of their settlement in principle on October 27, 2023. *Vela*, ECF No. 38. As noted above, the *Ickes*, *Buckley*, and *James* actions subsequently were dismissed.

27. On October 31, 2023, the Parties agreed to and executed a term sheet and proceeded to negotiate and draft a long form settlement agreement.

28. On December 11, 2023, the Parties finalized and executed the proposed Settlement. That same day, Plaintiffs filed the Amended Complaint, which incorporates the named plaintiffs from the *Vela*, *Ickes*, *Buckley*, and *James* actions. *Vela*, ECF No. 40.

29. In sum, the Parties agreed to the terms of the Settlement through experienced counsel (*see* Section V, *infra*) who possessed all the information necessary to evaluate the case, determine the contours of the proposed Settlement Class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

30. Further, Plaintiffs' counsel have vigorously represented the Class in this Action and will continue to do so after preliminary and final approval of the Settlement (if approved).

Our efforts on behalf of the proposed Settlement Class include (as noted in part above): (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) litigating the AMC's motion to compel arbitration; (iii) gathering Plaintiffs' documents and relevant information; (iv) preparing detailed mediation statements that addressed AMC's legal arguments and potential defenses; (v) requesting and reviewing relevant informal discovery during mediation; (vi) participating in mediation and extensive subsequent settlement discussions; (vii) preparing and filing an amended complaint that effectively consolidated the *Vela*, *Ickes*, *Buckley*, and *James* actions into a single putative class action case; and (viii) achieving a very favorable Settlement on behalf of the Settlement Class.

31. Plaintiffs, meanwhile, have been actively engaged in this matter since its inception. Each Plaintiff provided pertinent information to counsel regarding his or her AMC Services subscription and social media accounts. Each Plaintiff stayed informed about the case, worked with counsel to prepare and review the complaints and other pleadings, and has communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement.

## III. <u>Recommendation of Counsel</u>

32. Based on thorough examination and investigation of the facts and law relating to Plaintiffs' claims on behalf of the Settlement Class, including the information exchanged before, during, and after mediation, we believe the proposed Settlement is in the best interest of the Settlement Class. Our investigation informed us about the strengths and weaknesses of Plaintiffs' claims, as well as AMC's defenses, and allowed us to conduct an informed, fair, and objective evaluation of the value and risks of continued litigation.

33. We recognize that despite our belief in the strength of Plaintiffs' claims, and

Plaintiffs' and the proposed Class's ability to secure a judgment and award of statutory damages under the VPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

34. Continued litigation of this case likely would require Plaintiffs to retain expensive forensics experts and litigation multiple *Daubert* motions. Certifying a class, surviving summary judgment, and proving liability at trial likely would require exhaustive briefing and additional first- and third-party discovery—*i.e.*, discovery from AMC and those to whom the Third-Party Tracking Technologies sent Settlement Class Members' PII. Achieving a class-wide recovery like that provided by the Settlement also would require maintaining class status through trial—a difficult and uncertain prospect. And even if the Court were to certify the Settlement Class (and deny efforts to decertify it thereafter), even an initially favorable result would likely be delayed and possibly defeated by any Rule 23(f) petition.

35. We also are mindful that absent the proposed Settlement, AMC's defenses could deprive the Plaintiffs and the proposed Settlement Class of any potential relief whatsoever. AMC would resume litigating its pending motion to compel arbitration, which (if granted) could foreclose all Plaintiffs' class claims. AMC also would continue to challenge liability, would oppose class certification vigorously, and would prepare a competent defense at trial. AMC also could appeal any adverse decision on the merits, or challenge the award of statutory damages on due process grounds.

36. In our professional opinion, the relief provided by the proposed Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class, especially when weighed against the risks and delays of continued litigation discussed above. We respectfully recommend the Settlement to the Court for its preliminary (and, ultimately final) approval. We have

conferred with Plaintiffs, who also support the proposed Settlement.

**IV. <u>Selection of Settlement Administrator</u>**

37. To select a settlement administrator, we solicited bids from four well-known and experienced administrators. Specifically, we required that any proposal employ contemporary methods of notice to ensure the broadest and most effective reach possible.

