**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD VELA, NICHOLAS NUNEZ, ANDY GERMUGA, TRISHA ICKES, WILLIAM BUCKLEY, PATRICK JAMES, and WILLIAM KETTERER, THOMAS APOSTLE, and WENDY KISER, individually and on behalf of all others similarly situated, | Case No.: 1:23-cv-02524 **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS** |
| Plaintiffs, | |
| v. | |
| AMC NETWORKS, INC., | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.   OVERVIEW OF THE LITIGATION ........................................................... 2

    A.    Summary of Plaintiffs' Allegations. ................................................... 2

    B.    The Litigation and Work Performed to Benefit the Class. ................... 3

    C.    Mediation and Settlement .................................................................... 4

III.  SUMMARY OF THE SETTLEMENT ......................................................... 5

    A.    The Settlement Class ............................................................................ 5

    B.    Monetary Relief ................................................................................... 5

    C.    Business Practice Changes to Bring AMC Services into Compliance with the VPPA ......................................................................................... 6

    D.    In Kind Relief: One-week Digital Subscription to AMC+ ................... 6

    E.    Release ................................................................................................. 7

    F.    Attorneys' Fees, Litigation Expenses, and Service Awards ................ 7

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT ............................ 8

V.    THE REQUESTED ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED. ............ 9

    A.    The Percentage Method Is the Appropriate Method to Calculate Attorneys' Fees in this Action. ............................................................ 9

    B.    The Reasonableness of Class Counsel's Fee Request Under the Percentage-of-the-Fund Method Is Supported By The Second Circuit's Six-Factor Goldberger Test ................................................................ 12

        1.    Time and Labor Expended ....................................................... 12

        2.    Magnitude and Complexity of the Litigation ........................... 14

        3.    The Risk of Litigation ............................................................. 15

        4.    The Quality of Representation .................................................. 17

        5.    The Requested Fee in Relation to the Settlement ..................... 19

        6.    Public Policy Considerations ................................................... 20

    C.    THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER A LODESTAR CROSS-CHECK. ........................................ 21

    D.    THE REQUESTED SERVICE AWARDS ARE REASONABLE AND REFLECT PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED. ...................................... 27

# TABLE OF CONTENTS

(continued)

**Page**

      E.     CLASS COUNSEL'S LITIGATION REASONABLE EXPENSES ARE JUSTIFIED AND SHOULD BE REIMBURSED. .............................................. 28

VI.     CONCLUSION ............................................................................................................. 29

2959691.2

# <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

## Cases

*Adams v. America's Test Kitchen, LP, et al.*,
  Case No. 22-cv-11309-AK (D. Mass.) ........................................................ 18

*Alexander v. Priv. Protective Servs., Inc.*, No. 119CV10004JPOSDA,
  2022 WL 16555970 (S.D.N.Y. June 24, 2022) .......................................... 22

*Anwar v. Fairfield Greenwich Ltd.*, 09 Civ. 118,
  2012 WL 1981505 (S.D.N.Y. June 1, 2012) .............................................. 20

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
  2002 WL 1315603 (S.D.N.Y. June 17, 2002) ............................................ 10

*Baker v. Saint-Gobain Performance Plastics Corp.*, No. 116CV00917LEKDJS,
  2022 WL 1025185 (N.D.N.Y. Feb. 4, 2022) ......................................... 28, 29

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467, 85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013) ...................... 25

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...................................................................................... 9

*Burns v. FalconStor Software, Inc.*,
  No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ......... 17, 25

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ...................................................................... 21

*Cassese v. Williams*,
  503 F. App'x 55 (2d Cir. 2012) ................................................................... 22

*Cates v. Trustees of Columbia Univ. in City of New York*, 16 Civ. 06524,
  2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) .................................... 9, 12, 19

*City of Providence v. Aeropostale, Inc.*, 11 Civ. 7132,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................. 19

*Copley v. Bactolac Pharm., Inc.*, No. 2:18-CV-00575-FB-PK,
  2023 WL 4490286 (E.D.N.Y. May 23, 2023) ........................................... 28

*Cornwell v. Credit Suisse Grp.*, No. 08-CV-03758(VM),
  2011 WL 13263367 (S.D.N.Y. July 20, 2011) .......................................... 18

2959691.2

# TABLE OF AUTHORITIES
(continued)

**Page**

*Czarnionka v. The Epoch Times Association, Inc.*.
    Case No. 22-cv-06348-AKH (S.D.N.Y.) ................................................................ 18

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................... 28

*Farbotko v. Clinton Cnty.*,
    433 F.3d 204 (2d Cir. 2005) ................................................................................... 22

*Fiorentino v. Flosports, Inc.*,
    Case No. 22-CV-11502-AK (D. Mass.) ................................................................. 18

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ............................................................................. passim

*Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN),
    2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) ................................................ 10, 25

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................... 10

*In re Credit Default Swaps Antitrust Litig.*, 13md2476(DLC),
    2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ....................................................... 25

*In re DDAVP Direct Purchaser Antitrust Litig.*, 05 Civ. 2237,
    2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) ..................................................... 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................... 11

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC, .
    2023 WL 8445812 (N.D. Cal. Oct. 10, 2023) ....................................................... 26

*In re GSE Bonds Antitrust Litig.*, No. 19 CV 1704,
    2020 WL 3250593 (S.D.N.Y. June 16, 2020) ....................................................... 23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD-2262(NRB),
    2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ....................................................... 28

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................... 18, 20

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re MetLife Demutalization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................................ 18

*In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM),
    2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ..................................................... 10, 16

*In re Nasdaq Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................. 14

*In re Oxycontin Antitrust Litig.*,
    04-md-1603-SHS, (S.D.N.Y. Jan. 25, 2011) ............................................................ 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..................................................................... 19

*In re Puerto Rican Cabotage Antitrust Litig.*,
    815 F. Supp. 2d 448 (D.P.R. 2011) .......................................................................... 21

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 18 Md. 2819,
    2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ........................................................... 19

*In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................... 22, 24

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    746 F. App'x. 655 (9th Cir. 2018) ........................................................................... 26

*Jenkins v. Nat'l Grid USA Serv. Co., Inc.*, No. 15-CV-1219,
    2022 WL 2301668 (E.D.N.Y. June 24, 2022) ..................................................... 19, 28

*Lea v. Tal Education Group*, 18 Civ. 5480,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .......................................................... 19

*LeBlanc-Sternberg v. Fletcher*,
    143 F. 3d 748 (2d Cir. 1998) .................................................................................. 24

*Long v. HSBC USA Inc.*, No. 14 CIV. 6233 (HBP),
    2016 WL 4764939 (S.D.N.Y. Sept. 13, 2016) ......................................................... 25

v

## TABLE OF AUTHORITIES
(continued)

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV359LEKATB,
   2023 WL 3251421 (N.D.N.Y. May 3, 2023)..............................................................28

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..............................................................20, 25

*Massiah v. MetroPlus Health Plan, Inc.*, 11-CV-05669 BMC,
   2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)..............................................13, 21, 27

