**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONNIE VELA, NICHOLAS NUNEZ, ANDY GERMUGA, TRISHA ICKES, WILLIAM BUCKLEY, PATRICK JAMES, WILLIAM KETTERER, THOMAS APOSTLE, and WENDY KISER, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>    v.<br><br>AMC NETWORKS, INC.,<br><br>                 Defendant. | Case No.: 1:23-cv-02524-ALC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 3

    A.      Summary of Plaintiffs' Allegations ............................................................... 3

    B.      Pre-Settlement Procedural History ................................................................ 3

    C.      Mediation and Settlement ............................................................................. 5

    D.      Preliminary Approval of the Settlement ....................................................... 5

III.    SUMMARY OF THE SETTLEMENT'S TERMS ................................................. 6

    A.      Class Definition ............................................................................................ 6

    B.      Monetary Relief ............................................................................................ 6

    C.      Business Practice Changes to Bring AMC Services into Compliance with
         the VPPA ....................................................................................................... 7

    D.      In Kind Relief: Free AMC+ streaming service ............................................ 7

    E.      Release .......................................................................................................... 8

    F.      Attorneys' Fees and Costs, and Service Awards for Class Representatives .......... 8

IV.     NOTICE PROGRAM ............................................................................................. 9

V.      ARGUMENT .......................................................................................................... 10

VI.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............................. 11

    A.      The Settlement is procedurally fair ............................................................. 12

        1.      The Settlement Class has been vigorously represented. .......................... 12

        2.      The Settlement was negotiated at arm's length after the exchange
            of informal discovery. ............................................................................. 14

    B.      The Settlement provides meaningful relief to the Settlement Class. ............. 16

    C.      The Settlement treats Settlement Class Members equitably. ...................... 20

    D.      The reaction of the Settlement Class supports final approval. ..................... 20

    E.      The remaining factors weigh in favor approval ........................................... 21

VII.    THE COURT SHOULD CONFIRM SETTLEMENT CLASS CERTIFICATION. ...... 23

VIII.   CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ambrose v. Boston Globe Media Partners*,
No. 1:22-cv-10195-RGS, Dkt. 67 (D. Mass. Sept. 6, 2023)....................................................16

*Ambrose v. Boston Globe Media Partners*,
No. 1:22-cv-10195-RGS, Dkt. 63 (D. Mass. Aug. 24, 2023) ................................................16

*Amchem Prods., Inc. v. Windsor*,
117 S. Ct. 2231 (1997)...........................................................................................................24

*Beltran v. Sony Pictures Entertainment, Inc. d/b/a Crunchyroll*,
No. 1:22-cv-04858, Dkt. 52-2 (ND. Ill. Dec. 7, 2023) ..........................................................16

*Buckley v. AMC Networks, Inc.*,
No. 3:23-cv-03630 (N.D. Cal.) ..................................................................................... *passim*

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................... *passim*

*Coinbase, Inc. v. Bielski*,
143 S. Ct. 1915 (2023)............................................................................................................18

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)......................................................................................................12

*Fiorentino v. Flosports, Inc.*,
No. 1:22-cv-11502-AK, Dkt. 72 (D. Mass. Feb. 16, 2024)....................................................16

*Fraley v. Batman*,
638 F. App'x 594 (9th Cir. 2016)............................................................................................17

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) ....................................................................................17

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................................................21

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 CIV. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...............................22

*Hicks v. Morgan Stanley & Co.*,
No. 01-cv-10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................18

*Ickes et al. v. AMC+ Networks*,
No. 3:23-cv-00803 (N.D. Cal.), ECF No. 1 ..............................................................................4

*Ickes, et al. v. AMC+ Networks, Inc.*,
No. 1:23-cv-05730 (S.D.N.Y.).......................................................................................1, 4, 5, 14

**TABLE OF AUTHORITIES**
(continued)

*In re Am. Bank Note Holographics, Inc.*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................22

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................................18

*In re Cablevision Consumer Litig.*,
 No. 10-cv-04992 JS AKT, 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014)..............23

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
 No. 05-cv-10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)......................10

*In re Google Plus Profile Litig.*,
 No. 5:18-cv-06164-EJD (VKD), Dkt. 96 (N.D. Cal. Oct. 15, 2020)......................17

*In re Google Referrer Header Priv. Litig.*,
 No. 5:10-CV-04809-EJD, 2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ...............16

*In re IMAX Sec. Litig.*,
 283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................22

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
 246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................................22

*In re Namenda Direct Purchaser Antitrust Litig.*,
 462 F. Supp. 3d 307 (S.D.N.Y. 2020)......................................................................18

*In re Packaged Ice Antitrust Litig.*,
 322 F.R.D. 276 (E.D. Mich. 2017) ..........................................................................22

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019).........................................................................18, 23

*In re Sinus Buster Prod. Consumer Litig.*,
 No. 12-cv-02429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014).....22

*In re Synchrony Fin. Sec. Litig.*,
 No. 3:18-cv-01818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023).................12

*In re: Vizio, Inc., Consumer Privacy Litig.*,
 No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638 (C.D. Cal. July 31, 2019).......17

*James v. Sentai Filmworks, LLC*,
 No. 5:23-cv-03928 (N.D. Cal.) ..................................................................1, 4, 5, 14

**TABLE OF AUTHORITIES**
(continued)

*Matheson v. T-Bone Rest., LLC*,
　　No. 09-cv-04214 DAB, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)...................................15

*McMahon v. Olivier Cheng Catering & Events, LLC*,
　　No. 08-cv-08713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .................................15

*Melito v. Am. Eagle Outfitters, Inc.*,
　　No. 14-cv-02440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017)...............................10

*Moses v. New York Times Co.*,
　　79 F.4th 235 (2d Cir. 2023) ..........................................................................................11, 12

*Poertner v. The Gillette Co.*,
　　No. 6:12-v-00803-GAP-DAB, Dkt. 168 (M.D. Fla. Aug. 21, 2014)......................................17