38. Plaintiffs understand from AMC that it has email addresses for the entire Settlement Class. We accordingly required that settlement administrators' proposals explain how any direct e-mail notice campaign would include: (i) steps to ensure that Settlement Class Member e-mail addresses are legitimate and functioning, both before and after sending e-mail notice; (ii) steps to locate updated or alternative e-mail addresses for Settlement Class Members whose initial e-mail addresses did not work; (iii) steps to locate mobile phone numbers and/or mailing addresses for Settlement Class Members to whom e-mail notice was unsuccessfully delivered; and (iv) methods for addressing increasingly aggressive spam filtering methods employed by the largest e-mail service providers like Gmail.

39. After considering the bids, we selected Angeion Group, LLC ("Angeion"), based in part on its vast experience in similar class actions and a notice plan proposal that includes innovative, thoughtful, and technologically sophisticated means of providing notice to settlement class members.

40. The cost of administering the Settlement will depend on a variety of factors, including the number of claims submitted by Settlement Class Members and whether we elect to provide reminder notices to Settlement Class Members. Assuming

a claims rate of 4%, Angeion estimates the cost of administration at approximately $300,000.

## V. Roles and Qualifications of Counsel

41. During the course of this litigation, LCHB and CBP were joined by attorneys at the law firms of Reese, LLP and Laukaitis Law, LLC, who also serve as counsel of record for Plaintiffs in the Action. Specifically, we worked in collaboration with those attorneys to represent the interests of Plaintiffs and the proposed Settlement Class. Under the terms of the Settlement, attorneys from these four law firms are designated Class Counsel. *See* Settlement ¶ 1.6.

### A. LCHB

42. Mr. Cuthbertson attests the facts set forth in this Section V.A.

43. I am a partner at LCHB and have been involved in every aspect of this Action from inception through the present. I graduated from Bowdoin College in 1999 and from Fordham University School of Law in 2007. I served as a judicial law clerk to the Honorable Andrew J. Peck, U.S. District Court, Southern District of New York, from 2007 to 2009. From 2009 until 2012, I practiced with Debevoise & Plimpton, LLP, and have practiced with LCHB since 2012, where I became a partner in January 2016. At LCHB, I focus my practice on representing plaintiffs in financial and consumer fraud cases, including privacy class actions such as this one. I have served as plaintiffs' class counsel in numerous nationwide class action cases, serving as lead counsel in numerous cases, some of which are noted below.

44. My colleague, Michael Sobol is also a partner at LCHB and has also been involved in every aspect of this case from inception through the present. He is the Chair of LCHB's Cybersecurity and Data Privacy practice group. Mr. Sobol received his J.D. in 1989

from Boston University School of Law. Since joining LCHB in 1997, Mr. Sobol has represented plaintiffs in numerous nationwide consumer protection, data privacy and other class actions and complex matters. Mr. Sobol is widely recognized for his expertise and substantial experience in the area of digital privacy and security, including most recently by the Daily Journal as a "Top Cyber/Artificial Intelligence Lawyer," 2018-2019; by Law360 as "MVP for Cybersecurity and Privacy" in 2017; and by the National Law Journal as "Cybersecurity & Data Privacy Trailblazer" in 2017.

45. LCHB is one of the oldest, largest, most-respected, and most-successful law firms in the country representing plaintiffs in class actions, and it brings to the table a wealth of class action experience. A copy of LCHB's current firm resume, which describes some of the firm's experience in complex and class action litigation, can be found at https://www.lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf. This resume is not a complete listing of all cases in which LCHB has been class counsel or otherwise counsel of record.

46. LCHB has extensive experience litigating and settling consumer and privacy class actions and other complex matters, and it has played a lead role in prosecuting numerous privacy class actions, including those below. Certain of these cases were or are co-counseled with the co-counsel in this matter, including those to which Mr. Bates cites below (*e.g.*, *Facebook*, *LifeLock*).

- *Rushing et al. v. The Walt Disney Company, et al.*, No. 17-cv-04419 (N.D. Cal.); *Rushing v. Viacom, Inc., et al.*, No. 17-cv-04492 (N.D. Cal.); *McDonald, et al. v. Kiloo Aps, et al.*, No. 17-cv-04344 (N.D. Cal.); and *Rushing et al. v. Kochava, Inc.*, No. 21-cv-322 (D. Idaho). Co-Lead Class Counsel in federal class actions alleging certain app developers unlawfully collected, used, and disseminated children's personal information. Achieved injunctive relief requiring defendants to tracking children across apps and the internet for advertising purposes.