*Masters v. Wilhelmia Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) ..............................................................................11

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ..............................................................................10

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)............................................................................................9

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)..........................................................................................24

*Monzon v. 103W77 Partners, LLC*, 13 Civ. 5951,
   2015 WL 993038 (S.D.N.Y. Mar. 5, 2015)..........................................................10

*Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ..............................................................................27

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 CV 8103,
   2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017)......................................................23

*Noto v. 22nd Century Grp., Inc.*, No. 19-CV-01285-JLS-MJR, 2023 WL 7107840 (W.D.N.Y.
   Oct. 17, 2023) ..................................................................................................18

*Olaechea v. City of New York*, No. 17-CV-4797 (RA),
   2022 WL 3211424 (S.D.N.Y. Aug. 9, 2022)........................................................16

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670(BSJ)(JCF),
   2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)............................................................26

*Pearlstein v. BlackBerry Ltd.*, No. 13 CV 7060,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)......................................................23

## TABLE OF AUTHORITIES
(continued)

**Page**

*Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA),
   2018 WL 2371737 (S.D.N.Y. May 24, 2018) .......................................................... 24

*Reyes v. Altamarea Group, LLC*, 10-CV-6451(RLE),
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011).......................................................... 27

*Rosenfeld v. Lenich*, No. 18CV6720NGGPK,
   2022 WL 2093028 (E.D.N.Y. Jan. 19, 2022) .......................................................... 10

*Shapiro v. JPMorgan Chase 7 Co.*, 11-Civ.8331,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................... 14, 17, 21, 22

*Sharpe v. A&W Concentrate Co.*,
   Case No. 1:19-cv-00768-BMC (E.D.N.Y.) .......................................................... 24

*TAO AN et al., Plaintiffs-Counterclaim-Defendants, v. LUC A. DESPINS & PAUL HASTINGS
   LLP, Defendants-Counter-Claimants. Additional Party Names: Li*, No. 22CV10062VECJW,
   2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024)........................................................ 23

*Themis Cap. v. Democratic Republic of Congo*, No. 09 CV 1652,
   2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014)........................................................... 24

*Thomas v. Mekruth Inc.*, No. 19-CV-01566 (LJL),
   2022 WL 6757487 (S.D.N.Y. Oct. 10, 2022).......................................................... 24

*Torres v. Gristede's Operating Corp.*,
   519 F. App'x 1 (2d Cir. 2013) ................................................................................. 11

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Cap. Markets*, No. 12 CV 9412,
   2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016).......................................................... 23

*Velez v. Novartis Pharm. Corp.*, 04 Civ. 9194(CM),
   2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)............................................... 14, 19, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................... 10, 21

*Yuzary v. HSBC Bank USA, N.A.*,
   2013 WL 5492998 ................................................................................................... 26

*Zhongli Sci. & Tech. Grp. Co. v. Fir Tree Partners*, No. 22MC2795NGGRML,
   2023 WL 7130666 (E.D.N.Y. Oct. 30, 2023)........................................................ 23

vii

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>Page</u>

**Statutes**

18 U.S.C. § 2710..................................................................................................... 1, 3
28 U.S.C. § 1715........................................................................................................ 8

**Rules**

Fed. R. Civ. P. 23..................................................................................................... 8
Fed. R. Civ. P. 23(a) ................................................................................................ 8
Fed. R. Civ. P. 23(b)(3)............................................................................................ 8
Fed. R. Civ. P. 23(f) ................................................................................................. 16
Fed. R. Civ. P. 23(h) ................................................................................................ 2, 9

2959691.2

I.    **INTRODUCTION**[1]

Plaintiffs Ronald Vela, Nicholas Nuñez, Andy Germuga, Trisha Ickes, William Buckley, Patrick James, William Ketterer, Thomas Apostle, and Wendy Kiser ("Plaintiffs" or "Class Representatives") hereby move the Court for an award of attorneys' fees, litigation costs, and service awards. As detailed in the concurrently filed Memorandum in Support of Motion for Final Approval of Class Action Settlement, as a result of Plaintiffs' and Class Counsel's efforts, Plaintiffs and Defendant AMC Networks, Inc. ("Defendant" or "AMC" and collectively with Plaintiffs, the "Parties") reached a Settlement (*see* ECF No. 43-1) (the "Settlement") that provides significant benefits, both monetary and non-monetary, to Settlement Class Members. First, the Settlement—preliminarily approved by this Court on January 10, 2024 (ECF No. 50)—provides for an $8.3 million non-reversionary common fund for the benefit of Settlement Class Members. Second, the Settlement provides that AMC shall automatically provide a free, one-week digital subscription to the AMC+ streaming service to all Settlement Class Members who submit valid claims (ECF No. 43-1 at ¶ 1.21)—an in-kind contribution currently valued at over $1,000,000 (*see* section III.D *infra*). Third, the Settlement requires AMC to come into compliance with the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA") on all six of its streaming services – AMC+, Shudder, Acorn TV, ALLBLK, SundanceNow, and HIDIVE ("AMC Services") -- related to each of the Third-Party Tracking Technologies embedded therein.[2]

---

[1] Unless otherwise noted, capitalized terms have the same meanings as in the Class Action Settlement Agreement ("Agreement") (ECF No. 43-1) or in the Amended Complaint (ECF No. 45).

[2] The Third Party Tracking Technologies include those developed by Meta Platforms, Inc. ("Meta," formerly known as Facebook, Inc., "Facebook"), Google LLC ("Google"), X Corp., (formerly known as Twitter), Snap Inc. d/b/a Snapchat, TikTok Ltd., and Braze, Inc. For each

As compensation for their efforts in successfully litigating this action, Plaintiffs and Class Counsel respectfully request, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve the request for attorneys' fees of $2,766,666 (one-third of the $8.3 million common fund), reimbursement of litigation expenses of $25,127.80, as well as service awards of $2,000 each to the nine Plaintiffs ($18,000 total) for their service as Class Representatives.

The requested attorneys' fees, litigation expenses, and service awards are fair and reasonable based, on the following considerations: (1) the time and labor expended by Class Counsel; (2) the magnitude and complexities of the litigation; (3) the risks of the litigation; (4) the quality of representation; (5) the requested fee in relation to the Settlement; and (6) public policy considerations. Thus, for the reasons stated herein, Class Counsel and Plaintiffs respectfully request that the Court approve the requested attorneys' fees, litigation expenses, and service awards.

## II.    **OVERVIEW OF THE LITIGATION**

### A.    **Summary of Plaintiffs' Allegations.**

Plaintiffs are AMC subscribers. Plaintiffs allege that AMC intentionally installed the Third-Party Tracking Technologies on AMC Services' streaming websites and apps and selected the specific categories of information the technologies would capture and transmit to third parties. ECF No. 45 ("Amended Complaint" or "Am. Compl."), ¶¶ 2, 29, 34–35, 38, 46, 52, 59, 65, 70, 72. As a result, it is alleged that when a subscriber views a particular video on AMC Services, AMC transmits the title and URL of that video, and the subscribers' personal identifiable

---

technology on each AMC Service, AMC is required to either (a) remove it, (b) suspend its operation, or (c) modify its operation so that it no longer violates the privacy protection requirements of the VPPA.