*TBK Partners, Ltd. v. Western Union Corp.*,
　　675 F.2d 456 (2d Cir. 1982)...............................................................................................23

*Vela, et al. v. AMC Networks, Inc.*,
　　No. 1:23-cv-02524 (S.D.N.Y).....................................................................................1, 4, 14

*Viafara v. MCIZ Corp.*,
　　No. 12-cv-07452 RLE, 2014 WL 1777438 (S.D.N.Y. May 1, 2014)....................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
　　396 F.3d 96 (2d Cir. 2005)..................................................................................................10

**Court Rules**

Fed. R. Civ. P. 23(e) ...................................................................................................................10

Fed. R. Civ. P. 23(e)(2) .......................................................................................................*passim*

**Treatises**

*Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022)..................................................10

I.    <u>**INTRODUCTION**</u>[1]

Pursuant to Federal Rule of Civil Procedure 23, the Class Action Settlement Agreement

(ECF No. 43-1 ("Settlement")),[2] and this Court's Preliminary Approval Order (ECF No. 50),

Plaintiffs respectfully request this Court grant final approval of the Settlement. The Settlement is

the product of informal discovery, independent forensic analysis, and months of arm's-length

negotiations, including two mediations with the Hon. Wayne Andersen (Ret.). It will fully

resolve all putative nationwide class claims in four actions[3] across all of AMC's streaming

services and platforms, and: (1) create an $8.3 million non-reversionary cash fund for the benefit

of the Settlement Class,; (2) provide a one-week digital subscription to the AMC+ streaming

service for all Settlement Class Members who submit valid claims valued, in aggregate, at

approximately $1 million; and (3) require Defendant AMC Networks, Inc. ("AMC") to remove,

suspend, or modify the operation of tracking code installed on streaming services AMC+,

Shudder, Acorn TV, ALLBLK, SundanceNow, and HIDIVE ("AMC Services"), thereby

providing Settlement Class Members (and future AMC subscribers) with valuable injunctive

relief. Based on the views of experienced counsel, who were informed by the strengths and

---

[1] Unless otherwise noted, capitalized terms have the same meanings as in the Settlement or the operative complaint (ECF No. 40).

[2] AMC does not oppose the relief sought in this Motion and supports final approval of the Settlement. AMC's consent and resolution of these claims should not be interpreted as agreement with the allegations in the filed complaints, all of which are denied unless they have been explicitly admitted. Moreover, AMC's consent to this filing does not mean that it agrees with the characterization of its conduct or the statements of law related to that conduct in this brief prepared by Class Counsel.

[3] The actions are: *Vela, et al. v. AMC Networks, Inc.*, No. 1:23-cv-02524 (S.D.N.Y) ("*Vela*"); *Ickes, et al. v. AMC+ Networks, Inc.*, No. 1:23-cv-05730 (S.D.N.Y.) ("*Ickes*"); *Buckley v. AMC Networks, Inc.*, No. 3:23-cv-03630 (N.D. Cal.) ("*Buckley*"); and *James v. Sentai Filmworks, LLC*, No. 5:23-cv-03928 (N.D. Cal.) ("*James*").

weaknesses of their respective clients' cases and defenses, these benefits are immediate and substantial, especially considering the costs, delay, and risks——chief among them, AMC's pending and prospective motions to compel arbitration—of continued litigation, interlocutory appeals, trial, and possible post-trial appeals.

The notice program, which will continue through April 9, 2024, is already a great success. The Settlement Administrator sent direct notice via email to 7,052,300 Settlement Class Members, or approximately 96% of the entire Settlement Class. This has resulted in a robust claims rate for cases such as this one, currently standing at approximately 7.15%, which is more the norm and indicative of a successful and reasonable notice program. By contrast, other comparable, recent VPPA settlements that were finally approved achieved claims rates between 1.7% and 3.3%.  Here, the notice program greatly exceeded typical claims rates trends in this consumer context. Further, to date, there has been only one comment to the Settlement and only 65 exclusions, a miniscule percentage of the over 7.3 million Settlement Class Members.

In sum, the Settlement satisfies all criteria for final approval. Plaintiffs thus respectfully request the Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) certify the Settlement Class for purposes of judgment on the Settlement; (3) find that the Notice Plan satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (4) enter final judgment.

II.     **BACKGROUND**

A.      **Summary of Plaintiffs' Allegations**

Plaintiffs allege that AMC intentionally installed the Third-Party Tracking Technologies[4]

on AMC Services' websites and apps and selected the specific categories of information the

Technologies would capture and transmit to third parties. *See* ECF No. 40 ("Amended

Complaint"), ¶¶ 2, 29, 34–35, 38, 46, 52, 59, 65, 70, 72. As a result, it is alleged that when a

subscriber views a particular video on AMC Services, AMC transmits the title and URL of that

video, and the subscribers' PII, to third parties via the Third-Party Tracking Technologies

installed on that AMC Services website or app. *Id.*, ¶¶ 2, 31, 34, 37, 47–48, 52–53, 55, 61, 62–

66, 71, 73.

Plaintiffs all were AMC Services subscribers who accessed videos on AMC Services'

websites and apps. *Id.*, ¶¶ 75–118. When they did, Plaintiffs allege that AMC sent the videos

Plaintiffs accessed and their corresponding PII to third parties via the Third-Party Tracking

Technologies installed therein. *Id.*

B.      **Pre-Settlement Procedural History**

On January 18, 2023, plaintiffs Gerald McCoy, Andy Germuga, and Nicholas Nuñez

filed this putative class case alleging that AMC's disclosure of its subscribers' PII to Meta

without informed, written consent violates the VPPA. *See McCoy*, ECF No. 1.

_____

[4] The Third-Party Tracking Technologies encompassed by the Settlement are those developed by
Meta Platforms, Inc. ("Meta," formerly known as Facebook, Inc., "Facebook"), Google LLC
("Google"), X Corp., (formerly known as Twitter), Snap Inc. d/b/a Snapchat, TikTok Ltd., and
Braze, Inc.