- *In re Google Location History Litigation*, No. 18-cv-05062 (N.D. Cal.). Co-Lead Class Counsel in active nationwide class action alleging Google surreptitiously tracked the location of millions of mobile device users.

- *Diaz et al. v. Google LLC*, No. 21-cv-3080 (N.D. Cal.). Lead counsel in nationwide class action concerning Google's unlawful exposure of confidential medical information and personally identifying information through its digital contract tracing system designed by Google to slow or stop the spread of COVID-19 on mobile devices using Google's Android operating system. Achieved injunctive relief via novel early resolution process to stop and prevent the challenged conduct.

- *In re Plaid Inc. Privacy Litigation*, No. 20-cv-03056 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging defendant misleadingly used login screens that looked like those of real banks to obtain and improperly use consumers' personal data. Achieved $58 million settlement fund and injunctive relief to cease defendant's conduct and purge certain personal data.

- *Campbell v. Facebook*, No. 13-cv-05996 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging Facebook intercepted data in users' personal and private messages and profited by sharing the information with third Parties. Achieved injunctive relief to improve Facebook's consumer-facing disclosures and cessation of the challenged practices.

- *Perkins v. LinkedIn Corporation*, No. 13-cv-04303 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging LinkedIn used its members' names and likenesses without their consent to advertise and endorse the social network. Achieved $13 million settlement and injunctive relief targeting LinkedIn's disclosures and functionality.

- *Corona v. Sony Pictures Entertainment, Inc.*, No. 14-cv-09600 (C.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging inadequate security measures by Sony enabled cyber theft of employee data. Achieved injunctive relief, credit monitoring, and $8 million fund.

- *Ebarle et al. v. LifeLock Inc.*, No. 15-cv-00258 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging that, contrary to representations, LifeLock failed to protect the personal information of its subscribers. Achieved $68 million settlement.

- *Matera v. Google LLC*, No. 15-cv-04062 (N.D. Cal.). Co-Lead Class Counsel in nationwide class action alleging that Google improperly intercepted contents of e-mail messages belonging to non-Gmail users. Achieved injunctive relief requiring cessation of the challenged practices.

- *In re Intuit Data Litigation*, No. 15-cv-01778 (N.D. Cal.). On the Executive Committee in nationwide class action alleging that Intuit's policies and security measures enabled and encouraged tax refund fraud. Achieved credit monitoring,

identity restoration services, and injunctive relief requiring cybersecurity enhancements.

- *In re Anthem Data Breach Litig.*, No. 15-cv-02617 (N.D. Cal.). On the Executive Committee for multidistrict litigation alleging that deficient cybersecurity measures compromised sensitive personal identifying information of more than 80 million persons. Achieved $115 million settlement fund and injunctive relief targeting Anthem's cybersecurity practices.

**B. <u>CBP</u>**

47. Mr. Bates attests the facts set forth in this Section V.B.

48. I graduated from Harvard College in 1987 and the Vanderbilt University School of Law in 1992. Since at least 1998, I have almost exclusively represented plaintiffs in complex litigation and consumer protection class actions. I have served as plaintiffs' class counsel in numerous consumer class action cases achieving significant recoveries on behalf of my clients.

49. Carney Bates & Pulliam, PLLC has extensive experience in data breach and data privacy litigation. I was appointed to the Plaintiffs' Steering Committee in *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, No. 14-md-02583 (N.D. Ga.), an MDL class action brought on behalf of injured financial institutions in the wake of a massive retailer data breach. A settlement, with a common fund of $25 million and an additional fund of $2.25 million for distribution to financial institutions whose claims were purportedly released by third-party sponsors, was granted final approval on September 22, 2017. I served as counsel for the lead plaintiff in *In re: Target Corporation Customer Data Security Breach Litigation*, 14-cmd-02522 (D. Minn.), successfully representing Umpqua Bank and a class of financial institution plaintiffs over injuries suffered from one of the largest data breaches in history. A settlement, valued at $39.4 million, was granted final approval by the Court on May 12, 2016.