2

information ("PII"), to third parties via the Third-Party Tracking Technologies installed on that AMC Services website or app. *Id.*, ¶¶ 2, 31, 34, 37, 47–48, 52–53, 55, 61, 62–66, 71, 73.

Plaintiffs all were AMC Services subscribers and accessed videos on AMC Services' websites and apps. *Id.*, ¶¶ 75–118. When they did, Plaintiffs allege that AMC sent the videos Plaintiffs accessed and their corresponding PII to third parties via the Third-Party Tracking Technologies installed therein. *Id.* Plaintiffs allege that this conduct violated the privacy protections of the VPPA.

### B.    <u>The Litigation and Work Performed to Benefit the Class.</u>

On January 18, 2023, Plaintiffs Gerald McCoy, Andy Germuga, and Nicholas Nuñez filed a putative class case alleging that AMC's disclosure of subscribers' PII to Meta without informed, written consent violates the VPPA. *See McCoy*, ECF No. 1.

On February 22, 2023, Plaintiff Trisha Ickes filed a putative class action complaint against Defendant in the District Court for the Northern District of California, alleging substantially similar claims for violations of the VPPA. *See Ickes et al. v. AMC+ Networks*, No. 3:23-cv-00803 (N.D. Cal.), ECF No. 1.

On March 24, 2023, *McCoy* was voluntarily dismissed. *McCoy*, ECF No. 15. This action— *Vela* (the "Action")—was filed the same day and related to *McCoy*. *See* ECF Nos. 2 (Civil Cover Sheet) & 8 (Related Case Statement). Plaintiff Vela was substituted for McCoy; otherwise, the parties and the allegations in the original *Vela* complaint were substantively identical to those in *McCoy*. *Compare Vela*, ECF No. 1; *with McCoy*, ECF No. 1. On May 1, 2023, AMC moved to compel arbitration. ECF No. 14. Plaintiffs opposed the motion (ECF No. 18), which remains pending (ECF No. 35).

On July 5, 2023, *Ickes* was transferred to this district and related to Vela. *See Ickes*, No.

3

1:23-cv-05730 (S.D.N.Y.), July 5 & July 21, 2023 docket entries. On July 21, 2023, Plaintiff William Buckley filed a putative class action in the Northern District of California against AMC's subsidiary streaming service, Shudder, alleging substantially identical claims for violations of the VPPA. *See Buckley*, ECF No. 1.

On August 4, 2023, plaintiff Patrick James filed a putative class action in the Northern District of California against AMC's subsidiary streaming service, HIDIVE, alleging substantially identical claims for violations of the VPPA. See James, ECF No. 1. On October 6 and 10, 2023, AMC moved to dismiss or, in the alternative, to transfer *Buckley* and *James* to this district. *See Buckley*, ECF No. 16; James, ECF No. 11. On October 27, 2023 *Buckley* and *James* were voluntarily dismissed. *See Buckley*, ECF No. 20; *James*, ECF Nos. 14 & 15. On December 5, 2023, *Ickes* was voluntarily dismissed. *Ickes*, ECF No. 37. On December 11, 2023, Plaintiffs filed an Amended Complaint that adds the plaintiffs from Ickes, Buckley, and James to this case, effectively consolidating all four actions.

### C.    <u>Mediation and Settlement</u>

On July 14, 2023, the Parties notified the Court that they had begun good faith settlement negotiations. *See* ECF No. 28. On September 11, 2023, the Parties attended a private mediation before the Honorable Wayne Andersen (Ret.) of JAMS. Although the Parties did not settle that day, they continued negotiations and informal discovery in ensuing weeks under the guidance of Judge Andersen. *See* Joint Declaration of Douglas Cuthbertson, Hank Bates, Michael Reese, and Kevin Laukaitis in Support of Plaintiffs' and Class Counsel's (i) Motion for Final Approval of Class Action Settlement and (ii) Motion for Attorneys' Fees, Litigation Costs, and Service Awards ("Joint Decl. Re: Final Approval"), ¶¶ 20-21. On October 24, 2023, the Parties again mediated before Judge Andersen. *Id.*, ¶ 21. That second mediation culminated in a mediator's proposal on

4

October 24, 2023, which both Parties accepted on October 25, 2023. *Id.*, ¶ 21. The Parties notified

the Court of their settlement in principle on October 27, 2023. ECF No. 38. As noted above, the

*Ickes*, *Buckley*, and *James* actions subsequently were voluntarily dismissed and their named

plaintiffs incorporated into the Amended Complaint. *See* ECF No. 45.

## III.    SUMMARY OF THE SETTLEMENT

### A.    The Settlement Class

The parties seek certification, solely for purposes of judgment on the proposed Settlement,

of a Settlement Class comprised of:

> all persons in the United States who: (1) were registered users of AMC Services
> through (i) an online website or mobile app owned, controlled, and/or operated by
> AMC or (ii) any Streaming Service and (2) viewed video content from AMC
> Services through (i) an online website or mobile app owned, controlled, and/or
> operated by AMC or (ii) any Streaming Service during the Class Period.

Settlement, ¶ 1.34. The Class Period is defined as January 18, 2021 through the date of Preliminary

Approval—January 10, 2024. *Id.* ¶ 1.7; ECF No. 50. The Settlement Class specifically excludes:

(1) any persons who have asserted claims against AMC under the VPPA prior to the date of this

settlement through counsel other than Class Counsel or counsel of record in the Action; (2) any

Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant,

its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant

or its parents have a controlling interest and their current or former officers, directors, agents,

attorneys, and employees; (4) persons who properly execute and file a timely request for exclusion

from the Settlement Class; and (5) the legal representatives, successors or assigns of any such

excluded persons.

### B.    Monetary Relief

Pursuant to the Settlement, AMC shall create an $8,300,000 common fund (the "Settlement

Fund") for the benefit of Settlement Class Members. Settlement Class Members who submit valid claims will receive a pro rata payment after the deduction of settlement-related costs, including expenses of the settlement administrator and the costs of notice to the Settlement Class, and any Court-awarded attorneys' fees, expense reimbursements, and named plaintiff services awards. *Id*. None of the Settlement Fund will revert back to AMC. The Settlement Fund does not include the cost of providing In Kind Relief to all Settlement Class Members (*see* Section III.D, *infra*), which Defendant will pay for separately. *Id.*, ¶ 1.36.

### C.      Business Practice Changes to Bring AMC Services into Compliance with the VPPA

In addition to the monetary damages, the Settlement requires Defendant to remediate the alleged VPPA violations going forward. Specifically, within 45 days of the entry of Final Judgment, AMC will remove, suspend, or modify the operation of all the Third-Party Tracking Technologies so that their use, if any, on the AMC Services will not violate the VPPA. *Id*., ¶ 2.2. AMC will provide a sworn declaration confirming it has implemented these changes within 90 days of the entry of Final Judgment. *Id*. AMC will not use the Third-Party Tracking Technologies unless it does so in accordance with the VPPA (e.g., by obtaining subscribers prior written consent in the manner specified by the VPPA, or modifying the technology such that its use will not result in disclosure to third-party technology companies of the specific video content viewed by a specific individual) or the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by judicial decision by the United States Supreme Court or the Second Circuit Court of Appeals. *See id*.