On February 22, 2023, plaintiff Trisha Ickes filed a putative class action against AMC in the Northern District of California, alleging substantially identical claims for violations of the VPPA. *See Ickes et al. v. AMC+ Networks*, No. 3:23-cv-00803 (N.D. Cal.), ECF No. 1.

On March 24, 2023, *McCoy* was voluntarily dismissed. *McCoy*, ECF No. 15. This action—*Vela*—was filed the same day and related to *McCoy*. *See* ECF Nos. 2 & 5 (Civil Cover Sheet) & (Related Case Statement). Plaintiff Vela was substituted for McCoy; otherwise, the parties and the allegations in the original *Vela* complaint were substantively identical to those in *McCoy. Compare Vela*, ECF No. 1; *with McCoy*, ECF No. 1.  On May 1, 2023, AMC moved to compel arbitration. ECF No. 14. Plaintiffs opposed the motion (ECF No. 18), which remains pending (ECF No. 35).

On July 5, 2023, *Ickes* was transferred to this district and related to *Vela. See Ickes*, No. 1:23-cv-05730 (S.D.N.Y.), July 5 & July 21, 2023 docket entries. On July 21, 2023, plaintiff William Buckley filed a putative class action in the Northern District of California against AMC's subsidiary streaming service, Shudder, alleging substantially identical claims for violations of the VPPA. *See Buckley*, ECF No. 1.

On August 4, 2023, plaintiff Patrick James filed a putative class action in the Northern District of California against AMC's subsidiary streaming service, HIDIVE, alleging substantially identical claims for violations of the VPPA. *See James*, ECF No. 1.

On October 6 and 10, 2023, AMC moved to dismiss or, in the alternative, to transfer *Buckley* and *James* to this district. *See Buckley*, ECF No. 16; *James*, ECF No. 11.  On October 27, 2023 *Buckley* and *James* were voluntarily dismissed. *See Buckley*, ECF No. 20; *James*, ECF Nos. 14 & 15. On December 5, 2023, *Ickes* was voluntarily dismissed. *Ickes*, ECF No. 37.

On December 11, 2023 -- following the mediation discussed below, continued forensic investigation and informal discovery -- Plaintiffs filed an Amended Complaint that adds the plaintiffs from *Ickes*, *Buckley*, and *James* to this case, effectively consolidating all four actions and additional substantive allegations concerning the Third-Party Tracking Technologies.

 **C.**  <u>Mediation and Settlement</u>

On July 14, 2023, the Parties notified the Court that they had begun good faith settlement negotiations. *See* ECF No. 28. On September 11, 2023, the parties attended a private mediation before the Honorable Wayne Andersen (Ret.) of JAMS. Although the Parties did not settle that day, they continued negotiations and informal discovery in ensuing weeks under the guidance of Judge Andersen. *See* ECF No. 43, Joint Declaration of Douglas I. Cuthbertson & Hank Bates in support of Preliminary Approval ("Joint Decl. Re: Preliminary Approval"), ¶¶ 23–24. On October 24, 2023, the Parties again mediated before Judge Andersen. *Id.*, ¶ 25. That second mediation culminated in a mediator's proposal on October 24, 2023, which both parties accepted on October 25, 2023. *Id.* The Parties notified the Court of their settlement in principle on October 27, 2023. ECF No. 38. As noted above, the *Ickes, Buckley*, and *James* actions subsequently were voluntarily dismissed and their named plaintiffs incorporated into the Amended Complaint. *See* ECF No. 40.

 **D.**  <u>Preliminary Approval of the Settlement</u>

On December 11, 2023, Plaintiffs filed a Notice of Motion for Preliminary Approval of the Settlement (ECF No. 41) and supporting memorandum of law (ECF No. 42). On January 10, 2024, this Court granted preliminary approval of the settlement (ECF No. 50 ("PAO")), holding, *inter alia*:

- "[T]he Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class";

- "[T]he Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation."; and

- "[T]he Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel, with the assistance of mediator the Honorable Wayne R. Andersen (Ret.); (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; and (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715."

PAO at 2. In addition, the Court concluded it likely will certify the Settlement Class after finding that the conditions of Rule 23(a) and (b)(3) are satisfied. *Id.* at 3. The Court also appointed Plaintiffs as Class Representatives and Douglas I. Cuthbertson of Lieff Cabraser Heimann & Bernstein, LLP; Hank Bates of Carney Bates & Pulliam PLLC; Michael R. Reese of Reese LLP; and Kevin Laukitis of Laukaitis Law as Class Counsel. *Id.* at 3–4.

## III.   <u>SUMMARY OF THE SETTLEMENT'S TERMS</u>

### A.   <u>Class Definition</u>

The Settlement Class is comprised of:

> all persons in the United States who: (1) were registered users of AMC Services through (i) an online website or mobile app owned, controlled, and/or operated by AMC or (ii) any Streaming Service and (2) requested or obtained specific video content from AMC Services through (i) an online website or mobile app owned, controlled, and/or operated by AMC or (ii) any Streaming Service [from January 18, 2021 through the date of Preliminary Approval].

PAO at 2–3; Settlement, ¶ 1.34.

### B.   <u>Monetary Relief</u>

AMC has agreed to pay $8,300,000 to create a non-reversionary Settlement Fund for the benefit of Settlement Class Members. *Id.*, ¶ 1.36. Settlement Class Members who submit valid claims through a simple, streamlined process will receive a *pro rata* payment after the deduction of settlement-related costs, including expenses of notice to the Settlement Class and settlement

administration, any Court-awarded attorneys' fees, expenses, and named plaintiff Services Awards. *Id*., ¶¶ 1.20, 1.36, 2.1.