50. In addition, I was appointed by the court as co-lead counsel in *Matthew Campbell, et al. v. Facebook, Inc.*, 13-cv-05996 (N.D. Cal.), a class action involving allegations of e-mail

interception and violations of federal anti-wiretapping laws. Final approval of an injunctive relief settlement, securing disclosures and limitations on Facebook's interception and use of private message content, was granted on August 18, 2017. Similarly, in *Daniel Matera, et al. v. Google, Inc.*, 15-cv-04062 (N.D. Cal.), I served as co-lead counsel in a class action involving allegations of e-mail interception and violation of state and federal anti-wiretapping laws. A settlement, requiring Google to stop using content derived from e-mail transmissions for user profiling and targeted advertising, was granted final approval on February 9, 2018. In addition, CBP served as lead counsel in *Econo-Med Pharmacy, Inc. v. Roche Diagnostics Corporation*, 16-cv-00789 (S.D. Ind.), representing a class of pharmacies in a Telephone Consumer Protection Act ("TCPA") litigation resulting in a $17 million settlement, which was granted final approval on September 21, 2017. Additionally, CBP served as lead counsel in *ARcare, Inc. v. Qiagen North America Holdings, Inc., et al.*, No. 43CV-17-46 (AR, Lonoke Co. Cir. Ct.), representing a class of pharmacies in a TCPA litigation resulting in a $15.5 million settlement, which was granted final approval on December 3, 2018.

51. CBP represented the State of New Mexico in three actions focused on protecting children online through enforcement of the Children's Online Privacy Protection Act. Two of those actions—*State of New Mexico v. Tiny Lab Productions, et al.*, No. 18-cv-00854 (D.N.M.), and *State of New Mexico v. Google*, No. 20-cv-00143—resolved in 2021 with Google making substantial changes to ensure that its advertising network does not engage targeted advertising in apps that have been identified as child-directed in Google Play, and creating and contributing $3,850,000 to the New Mexico Kid's Initiative to fund efforts to promote education, privacy, and online safety for New Mexico children. The third action—*State of New Mexico v. Rovio Entertainment Corp.*, No. 21-cv-00824—resolved in 2023 with Rovio agreeing to add an age

gate to prevent targeted advertising to children in its Angry Birds franchise (one of the most downloaded gaming apps in the world) and to contribute an additional $3,132,830 to the Kid's Initiative.

52. Beyond the firm's work in the digital privacy arena, CBP has prosecuted numerous lawsuits against some of the largest financial service companies in connection with their practice of deceptively marketing and implementing Payment Protection Plans, recovering over $100 million for credit card holders in multiple actions against Bank of America ("BofA"), Capital One, Chase, Discover and HSBC. (CBP and LCHB co-counseled on certain of these matters, specifically with Mr. Cuthbertson on BofA, Discovery, and HSBC.) CBP served as co-lead counsel in *Williams v. State Farm Mutual Automobile Insurance Company*, 11-cv-00749 (E.D. Ark.), which resulted in a recent settlement of $21.7 million with 7,635 individuals receiving 100% recovery plus 6% prejudgment interest while releasing no claims or rights (other than named plaintiffs). The firm served as co-lead counsel in *Ebarle, et al. v. LifeLock, Inc.*, 15-cv-00258 (N.D. Cal.), a class action on behalf of customers of the identity theft protection service, arising from claims that LifeLock delivered false statements about its services and failed to alert customers on a timely basis of potential identity theft. A nationwide settlement of $68 million was granted final approval in September 2016. The firm also served as counsel in *Wayne Miner et al. v. Philip Morris USA Inc.*, No. 60CV-03-4661 (AR, Pulaski Co. Cir. Ct.), a class action brought on behalf of Arkansas smokers over claims that the defendant misrepresented the safety of its "light" cigarette products, which settled in 2016 for $45 million.

53. Attached hereto as **Exhibit 2** is a true and correct copy of my firm's resume, which provides details of my firm's practice and achievements, particularly in the class action context, as well as biographies of myself and my partners and colleagues.

**C. <u>Other Plaintiffs' Counsel</u>**

54. Attached hereto as **Exhibit 3** is a true and correct copy of Reese LLP's firm resume, which provides details of its practice and achievements, particularly in the class action context, as well as biographies of Mr. Reese and his partners and colleagues.

55. Attached hereto as **Exhibit 4** is a true and correct copy of Mr. Laukaitis' resume, which provides details of his practice and achievements, particularly in the class action context.

We declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 11th day of December, 2023, at New York, New York, and Little Rock, Arkansas.

By: *<u>/s/ Douglas Cuthbertson</u>*
Douglas Cuthbertson

By: *<u>/s/ Hank Bates</u>*
Hank Bates