### D.      In Kind Relief: One-week Digital Subscription to AMC+

In addition to the monetary and prospective relief described above, AMC will

automatically provide a free, one-week digital subscription to the AMC+ streaming service to all Settlement Class Members who submit valid claims ("In Kind Relief"). Settlement, ¶ 1.21. No payment or billing information will be required to use the In Kind Relief. *Id.*, ¶ 2.1(d). AMC will cover all costs for providing these one-week AMC+ subscriptions, separate from paying for the Settlement Fund. *Id.*, ¶ 1.36. The In Kind Relief has an estimated value of $2.25 per Settlement Class Member. *Id.*, ¶ 1.21. Thus, based on the current claims form submissions of 526,818,[3] the In Kind Relief has a total estimated value of $1,185,340.50. *See* Joint Decl. Re: Final Approval, ¶ 29.

### E.    <u>Release</u>

In exchange for the relief described above, Plaintiffs and the Settlement Class shall release all claims that have or could have been asserted against the Released Parties relating to the facts, transactions, or events alleged in the Amended Complaint. *See* Settlement, ¶¶ 1.29 (Released Claims), 1.30 (Released Parties), 3.1–3.3 (Release). Specifically, the release covers any claims against the Released Parties "regarding the alleged disclosure of the Settlement Class Members' personally identifiable information and video viewing behavior to any third party." *Id.*, ¶ 1.29.

### F.    <u>Attorneys' Fees, Litigation Expenses, and Service Awards</u>

The Settlement Agreement provides that Class Counsel may seek an award of reasonable attorneys' fees, not to exceed one-third of the Settlement Fund, and reimbursement of their litigation costs. Settlement, ¶ 8.1. The Settlement Agreement also provides that Plaintiffs may seek a service award for each Class Representative in an amount not to exceed $2,000 ($18,000 aggregate). *Id.*, ¶ 8.3. In accord with the foregoing provisions, Class Counsel is seeking (i)

---

[3] *See* Declaration of Steven Weisbrot, Esq. Re: Notice and Administration ("Weisbrot Decl."), ¶ 18.

attorneys' fees of $2,766,666 (one-third of the Settlement Fund), litigation expenses of $25,127.80, and service awards of $2,000 for each of the nine Class Representatives ($18,000 in the aggregate).

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT

On December 11, 2023, Plaintiffs filed a Notice of Motion and Unopposed Motion for Preliminary Approval of the Settlement (ECF No. 41) and supporting memorandum of law (ECF No. 42). After a hearing, this Court granted preliminary approval of the Settlement on January 10, 2024 (ECF No. 50 ("Preliminary Approval Order" or "PAO")), holding, inter alia:

- "[T]he Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class;"

- "[T]he Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation;" and

- "[T]he Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel, with the assistance of mediator the Honorable Wayne R. Andersen (Ret.); (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; and (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715."

*See id*., ¶ 3. In addition, the Court concluded it likely will certify the Settlement Class after finding that the conditions of Rule 23(a) and (b)(3) are satisfied. *Id*., ¶ 7. The Court also appointed Plaintiffs Ronnie Vela, Nicholas Nunez, Andy Germuga, Trisha Ickes, William Buckley, Patrick James, William Ketterer, Thomas Apostle, and Wendy Kiser as Class Representatives and Douglas I. Cuthbertson of Lieff Cabraser Heimann & Bernstein, LLP; Hank Bates of Carney Bates & Pulliam, PLLC; Michael Reese of Reese LLP, and Kevin Laukaitis of Laukaitis Law as Class Counsel. *Id*., ¶ 8.

2959691.2

V.    **THE REQUESTED ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED.**

Under Federal Rule of Civil Procedure 23, courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). In accord with Rule 23, the Supreme Court has held "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

Here, Class Counsel and Plaintiffs request a fee award of $2,766,666, which represents one-third of the $8.3 million Settlement Fund and less than 30% of the total benefits to the Settlement Class. Joint Decl. Re: Final Approval, ¶¶ 26-29. This requested fee is both consistent with fee awards routinely approved in the district and the Second Circuit for similar class settlements and reasonable under each of the six criteria set out by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and should be approved as such. *See Cates v. Trustees of Columbia Univ. in City of New York*, 16 Civ. 06524, 2021 WL 4847890, at *2 (S.D.N.Y. Oct. 18, 2021) (awarding one-third of $13 million common fund after considering the *Goldberger* factors).

A.    **The Percentage Method Is the Appropriate Method to Calculate Attorneys' Fees in this Action.**

Courts in the Second Circuit apply one of two fee calculation methods: the "percentage of the fund" method or the "lodestar" method. *See Goldberger*, 209 F.3d at 50. While a court has discretion in choosing which method to employ, "[t]he trend in the Second Circuit is to use the percentage of the fund method … as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and

9

preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 13 Civ. 5951, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015); *accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005) (The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.").

Indeed, "the 'trend' of using the percentage of the fund method to compensate plaintiffs' counsel … is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig*., 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *14 (E.D.N.Y. Jan. 26, 2024) (noting the percentage of the fund method "is the trend in this Circuit" (internal quotations omitted)); *Rosenfeld v. Lenich*, No. 18CV6720NGGPK, 2022 WL 2093028, at *3 (E.D.N.Y. Jan. 19, 2022) ("The court follows the clear trend in the Second Circuit and considers this fee request using the percentage of the fund approach, which assigns a proportion of the common settlement fund toward payment of attorneys' fees." (internal quotations omitted)). "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'" *Wal-Mart Stores*, 396 F.3d at 121 (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp*., 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)); *see also Goldberger*, 209 F.3d at 48-49 (describing the "inevitable waste of judicial resources" that accompanied such problems); *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'creative a disincentive to early settlement' … is appropriate.") (citing *McDaniel*, 595 F.3d at 418); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *16 (S.D.N.Y.

10

July 27, 2007) ("From a public policy perspective, the percentage method is the most efficient means of compensating the work of class action attorneys. It does not waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result."). Thus, under the circumstances of this case—wherein Class Counsel achieved an exceptional result for the Settlement Class—the Court should employ the percentage-of-the-fund method routinely applied in this district and the Second Circuit.