     C.     <u>**Business Practice Changes to Bring AMC Services into Compliance with the VPPA**</u>

     In addition to paying monetary damages, AMC has agreed to remediate the alleged VPPA violations going forward. Specifically, within 45 days of the entry of Final Judgment, AMC will remove, suspend, or modify the operation of each of the Third-Party Tracking Technologies so that their use, if any, on AMC Service will not violate the VPPA. *Id.*, ¶ 2.2. AMC will provide a sworn declaration confirming it has implemented these changes within 90 days of the entry of Final Judgment. *Id.* AMC will not use Third-Party Tracking Technologies unless it does so in accordance with the VPPA (*e.g.*, by obtaining subscribers prior written consent in the manner specified by the VPPA, or modifying the technology such that its use will not result in disclosure to third-party technology companies of the specific video content viewed by a specific individual) or the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by judicial decision by the United States Supreme Court or the Second Circuit Court of Appeals. *See id.*

     D.     <u>**In Kind Relief: Free AMC+ streaming service**</u>

     In addition to the monetary and prospective relief described above, AMC will provide a one-week digital subscription to the AMC+ streaming service to all Settlement Class Members who submit valid claims ("In Kind Relief"). *Id.*, ¶ 1.21. No payment or billing information will be required to use the In Kind Relief. *Id.*, ¶ 2.1(d).  AMC will cover all costs for providing these one-week AMC+ subscriptions, separate from paying for the Settlement Fund. *Id.*, ¶ 1.36. The value of this in-kind relief, based on the current number of claimants, is close to $1,000,000.

Joint Class Counsel Declaration in Support of Final Approval and Fees Motions ("Joint Decl.

RE: Final Approval & Fees"), ¶¶ 29, 36.

### E. <u>Release</u>

In exchange for the relief described above, Plaintiffs and the Settlement Class shall

release all claims that have or could have been asserted against the Released Parties relating to

the facts, transactions, or events alleged in the Amended Complaint. *See* Settlement, ¶¶ 1.29

(Released Claims), 1.30 (Released Parties), 3.1–3.3 (Release). Specifically, the release covers

any claims against the Released Parties "regarding the alleged disclosure of the Settlement Class

Members' personally identifiable information and video viewing behavior to any third party."

*Id.*, ¶ 1.29.

### F. <u>Attorneys' Fees and Costs, and Service Awards for Class Representatives</u>

In accordance with the Settlement terms and in a separate motion filed concurrently

herewith, Class Counsel request an award of attorneys' fees of $2,766,666.66—*i.e.*, one third of

the $8.3 million Settlement Fund—plus reimbursement of litigation expenses to compensate

Class Counsel for the work already performed in this case, all work remaining to be performed in

connection with this Settlement, the risks undertaken in prosecuting this case, and their out-of-

pocket litigation expenses. *See* Settlement, ¶ 8.1. The separate motion also seeks service awards

of $2,000 for each Class Representative ($18,000 total) in recognition of their efforts in serving

as Class Representatives. *Id.*, ¶ 8.3. The enforceability of the Settlement is not contingent on the

Court's approval of the motion. *See id.*, ¶¶ 8.4, 8.5. In accord with the Settlement and the

Preliminary Approval Order, Plaintiffs' motion for an award of attorneys' fees will, along with

this motion, be posted on the Settlement Website.

IV.    **NOTICE PROGRAM**

Pursuant to the Court's preliminary approval order and as described below, the Settlement Administrator appointed by the Court, Angeion Group, LLC ("Angeion"), has implemented a robust notice program, providing direct notice to Settlement Class Members through e-mail (the "Notice Program"). *See* Declaration of Steven Weisbrot, Esq. ("Weisbrot Decl."), ¶¶ 8-14. The ongoing notice campaign has already demonstrated an extraordinarily high level of success in reaching Settlement Class Members., reaching approximately 96% of the Settlement Class.

**Direct Email Notice**.  AMC provided Angeion with a data file containing 7,362,068 Settlement Class Member records (7,362,067 records once de-duplicated by Angeion) with email addresses for all Settlement Class Members. *Id*., ¶ 7. Angeion engaged in various processes to clean the email data set and test the validity of those emails and removed 214,570 invalid emails, sending email notice to the remaining 7,147,497 email addresses. *Id*., ¶¶ 8-9. Emails sent to 131,827 of these email addresses bounced-back as undeliverable; Angeion then engaged in further efforts to find alternate email addresses for all invalid or unworkable emails, ultimately finding 37,377 alternate emails and sending notice emails to those emails too.  *Id.*, ¶¶ 9-10.  As of March 25, 2024, Angeion had successful emailed 7,052,300 Settlement Class Members, or 95.8% of the Settlement Class, even as additional notice efforts (including reminder emails) are ongoing. *Id.*, ¶¶ 10-13.

**Settlement Website**. Angeion established a Settlement Website (www.amcvppasettlement.com), which contains general information about the Settlement, including answers to frequently asked questions, important dates and deadlines pertinent to this matter, and copies of important documents. *Id.*, ¶ 15. The Settlement Website has a "Contact" page where Settlement Class Members may submit questions regarding the Settlement. *Id.* The

settlement website also includes a claim filing portal whereby Settlement Class Members can complete and submit their claim form. *Id.* As of March 25, 2024, the Settlement Website had received 1,305,880 website visits by 1,050,460 unique users totaling 1,950,994 pageviews. *Id.*

**Toll-Free Hotline**.  Separately, Angeion established a toll-free hotline dedicated to the Settlement of this action:  1-888-871-5788.  The hotline—accessible 24 hours a day, 7 days a week—utilizes an interactive voice response system to provide Settlement Class Members with responses to frequently asked questions, the ability to request a claim form, information about filing a claim, and important dates and deadlines. *Id.*, ¶ 16. As of March 25, 2024, the toll-free number has received approximately 3,247 calls, totaling 10,646 minutes. *Id.*

In addition to complying with the Court-approved Notice Plan, AMC also complied with its obligation to provide notice under the Class Action Fairness Act ("CAFA") by timely notifying the appropriate federal and state officials. *See id.*, ¶ 6.