Under the percentage method, the court calculates the fee award as a percentage of the value obtained for the class. The Second Circuit has ruled that "[a]n allocation of fees by percentage should … be awarded on the basis of total funds made available whether claimed or not." *Masters v. Wilhelmia Model Agency, Inc*., 473 F.3d 423, 437 (2d Cir. 2007); *see, e.g., Torres v. Gristede's Operating Corp*., 519 F. App'x 1, 5 (2d Cir. 2013) (calculating fee award "'on the basis of the total funds made available' … i.e., as if it were a common settlement fund" (quoting *Masters*, 473 F.3d at 437)). However, in this case the Settlement Fund is non-reversionary, so none of the $8.3 million Settlement Fund will revert to AMC under any circumstances.  All of it will be divided on a pro rata basis among the Settlement Class Members who submit valid claims, to the extent practicable.[4]

---

[4] Per the Settlement, every effort will be made to distribute the funds to the Settlement Class Members, through an initial distribution and then a second distribution of any residual funds from uncashed checks.  "[T]o the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall, subject to Court approval, revert to a non-sectarian, non-profit organization, recommended by Class Counsel and approved by the Court." ECF No. 43-1, ¶ 2.1(e).

11

**B.** **The Reasonableness of Class Counsel's Fee Request Under the Percentage-of-the-Fund Method Is Supported By The Second Circuit's Six-Factor _Goldberger_ Test.**

In _Goldberger_, the Second Circuit articulated six factors for determining the reasonableness of a requested percentage to award as attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation []; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." _Goldberger_, 209 F.3d at 50; _Cates_, 2021 WL 4847890, at *2. A review of these factors supports Class Counsel's fee request.

### 1. Time and Labor Expended

Since Class Counsel began prosecuting this matter, they have devoted 1,329.05 hours to the successful pursuit of this Action, which excludes time spent on this motion and necessarily excludes the further time Class Counsel will spend related to settlement administration and litigating the case to fruition. Joint Decl. Re: Final Approval, ¶¶ 66-67. Class Counsel's dedication to this matter and expenditure of substantial time, effort, and resources have brought this complex litigation to a successful resolution. Class Counsel's work included:

- conducting extensive, pre-suit factual investigations and forensic analysis of the Third Party Tracking Technologies and the AMC Services;

- drafting initial and amended complaints;

- opposing Defendant's Motion to Compel Arbitration;

- drafting a mediation statement and participating in the first of two full-day mediation sessions;

- holding numerous telephonic calls with defense counsel regarding settlement;

- engaging in informal discovery and continued, extensive, independent forensic

12

analysis of the Third-Party Tracking Technologies across all six AMC Services and their various platforms;

- participating in a second mediation before Judge Andersen, executing a term sheet and negotiating comprehensive settlement and notice documents;

- effectively consolidating all four actions, culminating in the filing of the Amended Class Action Complaint;

- successfully moving for Preliminary Approval of the Class Action Settlement; and

- communicating with many hundreds of class members with inquiries about the settlement and the claims process and coordinating with the Claims Administrator regarding implementation of the Notice Plan, and addressing issues with claims administration as they arise.

*See* Joint Decl. Re: Final Approval, ¶ 38.

Further, Class Counsel's work in this litigation is far from over. Class Counsel will commit significant ongoing time and resources to presenting the Settlement to the Court at the Final Approval Hearing, the continued administration of the Settlement, responding to Settlement Class Member's inquiries concerning the Settlement and the claims process, and overseeing and coordinating distribution of the settlement funds to the Settlement Class Members. Joint Decl. Re: Final Approval, ¶ 66. Based on Class Counsel's experience in other cases, this ongoing work will likely involve approximately 150-200 total additional hours. *Id*. The court should consider this additional work as well when evaluating Class Counsel's fee request. *See Massiah v. MetroPlus Health Plan, Inc*., 11-CV-05669 BMC, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already

13

expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

For all these reasons, this first *Goldberger* factor favors approval of Class Counsel's fee request.

### 2. <u>Magnitude and Complexity of the Litigation</u>

The complex nature of this litigation further favors the requested fee award. "[C]lass actions have a well deserved reputation as being most complex." *In re Nasdaq Market-Makers Antitrust Litig*., 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (cleaned up); *see also Shapiro v. JPMorgan Chase 7 Co.*, 11-Civ.8331, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("It is well settled that class actions are notoriously complex and difficult to litigate."). Indeed, "[t]he federal courts have established that a standard fee in complex class action cases … where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez v. Novartis Pharm. Corp.*, 04 Civ. 9194(CM), 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (collecting cases).

The VPPA claims in this action involve novel and complicated forensic, technical, and legal issues concerning AMC's practices related to its use of the Third-Party Tracking Technologies and its subscribers' privacy rights. Thus, Class Counsel was required to develop through extensive forensic analysis an understanding of AMC's network traffic, AMC's use of the Third-Party Tracking Technologies, the exact manner in which those technologies disclosed video content and to whom it was transmitted, as well as class size, class damages, and more. Joint Decl. Re: Final Approval, ¶ 39. Had the litigation continued, these issues would have required extensive and complex forensic expert testimony. *Id*.

14

Throughout the litigation, Defendant has vigorously denied Plaintiffs' allegations of wrongdoing, and Plaintiffs anticipate that AMC would continue to defend its position should the case be litigated further (assuming the case survived AMC's motion to compel arbitration). Moreover, claims applying the VPPA to operation of the Third-Party Tracking Technologies are still relatively novel. As far as Class Counsel is aware, no VPPA case has yet proceeded to summary judgment, let alone trial.

Class Counsel can attest to the complexities in this Action. During the mediation process, the Parties informally exchanged information to allow Class Counsel to assess the strengths and weaknesses of Plaintiffs' VPPA claims, as well as AMC's defenses, allowing Class Counsel to make an informed assessment of the value of Plaintiffs' claims. Joint Decl. Re: Final Approval, ¶ 38.  For example, prior to mediation and during mediation before the Honorable Wayne R. Andersen (Ret.), the Parties prepared and reviewed detailed mediation statements and exchanged additional information related to the Third-Party Tracking Technologies, Rule 23 considerations, the scope of damages, and insurance coverage. *See id*. Thus, notwithstanding the novelty and complexities of Plaintiffs' claims, Class Counsel, through extensive factual investigation and targeted informal discovery, were able to skillfully and efficiently negotiate a successful resolution on behalf of the Settlement Class that resolved and addressed the highly-technical nature of Plaintiffs' VPPA claims. *Id.*, ¶¶ 39, 57, 61. Class Counsel also did extensive factual investigation and forensic analysis independent of the informal discovery. *Id.*, ¶ 38.

The magnitude and complexity of this novel class action privacy litigation clearly support the second *Goldberger* factor and demonstrate that the requested fee is fair and reasonable.

### 3. The Risk of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis

15

where claims are not successful, which can justify higher fees. *See, e.g., Olaechea v. City of New York*, No. 17-CV-4797 (RA), 2022 WL 3211424, at *14 (S.D.N.Y. Aug. 9, 2022) ("[C]ontingency risk ... must be considered in setting a reasonable fee." (citing *Goldberger*, 209 F.3d at 53)); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on a contingency basis).