## V.     ARGUMENT

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class action claims. *See* Fed. R. Civ. P. 23(e). The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord, e.g.*, *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440 (VEC), 2017 WL 3995619, at *11 (S.D.N.Y. Sept. 11, 2017) ("In general, the approval of a class settlement is within the district court's discretion, 'which should be exercised in light of the general judicial policy favoring settlement.'"); *Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27,

2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

The Settlement satisfies all the relevant criteria and merits final approval. ***First***, the Settlement—which calls for substantial monetary relief and business practice changes—is fundamentally fair, reasonable, and adequate. ***Second***, the Settlement Class merits certification pursuant to Rules 23(a) and (b)(3) for purposes of judgment on the Settlement. ***Third***, the Settlement Administrator successfully implemented the Court-approved Notice Plan, complying with the requirements of Rule 23(c)(2) and Settlement Class Members' due process rights. Accordingly, the Court should grant Plaintiffs' motion for final approval of the Settlement.

## VI.   <u>FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.</u>

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A)   the class representatives and Plaintiffs' Counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

  (i)   the costs, risks, and delay of trial and appeal;

  (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

When applying the Rule 23(e)(2) factors, courts in this Circuit evaluate both the *substantive* terms of the settlement and whether it is *procedurally* fair—*i.e.*, "whether the

negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-cv-01818-VAB, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (cleaned up). That evaluation requires consideration of the nine "*Grinnell* factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which overlap with the Rule 23(e)(2) factors.[5] *See, e.g.*, *Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors.").

A.   **The Settlement is procedurally fair.**

The Court first must consider procedural fairness, which is comprised of two considerations: (i) whether "the class representatives and class counsel have adequately represented the class" and (ii) whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Grinnell*, 495 F.2d at 463 (the third *Grinnell* factor—*i.e.*, the stage of the proceedings and the amount of discovery completed—overlaps with Rule 23(e)(2)(B)'s "negotiated at arms length" factor).

1.   **The Settlement Class has been vigorously represented.**

Adequacy of representation requires consideration of whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

---

[5] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Plaintiffs' interests are aligned with those of the Settlement Class: they suffered the same alleged injury (improper disclosure of personally identifiable information without consent) and have the same interest in stopping that disclosure. Moreover, the Settlement's business practice changes uniformly benefit all Settlement Class Members, so there can be no conflict among them. Plaintiffs adequately have represented the Settlement Class, including by agreeing to step forward to prosecute the Settlement Class's rights under the VPPA, remaining actively involved through the course of the litigation and settlement, assisting Class Counsel in investigating the claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and consulting with Class Counsel concerning settlement. *See* Joint Decl. RE: Final Approval & Fees, ¶ 90.

Class Counsel likewise have adequately represented the Settlement Class. They are well-qualified litigators with extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, including those under the VPPA. *See* Joint Decl. RE: Preliminary Approval, ¶¶ 41–55 & Exs. 2–4 (firm resumes); Joint Decl. RE: Final Approval & Fees, ¶¶ 52-53; *see also* Plaintiffs' Motion for Attorneys' Fees.  In short, Class Counsel vigorously litigated this case by performing such tasks as: (i) conducting a thorough pre-suit investigation and significant informal discovery and continued forensic investigation prior to settlement, which informed their understanding of the merits of the case and led to the filing of the amended complaint (*see* Joint Decl. RE: Preliminary Approval, ¶¶ 18–19, 23, 32); (ii) analyzing and opposing AMC's motion to compel arbitration, which provided further insight into the strength of their VPPA claims and AMC's potential defenses (*id.*, ¶¶ 9, 20, 30); (iii) gathering Plaintiffs' documents and relevant information (*id.* ¶ 30); (iv) preparing detailed mediation statements that addressed AMC's legal arguments and potential defenses (*id.*);

13

(v) requesting and reviewing relevant informal discovery during mediation (*id.*);

(vi) participating in mediation and extensive subsequent settlement discussions (*id.*);

(vii) conducting continued forensic investigation of each of the Third-Party Tracking

Technologies across all platforms (e.g. websites, apps, etc.) for each of the six AMC Services;

(viii) preparing and filing an amended complaint that effectively consolidated the *Vela*, *Ickes*,

*Buckley*, and *James* actions into a single putative class action case and that added additional

substantive allegations based on the informal discovery and continued forensic analysis;

(ix) achieving a very favorable Settlement on behalf of the Settlement Class (*id.*); (x) presenting

the proposed Settlement to the Court and obtaining an order direct notice to the Settlement Class

(Joint Decl. RE: Final Approval & Fees, ¶ 38); and (x) working with the Settlement

Administrator to implement the Notice Program, to monitor settlement claims, respond to

inquiries from Settlement Class Members, and to address any other issues that may arise (*id.*). In

sum, Class Counsel are eminently qualified to conduct this litigation, have done so vigorously to

date, and have no conflicts of interest with the Settlement Class.

### 2.   The Settlement was negotiated at arm's length after the exchange of informal discovery.

Determined, arm's length negotiations to settle this case began long before formal

mediation. AMC made clear from the outset that it would only entertain a global resolution of all

the VPPA putative class actions against it. Joint Decl. RE: Preliminary Approval, ¶¶ 21–22.

Absent a global resolution, AMC was prepared to pursue motions to compel arbitration, like the

one pending in this action, in the other cases as well. *Id.*, ¶ 22. Timely and consolidated

mediation thus was critical because AMC's motion (if granted) could foreclose all Plaintiffs'

class claims. Accordingly, between July and September 2023, the Parties in *Vela*, *Ickes*, *James*, and

*Buckley* engaged in significant, successful efforts to coordinate those actions into a global mediation. *Id.*

The Parties engaged in private mediation before the Honorable Wayne R. Andersen (Ret.), an experienced mediator, to assist them in reaching the Settlement. The Parties prepared and reviewed detailed mediation statements and other supporting materials before participating in a day-long mediation with Judge Andersen. *Id.*, ¶ 21. Only after weeks of additional negotiations, exchange of additional informal discovery between the Parties, and a second mediation before Judge Andersen did the proposed Settlement manifest. *Id.*, ¶¶ 23–25. These efforts were unquestionably at arm's length and non-collusive.