Undertaking this case on a contingent fee basis, Class Counsel invested significant time, effort, and resources to the litigation without any guarantee of compensation in the face of significant risks of loss and/or delay. Joint Decl. Re: Final Approval, ¶ 60. Specifically, Class Counsel expended resources investigating the claims, drafting the complaints, and opposing a motion to compel arbitration. *Id.*, ¶ 38. The risks related to Defendant's motion to compel are high as any order compelling arbitration would have ended the litigation; alternatively, any order denying Defendant's motion to compel arbitration would have likely led to Defendant's filing an interlocutory appeal, as is its right. *Id.*, ¶ 40. Additionally, if this litigation were to continue, Class Counsel would face substantial risks in moving for and maintaining class certification through trial. *See In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *12 (E.D.N.Y. Jan. 26, 2024) (recognizing an "increased risk that class certification might be denied" where a defendant contests a motion for class certification). And even if Plaintiffs succeeded at class certification, Defendant would be entitled to seek permission for an interlocutory appeal of the Court's certification order pursuant to Fed. R. Civ. P. 23(f). *Id.* Plaintiffs would also face very significant risks to withstanding any potential challenge to the pleadings and eventually to proving liability and damages on relatively untested VPPA claims at trial. Joint Decl.

16

Re: Final Approval, ¶¶ 41, 43-44; *see e.g., Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 11, 2014) (noting that a "NERA study cited by plaintiffs shows that, increasingly, cases are almost as likely to be dismissed as they are to settle."); *Shapiro*, 2014 WL 1224666, at *11 ("[p]roof of damages in complex class actions is always complex and difficult and often subject to expert testimony.").

Absent the Settlement, Plaintiffs would have to conduct formal discovery, which would involve the uncertain process of obtaining highly technical relevant information from AMC and pursuing subpoenas against third parties like Meta, Google, and the other third-party tracking entities, substantially increasing litigation costs. Thus, formal discovery, pretrial motion practice, and any trial and appeal would involve years of litigation without any guarantee that the Settlement Class Members would achieve any relief at all.

The fact Class Counsel undertook this representation, despite these significant risks, supports the requested fee award.

### 4.      **The Quality of Representation**

Class action litigation presents unique challenges, and by achieving an exceptional settlement, Class Counsel have shown that they have the ability and resources to not only litigate this case zealously and effectively, but to achieve a strong outcome for the Settlement Class. Here, Class Counsel undertook a robust forensic pre-suit investigation into the underlying factual issues, which included AMC's use of the Third-Party Tracking Technologies, allowing Class Counsel to present a compelling case throughout this litigation and during the mediation process. Class Counsel's efforts resulted in the successful settlement of four cases involving novel and highly technical VPPA claims that will provide Settlement Class Members with immediate benefits without the risks and delay of further litigation. Collectively, Class Counsel have represented

17

plaintiffs in hundreds of class action lawsuits, including the resolution of multiple class actions involving similar VPPA claims, giving them valuable knowledge and experience in litigating the complex legal and factual issues in this action. ECF No. 43 (Joint Declaration of Douglas Cuthbertson and Hank Bates in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Decl. Re: Preliminary Approval")), ¶¶ 41-55 and Exs. 2-4; *see Fiorentino v. Flosports, Inc*., Case No. 22-CV-11502-AK (D. Mass.) (class action settlement involving VPPA claims that was finally approved on March 3, 2024); *Czarnionka v. The Epoch Times Association, Inc.*. Case No. 22-cv-06348-AKH (S.D.N.Y.) (class action settlement involving VPPA claims that was preliminarily approved on January 22, 2024); *Adams v. America's Test Kitchen, LP, et al*., Case No. 22-cv-11309-AK (D. Mass.) (class action settlement involving VPPA claims that was preliminarily approved on March 11, 2024).

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance." *In re MetLife Demutalization Litig*., 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010); *Noto v. 22nd Century Grp., Inc.*, No. 19-CV-01285-JLS-MJR, 2023 WL 7107840, at *11 (W.D.N.Y. Oct. 17, 2023) ("In considering the requested fee, the Court also looks to the quality of the representation of Lead Counsel as well as the quality of opposing counsel."); *Cornwell v. Credit Suisse Grp.*, No. 08-CV-03758(VM), 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) ("The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys."). Class Counsel achieved an exceptional result in this case while facing well-resourced and highly experienced defense counsel. *See In re Marsh ERISA Litig*., 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Class Counsel litigated this case

18

efficiently, effectively, and civilly. The excellent result is a function of the high quality of that work, which supports the requested fee award.

### 5.    The Requested Fee in Relation to the Settlement

As set forth in Section V.B.2 above, "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez*, 2010 WL 4877852, at *21; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("It is very common to see 33% of contingency fees in cases with funds of less than $10 million …."). Here, the requested attorneys' fees represent one-third of the cash value of the $8.3 million Settlement Fund, which is well within approved norms of similar class ligation in the Second Circuit. Joint Decl. Re: Final Approval, ¶ 65:

- *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *15 (E.D.N.Y. Jan. 26, 2024) (approving attorneys' fees in the amount of one-third of the $6,375,000 settlement and noting a one-third fee "constitutes a proportion routinely approved as reasonable.")

- *Jenkins v. Nat'l Grid USA Serv. Co., Inc.*, No. 15-CV-1219, 2022 WL 2301668, at *5 (E.D.N.Y. June 24, 2022) (awarding attorneys' fees of 1/3 of $38.5 million common fund plus $1,052,082.5 in expenses)

- *Cates*, 2021 WL 4847890, at *2 (awarding one-third of $13 million settlement fund plus litigation expenses)

- *Lea v. Tal Education Group*, 18 Civ. 5480, 2021 WL 5578665, at * 12-13 (S.D.N.Y. Nov. 30, 2021) (awarding one-third of $7.5 million settlement amount plus litigation expenses)

- *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 18 Md. 2819, 2020 WL 6193857, at *5-6 (E.D.N.Y. Oct. 7, 2020) (awarding one-third of $51.25 million settlement)

- *City of Providence v. Aeropostale, Inc.*, 11 Civ. 7132, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding one-third of $15 million settlement recovery plus litigation expenses)

19

- *Anwar v. Fairfield Greenwich Ltd.*, 09 Civ. 118, 2012 WL 1981505, at *3, 4 (S.D.N.Y. June 1, 2012) (awarding 33% of $7.7 million settlement fund, which "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigation" and reimbursement of plaintiffs' counsel's expenses)

- *In re Oxycontin Antitrust Litig.*, 04-md-1603-SHS, Dkt. 360 at 9 (S.D.N.Y. Jan. 25, 2011) (awarding one-third from a class settlement fund of $16 million and reimbursing expenses incurred in prosecution of the lawsuit)

- *In re DDAVP Direct Purchaser Antitrust Litig.*, 05 Civ. 2237, 2011 WL 12627961, at *5 (S.D.N.Y. Nov. 28, 2011) (awarding one-third of $20,250,00 settlement fund and reimbursement of expenses incurred in the prosecution of this lawsuit)

- *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146, 152 (S.D.N.Y. 2010) (awarding one-third of $35 million settlement fund and $1,270,915.40 in expenses advanced by Plaintiffs' Counsel)

- *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 368 (S.D.N.Y. 2002) (awarding one-third of $11.5 million fund and citing other cases that awarded one-third of a settlement fund and reimbursement of out-of-pocket costs and expenses)

Moreover, here, Class Counsel's requested percentage does not take into account the value of the non-monetary benefits, including significant business practice changes and the In Kind Relief which is currently valued at over $1,000,000, provided for under the Settlement. *Id*. When these benefits are factored in, Class Counsel's fee request is less than 30% of the total benefits of the Settlement. Joint Decl. Re: Final Approval, ¶¶ 26-29.