Although formal discovery did not take place, the parties informally exchanged information before, between, and after their mediation sessions with Judge Andersen, bearing on the merits of Plaintiffs' claims, the size of the Settlement Class, and the Third-Party Tracking Technologies operating on AMC Services. *Id.*, ¶¶ 21, 23–24. Accordingly, Plaintiffs' counsel— attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—are well-informed about the strengths and risks of the claims, as well as their value. *Id.*, ¶¶ 29, 32, 41–55.

This thoroughness and consistently adversarial posture favors approval. *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09-cv-04214 DAB, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (informal discovery allowed plaintiffs to "weigh the strengths and weaknesses of their claims" and "day-long mediation allowed them to further explore the claims and defenses"); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-08713 (PGG), 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) ("efficient, informal exchange of information" sufficient

to recommend settlement approval). As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is procedurally fair.

    **B.**    <u>**The Settlement provides meaningful relief to the Settlement Class**</u>.

    The Settlement provides a significant monetary recovery, especially when compared with the risks of continued litigation, as well as meaningful non-monetary relief. Any Settlement Class Member that submits a valid claim is entitled to a *pro rata* share of the Net Settlement Fund.[6] Although Angeion is still processing claims through the April 9, 2024 claims deadline approaches, initial data indicates that approximately 526,818 claim forms—representing approximately 7.15% of the Settlement Class—have been submitted. Weisbrot Decl., ¶ 17. This is an even higher claim rate than recent VPPA settlements that were finally approved, which achieved more typical claims rates between 1.7% and 3.3%, which themselves demonstrate a successful and reasonable notice program.  *See* Joint Decl. RE: Final Approval & Fees, ¶ 51, Exs. 1 to 3 (*Fiorentino v. Flosports, Inc.*, No. 1:22-cv-11502-AK, Dkt. 72 at 3 (D. Mass. Feb. 16, 2024); *Beltran v. Sony Pictures Entertainment, Inc. d/b/a Crunchyroll*, No. 1:22-cv-04858, Dkt. 52-2 at 4 (ND. Ill. Dec. 7, 2023); *Ambrose v. Boston Globe Media Partners*, No. 1:22-cv-10195-RGS, Dkt. 67 at 1 (D. Mass. Sept. 6, 2023) and Dkt. 63 at 8 (Aug. 24, 2023)).

    This mean that *pro rata* payments from the Net Settlement Fund will amount to approximately $10 to each claimant. That cash benefit along with the In-Kind benefit of a free one-week subscription to the AMC+ streaming service is substantial—and comparable to what plaintiffs have obtained in other consumer class actions. *See, e.g.*, *In re Google Referrer Header*

---

[6] The Net Settlement Fund is the amount remaining for distribution to the Settlement Class after deducting settlement administration expenses, any plaintiff service award ordered by the Court, and any award of attorneys' fees and costs ordered by the Court. *See* Settlement, ¶ 1.20.

*Priv. Litig.*, No. 5:10-CV-04809-EJD, 2023 WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) (Showing estimated "average recovery of approximately $7.16", actual amount of payment made to each settlement class member was $7.70); *In re Google Plus Profile Litig.,* No. 5:18-cv-06164-EJD (VKD), Dkt. 96 at 5-6  (N.D. Cal. Oct. 15, 2020) ($12 or $6 payments per class member);[7] *Fraley v. Facebook, Inc*., 966 F. Supp. 2d 939, 943 (N.D. Cal. 2013), aff'd sub nom; *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) ($15 payment per class member); *Poertner v. The Gillette Co.,* No. 6:12-v-00803-GAP-DAB, Dkt. 168 at 3 (M.D. Fla. Aug. 21, 2014) ($6-$12 payments per class member);[8] *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%).

In addition to monetary relief, the Settlement requires AMC to comply with the VPPA moving forward—specifically, AMC will remove, suspend, or modify its use of each of the Third-Party Tracking Technologies to prevent violations of the VPPA and its subscribers' privacy. *See* Section III.C, *supra.* Under the Settlement, AMC must implement these business practice changes within 45 days of Final Judgment and provide Class Counsel with a sworn declaration confirming the same.  *See* Settlement, ¶ 2.2 & Ex. E (declaration form).

Such relief is particularly significant considering the costs and risks of further litigation, the proposed method of distributing relief to the Settlement Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. Fed. R. Civ. P. 23(e)(2)(i)–(iv); *see also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors 1, 4 to 6, 8, and 9).

---

[7] *See* Joint Decl. RE: Final Approval & Fees, ¶ 53, Ex. 4.

[8] *See* Joint Decl. RE: Final Approval & Fees, ¶ 53, Ex. 5.

*Risks of further litigation*. Continued litigation of this case would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring courts to consider "the costs, risks, and delay of trial and appeal"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (Rule 23(e)(2)(C)'s "risks" factor overlaps with *Grinnell* factors one, four, five, and six). Indeed, the Settlement resolves a complex class action—previously, *four* separate class actions—that has been and would continue to be costly and risky to litigate through trial. *See* Joint Decl. RE: Preliminary Approval, ¶ 34; *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (settlement avoids costs associated with "inherently complex" class actions); *Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (similar).