Additionally, that percentage will decrease as Class Counsel continues to invest time and resources in the final approval process and the oversight of the administration process of this Settlement. *Id*., ¶ 66. As noted above, Class Counsel anticipates expending an additional 150-200 hours to complete the settlement approval process, claims administration process, and distribution of the Settlement Fund. *Id*. Accordingly, this factor weighs in favor of the requested fee award.

## 6.   **Public Policy Considerations**

The final *Goldberger* factor is public policy. "Skilled counsel must be incentivized to

pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24. As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct. *See id*. "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk." *Massiah*, 2012 WL 5874655, at *7 (citing *Goldberger*, 209 F.3d at 51). Thus, there is a strong public interest in incentivizing Class Counsel to bring this complex litigation to protect Settlement Class Members' privacy rights, particularly where it is unlikely that they would pursue litigation on their own for economic or personal reasons.

Here, given the risk and expense in pursuing class members' VPPA claims, "it would likely not be economical for an individual Class Member to pursue such litigation on their own." *In re Puerto Rican Cabotage Antitrust Litig*., 815 F. Supp. 2d 448, 463 (D.P.R. 2011). Moreover, the VPPA claims seek to redress consumers' fundamental privacy rights. This class action serves important public policy of ensuring that consumers' privacy rights be protected even where individual damages are minimal. Accordingly, the requested fee here serves an important public policy of ensuring that consumer claims can be pursued by experienced and competent counsel.

## C.    THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER A LODESTAR CROSS-CHECK.

A lodestar cross-check further supports the requested fee. When using a lodestar cross-check to further test the reasonableness of a percentage-based fee, courts generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See Wal–Mart Stores, Inc*., 396 F.3d at 122; *Shapiro*,

2014 WL 1224666, at *11 (observing, "[w]here . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"; finding multiplier of approximately 3.05 "reasonable and appropriate" (internal quotation omitted)); *Goldberger*, 209 F.3d at 50. (encouraging courts to use the lodestar multiplier method "as a 'cross check' on the reasonableness of the requested percentage."). Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020). The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors. *See Shapiro*, 2014 WL 1224666, at *24 ("[U]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."). The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See Alexander v. Priv. Protective Servs., Inc.*, No. 119CV10004JPOSDA, 2022 WL 16555970, at *2 (S.D.N.Y. June 24, 2022), report and recommendation adopted, No. 19-CV-10004 (JPO), 2022 WL 16555312 (S.D.N.Y. Oct. 31, 2022) ("A reasonable rate is generally the 'prevailing market rate[ ] for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)). "In deciding what constitutes a reasonable rate, a court may consider rates awarded in

prior cases and the court's own familiarity with the rates prevailing in the district." *Id*. (internal quotation marks omitted). Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market and have previously been approved as reasonable. *See* Joint Decl. Re: Final Approval, ¶ 89; *see also TAO AN et al., Plaintiffs-Counterclaim-Defendants, v. LUC A. DESPINS & PAUL HASTINGS LLP, Defendants-Counter-Claimants. Additional Party Names: Li*, No. 22CV10062VECJW, 2024 WL 1157281, at *4 (S.D.N.Y. Mar. 18, 2024) (finding Defendant's counsel's hourly rates of $1,990 and $1,440 to be reasonable and in line with prevailing market rates in the district); *Zhongli Sci. & Tech. Grp. Co. v. Fir Tree Partners*, No. 22MC2795NGGRML, 2023 WL 7130666, at *3 (E.D.N.Y. Oct. 30, 2023), objections overruled, No. 22MC02795NGGRML, 2024 WL 525535 (E.D.N.Y. Feb. 9, 2024) (approving as reasonable partner rates ranging from $1,295 to $875 per hour and associate rates ranging from $630 to $500 per hour); *Pearlstein v. BlackBerry Ltd*., No. 13 CV 7060, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (collecting cases and holding that hourly rates ranging from $1,200 for senior partners to $500 for associates are reasonable and comparable to billing rates "normally charged in the community where the counsel practices, i.e., the 'market rate'"); *In re GSE Bonds Antitrust Litig*., No. 19 CV 1704, 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) (rates between $1,150 and $350 per hour held reasonable); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 CV 8103, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (rates ranging $874 to $1,048 per hour for partners and $569 to $753 per hour for associates found "reasonable under the circumstances, given the experience and work performed by the particular individuals."); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Cap. Markets*, No. 12 CV 9412, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("partner billing rates in excess of $1,000 an hour are by now not

uncommon in the context of complex commercial litigation.") (citing *Themis Cap. v. Democratic Republic of Congo*, No. 09 CV 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014)); *see also Sharpe v. A&W Concentrate Co.*, case no. 1:19-cv-00768-BMC (E.D.N.Y.) (granting attorneys' fees based upon rate of $1,500 for Mr. Reese).[5]

As detailed in the Joint Declaration, Class Counsel have devoted 1,329.05 hours to prosecuting this litigation. *See id.*, ¶¶ 66-67. Class Counsel's aggregate lodestar is $1,260,613.50. *Id.* Therefore, the requested fee award represents a multiplier of approximately 2.19 (*see id.*, ¶ 70), which is well within the accepted range in this Circuit. *See In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *16 (E.D.N.Y. Jan. 26, 2024) (approving a lodestar multiplier of 2.35, which the court determined is "a reasonable multiplier that falls comfortably in line with multipliers approved by courts in this Circuit and around the country."); *Thomas v. Mekruth Inc.*, No. 19-CV-01566 (LJL), 2022 WL 6757487, at *1 (S.D.N.Y. Oct. 10, 2022) (awarding 1/3 of the gross settlement amount that represents a 2.44 multiplier); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) (noting "[i]n complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved," and approving a multiplier of 1.98); *Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving lodestar multiplier of 5.23); *In re Credit*

---

[5] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher*, 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' ... and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

*Default Swaps Antitrust Litig.*, 13md2476(DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving attorneys' fees of $253,758,000, which reflected a "lodestar multiplier of just over 6"); *Burns,* 2014 WL 12917621, at *10 (approving lodestar multiplier of 4.75 and awarding fees of 33.3% of the settlement); *Velez*, 2010 WL 4877852, at *23 (finding the requested multiplier of 2.4 "falls well within (indeed, at the lower end) of the range of multipliers accepted within the Second Circuit."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (approving multiplier of 4.65 and finding it is "well within the range awarded by courts in this Circuit and courts throughout the country."). Moreover, as courts in New York and elsewhere have noted, a multiplier helps to avoid "penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount was substantial." *Beckman*, 293 F.R.D. at 482; *Hyun*, 2016 WL 1222347, at *3 ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' … is appropriate."); *see also Long v. HSBC USA Inc.*, No. 14 CIV. 6233 (HBP), 2016 WL 4764939, at *14 (S.D.N.Y. Sept. 13, 2016) (acknowledging counsel's work and experience weighed in favor of a 3.10 multiplier because it "ultimately aided plaintiffs in the development of the claims and in reaching a fair settlement at an early stage in negotiations"). Indeed, in light of the excellent result obtained here, the relatively early resolution of this matter means that Settlement Class Members will receive a substantial benefit through prompt cash payments and the In-Kind Relief made available under the Settlement, while also obtaining the exact business practice changes they would hope to achieve had the case gone to trial years later.