"Litigation inherently involves risks." *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Here, however, AMC's pending motion to compel arbitration is a particularly salient risk. If granted, that motion would foreclose any class-wide recovery for Settlement Class Members. If Plaintiffs defeat that motion, moreover, litigation remains a costly and risky prospect. To begin with, AMC would very likely file an interlocutory appeal of the arbitration decision, as is its right. In addition to the risk of losing on appeal, Plaintiffs would face the multi-year delay of the appeal process itself, as the trial court proceedings would be stayed.[9] Assuming the appeal was resolved favorably, Plaintiffs would need to retain expensive

---

[9] *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023) (all trial court proceedings, including discovery, must be automatically stayed whenever a party appeals from a pretrial order denying a

forensics experts and litigate multiple *Daubert* motions. Certifying a class, surviving summary judgment, and proving liability at trial likely would require exhaustive briefing and additional first- and third-party discovery—*i.e.*, discovery from AMC and those to whom the Third-Party Tracking Technologies disclosed Settlement Class Members' PII. Achieving a class-wide recovery like that provided by the Settlement also would require maintaining class status through trial—a difficult and uncertain prospect. And even if the Court were to certify the Settlement Class (and deny efforts to decertify it thereafter), even an initially favorable result would likely be delayed and possibly defeated by any Rule 23(f) petition.

      ***Risks of establishing damages***. There are at least two additional risks attending Plaintiffs' damages claims. *See Grinnell*, 495 F.2d at 463 (factor five). ***First***, proving *actual* damages likely would require substantial discovery into how subscribers' data is transmitted by the Third-Party Tracking Technologies and subsequently used by recipients. ***Second***, the VPPA also provides for *statutory* damages, but imposition of such damages on a class-wide basis is not necessarily a straightforward matter.

      In sum, the Settlement eliminates these risks while providing significant relief to the Settlement Class. These factors sharply weigh in favor of approval.

      ***Proposed method of distributing relief***. The proposed method of distributing relief to the class must be "effective." Fed. R. Civ. P. 23(e)(2)(C)(ii). As detailed above in Section IV, and below in Section VI. D., Angeion designed and executed a comprehensive Notice Program that provides the best notice to the Settlement Class practicable under the circumstances. Settlement Class Members submit claims using a simple, straightforward Claim Form, designed

---

motion to compel arbitration).

to maximize the number of claims made. *See* Settlement, Ex. A (Claim Form). Those who submit valid claims will receive, at their selection, payment by electronic means or by mailed checks. Settlement, ¶ 2.1(c).

*Attorneys' fees and Service Awards*. As set forth in Class Counsel's motion for attorneys' fees, Class Counsel is seeking an award of attorneys' fees equal to one-third of the Settlement Fund (*i.e.*, $2,766,666.66). *See* Settlement, ¶ 8.1. In the same motion, counsel separately seeks payment for their expenses and costs. *Id.* The Settlement is not conditioned upon award of fees. *Id.*, ¶¶ 8.4 & 8.5. The motion for attorneys' fees also seeks service awards for the Class Representatives of $2,000 each ($18,000 total) for their efforts on behalf of the Settlement Class. *Id.*, ¶ 8.3.

*No other agreements*. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement.

### C.   The Settlement treats Settlement Class Members equitably.

The proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). AMC will establish a common fund from which payments will be distributed to Settlement Class Members who submit valid claims on a *pro rata* basis. *See* Section III.B, *supra*. The business practice changes provided by the Settlement, moreover, will equally benefit all members of the Settlement Class.  *See* Section III.C, *supra*. This factor thus weighs in favor of approval.

### D.   The reaction of the Settlement Class supports final approval.

To date, 65 Settlement Class Members have requested exclusion - a negligible percentage of the 7,362,067 Settlement Class Members. *See* Weisbort Decl., ¶ 19. Thus far, only one person has provided a comment concerning the Settlement (which Class Counsel will address in the final approval reply papers).  *Id.* Moreover, since the Settlement Website and toll-free telephone

helpline went live on February 2, 2024, the Settlement Website has received 1,305,880 website visits by 1,050,460 unique users totaling 1,950,994 pageviews. *Id.*, ¶ 15. The Settlement Administrator has been processing hundreds of thousands of claims per week, and as of March 25, 2024, has received a total of 526,818 claim forms. *Id.,* ¶ 17. Settlement Class Members have until April 9, 2024 to submit claims, request exclusion from the Settlement Class, or object to the Settlement. PAO at 10. Class Counsel will provide the Court with updated numbers at the expiration of that deadline and prior to the Final Approval Hearing.

The lack of meaningful opposition to the Settlement further weighs in favor of final approval. *See Grinnell*, 495 F.2d at 463 (factor two; at the final approval stage, Courts consider the Settlement Class's reaction to the Settlement).

       **E.**        **The remaining factors weigh in favor approval.**

**Grinnell** *factors eight and nine*. Courts also evaluate the reasonableness of a proposed settlement in light of the best possible recovery, discounted by the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463. Analyzing these factors "does not involve the use of a mathematical equation yielding a particularized sum" and instead "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

As discussed above, the Settlement's monetary and injunctive relief is substantial, both on its own and when compared to analogous VPPA settlements. *See* Section VI.B, *supra*. That is so, notwithstanding AMC's hypothetical exposure should Plaintiffs litigate and prevail on all aspects of their claims and damages theories—an uncertain prospect for the reasons discussed in Section VI.B, *supra*. Indeed, even if Plaintiffs cleared the numerous hurdles leading up to trial (at the cost of years of more litigation and, most likely, hundreds of thousands of dollars), a

larger recovery is not certain. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 CIV. 3452 (RLE), 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (settlement was robust and immediate compared to some "speculative payment of a hypothetically larger amount years down the road").

Courts recognize that in the settlement approval context, claims' hypothetical value must be discounted by risks and practical realities. Thus, the Second Circuit has noted that courts may approve settlements even where the recovery is a fraction of the amount recoverable at trial. *See, e.g.*, *Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) (same); *accord, e.g.*, *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294-95 (E.D. Mich. 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

Here, Plaintiffs' counsel weighed the risks against the hypothetical value of their claims and, ultimately, secured a substantial monetary award of $8.3 million. Joint Decl. RE: Preliminary Approval, ¶¶ 32–36. They also carefully considered the changes to the AMC business practices and agreement to refrain from unlawful practices in the future. *Id.* Because the Settlement provides this immediate and significant relief, without the attendant risks of continued litigation, *Grinnell* factors eight and nine weigh in favor approval.