Class Counsel's lodestar multiplier is also reasonable because it will decrease as Class Counsel continues to invest time and resources in administering the Settlement, answering

Settlement Class Members' inquiries, and overseeing distribution of the settlement funds to Settlement Class Members. *See* Joint Decl. Re: Final Approval, ¶ 70; *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). Thus, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Yuzary*, 2013 WL 5492998, at *11; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x. 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement."); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC, 2023 WL 8445812, at *2 (N.D. Cal. Oct. 10, 2023) (same).[6]

In sum, Class Counsel's efforts in this case resulted in an exceptional settlement of a complex and uncertain case, and it is appropriate to award Class Counsel for achieving this result. Under the percentage-of-the-fund method, including the added scrutiny of a lodestar crosscheck, Class Counsel's fee request is reasonable and well within the ranges approved by courts in this Circuit.

---

[6] As noted above, Class Counsel estimates they will incur an additional 150-200 hours on this matter. Joint Decl. Re: Final Approval, ¶ 66.

D.    **THE REQUESTED SERVICE AWARDS ARE REASONABLE AND REFLECT PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED.**

Service awards are "common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Reyes v. Altamarea Group, LLC*, 10-CV-6451(RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011). Reasonable service awards fulfill the important purpose of compensating plaintiffs for the time they spend, the risks they take, and "encourage[s] class representatives to participate in class action lawsuits." *Moses v. N.Y. Times Co*., 79 F.4th 235, 253 (2d Cir. 2023) ("[O]ur clear precedent … permits district courts to approve fair and appropriate incentive awards to class representatives."); *Massiah*, 2012 WL 5874655, at *8. Here, the participation of Plaintiffs was critical to the ultimate success of the case. *See* Joint Decl. Re: Final Approval, ¶ 93. Plaintiffs spent significant time protecting the interests of the Settlement Class and advancing the VPPA claims against Defendant through their involvement in this case. *Id*. Plaintiffs assisted Class Counsel in investigating their claims by providing information necessary to draft and file their respective complaints and the Amended Complaint. *Id*. During the course of this litigation, Plaintiffs kept in regular contact with Class Counsel to receive updates on the progress of the case and to discuss strategy and settlement. *Id*.

On these facts, a modest $2,000 service payment to each Plaintiff is appropriate in light of the efforts made by Plaintiffs to protect the interests of the other Settlement Class Members, the time and effort they expended pursuing this matter, and the substantial benefit they helped achieve for the other Settlement Class Members. Further, the service awards are reasonable and equivalent to awards approved by other courts in this Circuit. *See, e.g., Moses*, 79 F.4th at 253 (affirming the

27

district court's approval of a $5,000 incentive award to the plaintiff); *Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV359LEKATB, 2023 WL 3251421, at *1 (N.D.N.Y. May 3, 2023) (approving a $2,500 incentive award to each named plaintiff); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD-2262(NRB), 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018) (approving incentive awards of $25,000 for each of the five named plaintiffs); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports service payments of between $2,500 and $85,000).

### E.  CLASS COUNSEL'S LITIGATION REASONABLE EXPENSES ARE JUSTIFIED AND SHOULD BE REIMBURSED.

"Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Copley v. Bactolac Pharm., Inc.*, No. 2:18-CV-00575-FB-PK, 2023 WL 4490286, at *4 (E.D.N.Y. May 23, 2023) (awarding counsel $210,136.00 in litigation expenses); *Baker v. Saint-Gobain Performance Plastics Corp.*, No. 116CV00917LEKDJS, 2022 WL 1025185, at *9 (N.D.N.Y. Feb. 4, 2022) (awarding counsel $1,040,817 in litigation expenses); *Jenkins*, 2022 WL 2301668, at *5 (awarding counsel $1,052,082.5 in litigation expenses). Here, Class Counsel have incurred a total of $25,127.80 in out-of-pocket litigation expenses. *See* Joint Decl. Re: Final Approval, ¶ 90. More particularly, over the course of this litigation, Class Counsel incurred the following costs, among others: mediation, filing and pro hac vice fees, forensic investigation, experts and consultants, computer research, travel, printing and postage, document retrieval, federal express and courier services, and telephone conferencing services. *See id*. These expenses were reasonably incurred in the prosecution and settlement of this Action. Accordingly, reimbursement of these out-of-pocket litigation expenses is appropriate. *See Copley*, 2023 WL 4490286, at *4 (finding costs associated with expert witness expenses, document production and

storage, and travel in connection with litigation "reflect[ ] expenses typically billed by attorneys to paying clients in the marketplace."); *Baker*, 2022 WL 1025185, at *9 (approving as reasonable litigation expenses that included "expert witness expenses, costs associated with document production and storage, deposition expenses, travel in connection with litigation, and expenses related to procuring the services of a well-qualified mediator.").

## VI.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully requests that this Court grant this motion and (i) award attorneys' fees of $2,766,666, or one-third of the Settlement Fund, to Class Counsel; (ii) award reimbursement of Class Counsel's out-of-pocket litigation expenses in the amount of $25,127.80, and (iii) award a service award of $2,000 to each of the nine Class Representatives ($18,000 total).

Date: March 25, 2024                                Respectfully submitted,

By:    */s/ Hank Bates*
          Hank Bates
          Lee Lowther
          Samuel R. Jackson
          **CARNEY BATES & PULLIAM, PLLC**
          One Allied Drive, Suite 1400
          Little Rock, AR 72202
          T: (501) 312-8500
          F: (501) 312-8505
          hbates@cbplaw.com
          llowther@cbplaw.com
          sjackson@cbplaw.com

          Michael W. Sobol
          **LIEFF CABRASER HEIMANN**
          **& BERNSTEIN LLP**
          275 Battery Street, 29th Floor
          San Francisco, CA 94111
          T: (415) 956-1000
          F: (415) 956-1008
          msobol@lchb.com

29

Douglas I. Cuthbertson
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street 8th Floor
New York, NY 10013
T: (212) 355-9500
F: (212) 355-9592
dcuthberston@lchb.com

Michael Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, NY 10025
T: (212) 643-0500
mreese@reesellp.com

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Hank Bates, hereby certify that this document was filed on March 25, 2024, via the ECF

system, and was sent electronically on that date to the parties' counsel of record.

<u>/s/       *Hank Bates*       </u>
Hank Bates

30