**Grinnell *factor seven*.** The fact that AMC might be able to withstand a greater judgment does not change the analysis. *See Grinnell*, 495 F.2d at 463 (factor seven). A defendant need not "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012); *see also In re Sinus Buster Prod. Consumer Litig.*, No. 12-cv-02429

(ADS)(AKT), 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("[A]bility to pay is much

less important than the other *Grinnell* factors, especially where the other factors weigh in favor

of approving the settlement."); *Viafara v. MCIZ Corp.*, No. 12-cv-07452 RLE, 2014 WL

1777438, at *7 (S.D.N.Y. May 1, 2014) (similar). This factor is neutral.

       *Scope of release*. A final consideration is the scope of the Release. *See In re Payment*

*Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 42 n.41 (courts may look to

the scope of the release). In exchange for the relief described above, Plaintiffs and the Settlement

Class release all claims that have or could have been asserted against AMC and relating to the

facts, transactions, or events alleged in this action. Further, the Release is limited to the exact

conduct alleged in the Amended Complaint by Plaintiffs, because it pertains to claims "regarding

the alleged disclosure of the Settlement Class Members' personally identifiable information and

video viewing behavior to any third party." *See* Settlement, ¶ 1.29. The Release does not

immunize AMC from future liability. In sum, the Release is calculated to "achieve a

comprehensive settlement that [will] prevent relitigation of settled questions at the core of [this]

class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982).

This factor weighs in favor of approval.

       The Rule 23(e)(2) and *Grinnell* factors strongly support a finding that the Court will

likely be able to approve the Settlement as "fair, reasonable, and adequate."

## VII.   THE COURT SHOULD CONFIRM SETTLEMENT CLASS CERTIFICATION.

       A settlement class will be certified where the four requirements of Rule 23(a) are

satisfied—numerosity, commonality, typicality and adequacy of representation—plus the

requirements of any one of the sub-sections of Rule 23(b). *See* Fed. R. Civ. P. 23. Plaintiffs seek

certification of the Settlement Class under Rule 23(b)(3). In general, the Rule 23 certification

requirements "should be 'given liberal rather than restrictive construction . . . .'" *In re*

*Cablevision Consumer Litig.*, No. 10-cv-04992 JS AKT, 2014 WL 1330546, at *5 (E.D.N.Y. Mar. 31, 2014) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

Here, the Court already determined that it likely will be able to certify the Settlement Class for purposes of judgment on the proposed Settlement. In so holding, the Court concluded the requirements of Rule 23(a) and (b)(3) were satisfied after a thorough analysis. *See* PAO at 3. Specifically, the Court found:

> (1) that the Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable; (2) that there are questions of law and fact common to Settlement Class Members that predominate over questions affecting only individual members (*e.g.*, whether AMC unlawfully disclosed to third parties Plaintiffs' and Settlement Class Members' personally identifiable information without consent in a manner that violated the Video Privacy Protection Act, 18 U.S.C. § 2710, and whether Plaintiffs and the Settlement Class Members are entitled to uniform statutory damages under the VPPA); (3) that Plaintiffs' claims are typical of the claims of the Settlement Class; (4) that Plaintiffs and their counsel will fairly and adequately protect the interests of the Settlement Class; and (5) that a settlement class action is a superior method of fairly and efficiently adjudicating this Action.

*Id.* The facts and analysis supporting class certification remain unchanged. Accordingly, for these same reasons and those set forth in Plaintiffs' briefing in support of preliminary approval (*see* ECF No. 42 at 17–22), the Court should confirm the Settlement Class satisfies Rule 23 and certify the Settlement Class. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 117 S. Ct. 2231, 2248 (1997) (approving use of settlement classes).

## VIII.  **CONCLUSION**

Plaintiffs respectfully request the Court to enter an order (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) certifying the Settlement Class; and (iii) finding that the notice program as set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil

Procedure 23(c) and due process and constitutes the best notice practicable under the

circumstances.

Dated:  March 25, 2024                    Respectfully submitted,

                                              */s/    Douglas I. Cuthbertson*
                                          Douglas I. Cuthbertson
                                            (dcuthbertson@lchb.com)
                                          **LIEFF CABRASER HEIMANN &**
                                            **BERNSTEIN, LLP**
                                          250 Hudson Street, 8th Floor
                                          New York, NY  10013-1413
                                          Tel.: (212) 355-9500
                                          Fax: (212) 355-9592

                                          Michael W. Sobol
                                            (msobol@lchb.com)
                                          **LIEFF CABRASER HEIMANN &**
                                            **BERNSTEIN, LLP**
                                          275 Battery Street, 29th Floor
                                          San Francisco, CA  94111-3339
                                          Tel.: (415) 956-1000
                                          Fax: (415) 956-1008

                                          Hank Bates (hbates@cbplaw.com)
                                          Lee Lowther (llowther@cbplaw.com)
                                          Courtney E. Ross (cross@cbplaw.com)
                                          **CARNEY BATES & PULLIAM, PLLC**
                                          519 W. 7th Street
                                          Little Rock, AR  72201
                                          Tel.: (501) 312-8500
                                          Fax: (501) 312-8505

                                          Michael Reese (mreese@reesellp.com)
                                          **REESE LLP**
                                          100 West 93rd Street, 16th Floor
                                          New York, NY  10025
                                          Tel.: (212) 643-0500

                                          Kevin Laukaitis
                                            (klaukaitis@laukaitislaw.com)
                                          **LAUKAITIS LAW LLC**
                                          954 Avenida Ponce De Leon
                                          Suite 205, #10518
                                          San Juan, PR  00907
                                          Tel.: (215) 789-4462

                                          *Class Counsel*